UNITED STATES DISTRICT COURT

DISTRICT OF HAWAI‘I

| | |
|---|---|
| R.P.-K., through his parent C.K., R.T.D., through his parents R.D. and M.D., B.P., through her parent M.P., and C.B., through his parent N.B., for themselves and on behalf of a class of those similarly situated, and the HAWAII DISABILITY RIGHTS CENTER, in a representative capacity on behalf of its clients and all others similarly situated,<br><br>      Plaintiffs,<br><br>  vs.<br><br>DEPARTMENT OF EDUCATION, State of Hawai‘i,<br><br>      Defendant. | CIVIL NO. CV10 00436 KSC (Other Civil Action)<br><br>**MEMORANDUM IN SUPPORT OF MOTION** |

# TABLE OF CONTENTS

<u>Page</u>

TABLE OF AUTHORITIES ......................................................................... ii

I.       INTRODUCTION ..........................................................................1

II.      FACTUAL AND PROCEDURAL BACKGROUND ....................................2

         A.       R.P.-K. ................................................................................2

         B.       R.T.D. ................................................................................3

         C.       The B.T. Case and Act 163 ....................................................3

III.     ARGUMENT ...............................................................................5

         A.       Standard for a Preliminary Injunction and Temporary
                  Restraining Order ..............................................................5

         B.       Plaintiffs Are Likely to Succeed On The Merits....................6

                  1.       The IDEA Requires the DOE to Offer FAPE to Age 22...........6

                  2.       Section 504 of the Rehabilitation Act and Title II of the
                           Americans With Disabilities Act. ...............................8

                  3.       Estoppel.........................................................10

         C.       R.P.-K. and R.T.D. Will Likely Suffer Irreparable Harm if
                  Services are Interrupted.....................................................14

         D.       The Balance of Hardships Favors Imposing a Temporary
                  Restraining Order and Preliminary Injunction.....................15

         E.       The Public Interest Supports a Temporary Restraining Order
                  and Preliminary Injunction................................................16

IV.      CONCLUSION............................................................................18

# TABLE OF AUTHORITIES

## FEDERAL CASES

*America Trucking Ass'ns. v. City of Los Angeles*, 559 F.3d 1046
(9th Cir. 2009)..................................................................................5

*Amoco Production Co. v. Gambell*, 480 U.S. 531, 107 S. Ct. 1396,
94 L. Ed. 2d 542 (1987) ...................................................................5

*B.T. v. Department of Education,* 2009 WL 4884447 (D. Haw. December
17, 2009), Civ. No. 08-356 DAE-BMK .........................................2, 3, 4

*B.T. v. Department of Education,* 637 F. Supp. 2d 856 (D. Haw. 2009)..................6

*Golden Gate Restaurant Association v. City of San Francisco*, 512 F.3d
1112 (9th Cir. 2008)........................................................................16

*Hamilton v. State Farm Fire & Casualty Co.*, 270 F.3d 778 (9th Cir. 2001) .........12

*Joshua A. v. Rocklin Unified School District*, 559 F.3d 1036 (9th Cir. 2009) ........17

*Lovell v. Chandler*, 303 F.3d 1039 (9th Cir. 2002) ...................................................8

*Lozano v. Ocwen Federal Bank, FSB*, 489 F.3d 636 (5th Cir. 2007).....................14

*N.D. ex rel. parents v. Hawaii Department of Education*, 600 F.3d 1104
(9th Cir. 2010).............................................................................5, 14

*Poweragent v. Electronic Data Systems*, 358 F.3d 1187 (9th Cir. 2004)...............12

*Reno Air Racing Association v. McCord*, 452 F.3d 1126 (9th Cir. 2006)................5

*Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597
(9th Cir. 1996)...........................................................................12, 13

*Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355 (3d
Cir. 1996) .....................................................................................12

*Stuhlbarg International Sales Co. v. John D. Brush & Co., Inc.*, 240 F.3d 832 (9th Cir. 2001) ................................................................................5

*UNUM Corp. v. United States*, 886 F. Supp. 150 (D.Me.1995) .............................13

*W.H. v. Clovis Unified School District*, 2009 WL 2959849 (E.D. Cal. Sept. 10, 2009) ..........................................................................16

*Winter v. Natural Resource Defense Council, Inc.,* --- U.S. ---- 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008) ................................................................5

## FEDERAL AUTHORITIES

20 U.S.C. § 794(a) ................................................................................8

20 U.S.C. § 1232d(b)(7) ........................................................................11

20 U.S.C. § 1400, *et seq.*.......................................................................1

20 U.S.C. § 1400(d)(1)(A) ....................................................................17

20 U.S.C. § 1412(a) ........................................................................6, 16

20 U.S.C. § 1412(a)(1)(B) .....................................................................6

20 U.S.C. § 1415(b)(6).........................................................................17

20 U.S.C. § 1415(j) ..............................................................................17

42 U.S.C. § 12132 ................................................................................8

Local Rule 10.2(g) ................................................................................1

## STATE AUTHORITIES

H.A.R. § 8-56-15................................................................................11

H.A.R. § 8-60-38(d)(2) ........................................................................11

H.R.S. § 302A-443(3) ...........................................................................7

## MEMORANDUM IN SUPPORT OF MOTION

## I.      INTRODUCTION

Plaintiffs R.P.-K. and R.T.D. are disabled individuals between the ages of 20 and 21 who have been receiving education and related services from Defendant Department of Education of the State of Hawai`i ("DOE") under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. 1400, *et seq.*  By this motion, they seek to receive continuing educational and related services from the DOE pending this Court's decision in this action.

If a temporary restraining order is not imposed, the DOE will cease offering them education services effective today – **July 30, 2010** – and R.P.-K. and R.T.D. will be without such services for several weeks until the accompanying Motion for a Preliminary Injunction can be decided.  Having such services interrupted for even a few days is likely to cause R.P.-K. and R.T.D. irreparable harm in the form of significant regression in the behavioral and educational progress they have made.  The attached Declaration of John P. Dellera is submitted pursuant to Local Rule 10.2(g) to explain why this motion was not filed contemporaneously with the Complaint.

The DOE has denied these Plaintiffs services on the basis of a newly-enacted law, Act 163 (attached as Exhibit "A"), that was passed in an attempt to minimize the DOE's obligations under the IDEA and circumvent Judge David A.

1

Ezra's ruling in *B.T. v. Department of Education*, 2009 WL 4884447 at *5-8

(D. Haw. December 17, 2009), Civ. No. 08-356 DAE-BMK (attached as Exhibit

"B").  Despite Act 163, these Plaintiffs are entitled to continued services because

the DOE through its adult education program continues to provide the equivalent

of a high school education to non-disabled students regardless of age.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    R.P.-K.

R.P.-K. is 20 years old and has been diagnosed with autism disorder.

Attached Declaration of C.K. ("C.K. Decl.") at ¶ 2.  His disabilities require

specialized instructions in a small, supportive, and structured environment.  *Id.* at

¶ 9.

Until recently, R.P.-K. attended Castle High School and he has

received special education services from the DOE since 2005.  C.K. Decl. at ¶ 3.

His mother, C.K., twice requested that he continue receiving special education

services beyond the 2009-10 school year.  *Id.* at ¶¶ 4-5 and attached Exhibits "1"-

"2."  The DOE initially refused to make a decision on these requests and C.K.

therefore filed a Request for Impartial Due Process Hearing.  C.K. Decl. at ¶¶ 4-6

and attached Exhibits "1" – "3."  On July 26, 2009, the DOE advised C.K. that it

would not provide continued educational services to R.P.-K. on the grounds that he

had reached 20 years of age.  C.K. Decl. at ¶ 8.

2

**B.** **R.T.D.**

R.T.D. is also 20 years old and has been diagnosed with Downs Syndrome, mental retardation, Autism Spectrum Disorder, and Obsessive Compulsive Disorder.  Attached Declaration of R.D. ("R.D. Decl.") at ¶ 1.  R.T.D. is also hearing and vision impaired, has limited communication skills, and requires constant supervision in his daily activities to avoid harming himself or others.  *Id.* at ¶¶ 1, 7, & 11.

R.T.D. has attended Kaleheo High School since 2005 and receives special education from the DOE there.  R.D. Decl. at ¶ 2.  Although R.T.D. and his parents engaged in several meetings with representatives of the DOE between January and June of this year to establish an Individualized Education Plan ("IEP") for the summer of 2010 and the 2010-11 school year, the DOE advised R.D. on June 28, 2010 that special education services would cease after July 30, 2010 because R.T.D. was over 20 years old.  *Id.* at ¶¶ 3-4 and attached Exhibit "1."  R.D. therefore filed a Request for Due Process Hearing.  R.D. Decl. at ¶ 5 and attached Exhibit "2."

**C.** **The B.T. Case and Act 163**

In *B.T. v. Department of Education,* this Court held that the State of Hawai`i could not deny special education services to a student based solely on that student's attaining the age of 20.  Exhibit "B."

Act 163 – the State law amendment upon which the DOE relied in eliminating services to R.P.-K. and R.T.D. – purported to impose a 20-year age limit on admission to public school in an attempt to reverse this Court's ruling in *B.T.* Exhibit "A." The Plaintiff in *B.T.* had argued that extending a free appropriate public education ("FAPE") to age 22 would be consistent with Hawai`i law and practice and that an administrative rule of the DOE that terminated special education services at age 20 was therefore inapplicable. Judge Ezra granted summary judgment to the Plaintiff on his IDEA claim because regular education students over 20 could obtain a public education if (i) they met the age limits upon entering the ninth or tenth grade, (ii) they received a waiver from the school principal, or (iii) they pursued their secondary education in the adult education program. *Id.*

Act 163 terminated the right of students over 20 under the first two rules above, but it left the third option in place as set forth below. The DOE thus continues to violate the IDEA and discriminate against students with disabilities by effectively ending their secondary education at 20 years of age, while regular education students may pursue a high school equivalency diploma in the adult education program without any age limit. In addition, the DOE should be estopped from denying R.P-K. and R.T.D FAPEs until they are 22 because it obtained IDEA

4

funding in 2008 and again in 2010 based upon the representation that it offers a FAPE through age 21 to all students with disabilities residing in the State.

## III.   ARGUMENT

### A.   Standard for a Preliminary Injunction and Temporary Restraining Order

A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, he is likely to suffer irreparable harm in the absence of preliminary relief, the balance of equities tips in his favor, and an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.,* --- U.S. ----, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008); *N.D. ex rel. parents v. Hawaii Dept. of Educ.,* 600 F.3d 1104, 1113 (9th Cir. 2010); *Am. Trucking Ass'ns. v. City of Los Angeles,* 559 F.3d 1046, 1052 (9th Cir. 2009). Irreparable harm is that which cannot be adequately remedied by money damages and is permanent or at least of long duration. *Amoco Production Co. v. Gambell,* 480 U.S. 531, 545, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987).

The standard for granting a temporary restraining order is the same as that for granting a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, *Inc.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001). The purpose of a temporary restraining order is to preserve the status quo and prevent irreparable harm until a hearing may be held on the propriety of a preliminary injunction. *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006).

**B.    Plaintiffs Are Likely to Succeed On The Merits.**

**1.    The IDEA Requires the DOE to Offer FAPE to Age 22.**

The IDEA provides that a FAPE "is available to all children with disabilities ... between the ages of 3 and 21, inclusive...."  20 U.S.C. § 1412(a). Federal eligibility for special education and related services ends, therefore, when a student becomes 22.  *B.T. v. Department of Education,* 637 F. Supp.2d 856, 863, fn.9 (D. Haw. 2009).  States may impose age limitations, however, to the extent the same age limitations are applied for public education generally:

> The obligation to make [FAPE] available to all children with disabilities does not apply with respect to children –
>
> (i) aged 3 through 5 and 18 through 21 in a State to the extent that its application to those children would be inconsistent with State law or practice, or the order of any court, respecting the provision of *public education* to children in those age ranges....

20 U.S.C. § 1412(a)(1)(B) (emphasis added).

Although Act 163 now states that "no person who is twenty years of age or over on the first day of the school year shall be eligible to attend a *public school*," (emphasis added), the DOE continues to provide a *public education* to non-disabled students over the age of 20 through the CB (competency-based) and GED (General Education Development) high school equivalency programs.  Those equivalency programs are clearly "public education" offered to students in the age range of 20-22, as that term is used in IDEA.

6

First, the Board of Education *admits,* as a matter of policy, that the adult education program is "an integral part of public education in Hawai`i." Exhibit "C" to attached Declaration of John P. Dellera ("Dellera Decl.").  Second, high school equivalency diplomas are so named because they are the *equivalent* of regular diplomas for many purposes (entry to college, service in the military, employment opportunities).  *See "Diploma, GED Method"* attached as Exhibit "D" to Dellera Decl.  Third, equivalency courses are offered in public schools funded by the DOE, and they are specifically for the purpose of allowing older students to complete their secondary education.  H.R.S. § 302A-443(3). Fourth, the DOE steers students older than 18 into the adult education program to obtain a high school equivalency diploma, Exhibit "E" to Dellera Decl. at 102:18 – 103:5, and several hundred individuals of all ages receive the equivalent of a high school education in this manner.  *See* "Diploma Distress," Honolulu Star Advertiser, June 27, 2010, attached as Exhibit "F" to Dellera Decl.

Given this context, it is clear that Act 163 is a clumsy attempt to discriminate against students with disabilities age 20 and 21 by denying them a secondary education, while their nondisabled peers are allowed to pursue their secondary education until age 22 and beyond.

The exception to the IDEA requirement that FAPE be provided through age 21 thus does not apply in Hawai‘i because the federal age requirement

is consistent with State law and practice making public education available after age 20.  The DOE's denial of a FAPE on the grounds that R.P-K. and R.T.D. "aged-out" of IDEA eligibility because they are now over 20 years of age is, therefore, unlawful.

### 2. Section 504 of the Rehabilitation Act and Title II of the Americans With Disabilities Act.

Discrimination against persons with disabilities in federally-funded programs is prohibited by Section 504 of the Rehabilitation Act of 1973, which provides:

> No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity conducted by any Executive Agency....

20 U.S.C. § 794(a).  To prove a claim for a violation of Section 504, the plaintiff must prove that: "(1) she is handicapped within the meaning of the RA; (2) she is otherwise qualified for the benefit or services sought; (3) she was denied the benefit or services solely because of her disability; and (4) the program providing the benefit or services receives federal financial assistance."  *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002).[1]

---

[1] Plaintiffs also raise a claim for violation of Title II of the Americans With Disabilities Act, 42 U.S.C. § 12132, which prohibits discrimination against the disabled in any "services, programs, or activities of a public entity."  Here, the provision of educational services by the DOE is clearly a service, program, or

As set forth above, Hawaiʻi offers a number of ways for non-disabled students over 20 to obtain a public education, and there is no maximum age for such students.  By contrast, Act 163 excludes disabled students who have reached 20 years of age from public education, except to complete the school year during which they become 20.

There can be no reasonable dispute that R.P-K. and R.T.D. are handicapped within the meaning of the RA, as they have for several years received special educational services under the IDEA.  If R.P.-K. and R.T.D. were not disabled, they could continue their public education after age 20 notwithstanding Act 163, by enrolling in the adult education program.  *See* Exhibits "C" – "F" to Dellera Decl.  That option is denied to them, however, solely because of their disabilities.  Although some accommodations for disabilities are available in the adult education program, the designated representative of the DOE in *B.T.* was not aware of any disabled individuals who were receiving instruction in the adult education program under an IDEA IEP.  Exhibit "E" to Dellera Decl. at 69:22 – 70:15; 98:12 – 99:2.  Rather, such plans are only available in the high schools – which are now completely closed to disabled students between the ages of 20 and 22.  *Id.* at 98:21 – 99:13.  Such disparate treatment in Hawaiʻi's public education

activity of a public entity.  Because the elements for a claim under Title II are otherwise identical to those for a claim under Section 504, Plaintiffs are likely to prevail on their claims under Title II for the same reasons they are likely to prevail on their claims under Section 504.

9

program, which receives funding by the U.S. Department of Education as set forth

below, violates Section 504 and Title II.

### 3.    Estoppel

By letter dated April 30, 2008, the DOE applied for IDEA Part B

funding for Federal Fiscal Year 2008.[2]  *See* Application at Section II, item 1,

attached as Exhibit "G' to Dellera Decl. and authenticated by Exhibit "E" at 47:24

– 49:4.  An application was also submitted in 2010, which is essentially the same.

Exhibit "H" to Dellera Decl.[3]  In both applications, the DOE represented that:

> A free appropriate public education is available to all
> children with disabilities residing in the State between
> the ages of 3 and 21, inclusive…

Section IV of the applications requires that the State identify in

writing any State rule or regulation not required by IDEA Part B or federal

regulations that relates to the State's eligibility for funding.  The DOE purported to

comply with that requirement by including the following in the "Section IV

Attachment":

> State requirements include eligibility criteria to
> implement the IDEA-2004 eligibility categories.    The

---

[2] The application uses the term "Part B of IDEA," but that was redesignated as
"Subchapter II" (20 U.S.C. §§ 1411-1419) by Pub.L. 105-17 (June 4, 1997), 111
Stat. 37.

[3] The 2010 application is self-authenticating pursuant to FRE 902(5) as an official
publication of the DOE.  As set forth below, this application was required to be
published and made available to the general public for comment.

following may be construed as providing State-imposed mandates that are not required by IDEA-2004:

- General eligibility criteria for the occurrence of birthdays for children at age three and age twenty to implement the applicable age ranges in the State of Hawaii….

Exhibits "G" & "H" at Section IV-2. According to a letter from Paul K. Ban, the DOE's "age-out" rule (then H.A.R. § 8-56-15, now H.A.R. § 8-60-38(d)(2)) was not attached to the FY 2008 application, but a copy was "previously provided" to the Secretary of Education. Exhibit "I" to Dellera Decl. Thus, the DOE represented that FAPE is available to disabled children between the ages of 3 and 21, inclusive, but it failed to disclose in terms a layperson could understand that it actually terminates special education at age 20.

The DOE was required to "provide reasonable opportunities for the participation by … representatives of the class of individuals affected … and other interested individuals" in planning for the use of IDEA funds and to publish its application for funds with an opportunity for public comment. 20 U.S.C. § 1232d(b)(7). The cryptic reference to "the occurrence of birthdays" in the Section IV Attachment is not reasonable notice that the affirmative representation in Section II is untrue. Nor did the DOE reasonably inform the public by having "previously provided" a copy of H.A.R. § 8-56-15 at some undisclosed time in the past.

11

Simply put, the DOE misrepresented that it provides FAPE to disabled students through age 21 so it could get $38 million in IDEA funds in 2008, $39 million in 2010, and substantial "stimulus" funding under Title VIII of the American Recovery and Reinvestment Act of 2009, Pub. L. No. 111-5, 123 Stat. 182.  Now, the DOE claims that it has a right to terminate FAPEs at age 20, thereby depriving R.P.-K. and R.T.D. of the funds the DOE obtained by representing it would use them for their and others' benefit.

Judicial estoppel is "the principle that a litigant may not benefit by making directly contradictory arguments regarding the same dispute in different tribunals."  *Poweragent v. Electronic Data Systems,* 358 F.3d 1187 (9th Cir. 2004). It precludes a party from gaining an advantage in one case by taking a particular position, and then "taking a clearly inconsistent position in either the same litigation or a different case concerning the same dispute."  *Id*., citing *Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778, 782-83 (9th Cir. 2001).

Judicial estoppel is not limited to cases where inconsistent positions are taken in judicial proceedings.  Because "a court has an extremely strong interest in being able to employ judicial estoppel in order to protect its integrity," *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.,* 81 F.3d 355, 358 (3d Cir. 1996), the doctrine also applies where the prior statement was made to an administrative agency.  *Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d

12

597, 604 (9th Cir. 1996).  Judicial estoppel has been applied, for example, to statements made in applications to an administrative agency to convert from a mutual insurance company to a stock insurance company, *UNUM Corp. v. United States,* 886 F. Supp. 150, 158 (D.Me.1995), and applications for disability benefits, *see Rissetto, supra,* 94 F.3d at 604, fn.4.

Here, the DOE represented one thing to a federal executive agency and received a benefit as a result – over $95 million in IDEA funds.  It now takes a contrary position on exactly the same issue before a federal court in an effort to avoid spending those funds as represented.  The DOE should be estopped from taking the position it takes here.

The Plaintiff in *B.T.* made a similar argument, but the Court did not rule on it because such a determination was not necessary for the disposition of that case.  Exhibit "B" at *9, fn.3.  Disregarding the argument and this Court's mention of it, the DOE submitted another application for IDEA funds in 2010 making precisely the same false representation.  This Court should hold the DOE to its representations and order it to provide FAPEs to R.P.-K. and R.T.D. until they are 22.

The doctrine of estoppel by contract (also known as quasi-estoppel) also applies here.  The DOE's application was essentially a contract between the DOE and the federal government for the receipt of IDEA funds.  Estoppel by

13

contract applies where "it would be unconscionable to allow a person to maintain a position inconsistent with one to which … he accepted a benefit." *Lozano v. Ocwen Federal Bank, FSB*, 489 F.3d 636, 40 (5th Cir. 2007) (internal quotation omitted and alteration in original).  "In other words, the doctrine forbids a party from accepting the benefits of a transaction and then subsequently taking an inconsistent position to avoid corresponding obligations or effects." *Id.*  Here, the DOE received a benefit based on the assurance that it would provide FAPEs to disabled individuals through the age of 21 but now seeks to avoid the obligation to do so.  The DOE should be estopped from taking a position inconsistent with the benefits it received from the U.S. Department of Education.

C.     **R.P.-K. and R.T.D. Will Likely Suffer Irreparable Harm if Services are Interrupted.**

The Ninth Circuit has recently held that closing Hawai`i's public schools for 17 "furlough Fridays" would cause irreparable harm to disabled students because they would suffer regression in behavior, increased difficulty with activities, and outbursts of frustration and violence.  *N.D. ex rel. parents v. Hawaii Dept. of Educ., supra,* 600 F.3d at 1113.  The declarations and exhibits submitted in support of this motion show that R.P.-K. and R.T.D. would suffer similar irreparable harm if their services are abruptly ended.

R.P.-K. will suffer serious regression of his educational and life skills because of his need for repetition.  C.K. Decl. at ¶ 11.  Significant regression

occurs when he is out of school for more than two days.  *Id.*  The DOE agrees with this assessment, as R.P.-K. qualifies for "an extended school year" such that services are required to be provided after breaks longer than two calendar days (with the exception of holidays).  Exhibit "4" to C.K. Decl. at 16.

Similarly, R.T.D. will suffer regression, and the accompanying risk of harm to himself and others, because of his need for routine.  R.D. Decl. at ¶¶ 7 and 10-11.  He experiences regression and in increase in harmful behaviors when he is out of school for more than four days.  *Id.* at 7.  His psychiatrist and Certified Behavior Analyst and Behavioral Instructional Support Services Specialist agree that R.T.D. will experience regression and engage in harmful behavior if educational and related services are abruptly terminated.  Exhibits "4" and "5" to R.D. Decl.

## D. **The Balance of Hardships Favors Imposing a Temporary Restraining Order and Preliminary Injunction.**

Compared to the likelihood of irreparable harm to R.P.-K. and R.T.D., the DOE will experience no meaningful hardship if a temporary restraining order and/or preliminary injunction is imposed.  The DOE has been providing R.P.-K. and R.T.D. with special educational services under the IDEA for several years and its personnel are familiar with their needs.  Continuing to provide such services under existing IEPs for a few more weeks and/or months will not cause the DOE any significant hardship.

15

Moreover, any hardship to the DOE would be merely financial. As the court noted in *W.H. v. Clovis Unified School District*, in ordering the school district to provide educational services under the IDEA during the pendency of an appeal to determine whether such services were required, when "[f]aced with … a conflict between financial concerns and preventable human suffering, we have little difficulty concluding that the balance of hardships tips decidedly in favor of the latter." 2009 WL 2959849 at * 7 (E.D. Cal. Sept. 10, 2009), *quoting Golden Gate Rest. Ass'n v. City of San Francisco*, 512 F.3d 1112, 1126 (9th Cir. 2008).

The lack of hardship to the DOE is especially clear with respect to a temporary restraining order, given the brief duration of such an order. For this reason, counsel for Plaintiffs requested that counsel for the DOE agree to continue to provide services to R.P.-K. and R.T.D. until Plaintiffs' preliminary injunction motion was decided. *See* Dellera Decl. at ¶¶ 4-8. Counsel for the DOE was unable to provide an answer before the date for cessation of services, thus making a temporary restraining order necessary.

### E.  The Public Interest Supports a Temporary Restraining Order and Preliminary Injunction.

The IDEA embodies a strong public policy in favor of providing a free and appropriate public education to disabled individuals – presumptively up through the age of 21. 20 U.S.C. § 1412(a). *See also W.H.*, 2009 WL 2959849 at * 7 (because "Congress enacted the IDEA to ensure 'all children with disabilities

16

have available to them a free appropriate public education,'" "the public's interest in protecting the needs of children with disabilities in education tips the balance in Student's favor"), *quoting* 20 U.S.C. § 1400(d)(1)(A).

More specifically, the IDEA itself embodies a policy of maintaining the status quo until disputes about IDEA eligibility are resolved.  The IDEA allows individuals to present a complaint with respect to any matter relating to the provision of FAPE, 20 U.S.C. § 1415(b)(6), and during the pendency of such complaint, "the child shall remain in the then-current educational placement ... until all such proceedings have been completed."  20 U.S.C. § 1415(j) (the "Stay Put" rule).  "Such proceedings" includes appeals to the federal courts.  *Joshua A. v. Rocklin Unified School Dist.,* 559 F.3d 1036 (9th Cir. 2009) ("[w]e ... reject the District's position that the plain language of the stay put provision excludes appeals from final judgments of the district courts from civil actions").

The DOE may argue that "stay put" does not apply because R.P-K. and R.T.D. purportedly "aged-out" of public education as of the beginning of the upcoming school year, but the issue of "age-out" is precisely what is at issue here. The DOE may not extinguish Plaintiffs' "stay put" rights unilaterally, simply by asserting incorrectly that Act 163 ends public education for everyone at age 20.  It does not, as set forth above.  Public policy therefore supports imposing the equivalent of a "stay put" order until the conclusion of this litigation.

17

## IV.   CONCLUSION

Based on the foregoing, Plaintiffs R.P.-K. and R.T.D. request that the Court issue (1) a temporary restraining order prohibiting the DOE from ceasing to provide educational and related services to R.P.-K. and R.T.D. under their existing IEPs until this Court can decide whether Plaintiffs are entitled to a preliminary injunction; and (2) after hearing, a preliminary injunction requiring the DOE to continue to provide educational and related services to R.P.-K. and R.T.D. until the conclusion of this litigation.

DATED:  Honolulu, Hawai'i, July 30, 2010.

/s/ Jason H. Kim
JOHN P. DELLERA
MATTHEW C. BASSETT
PAUL ALSTON
JASON H. KIM
Attorneys for Plaintiffs

18