IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| R.P.-K., through his parent C.K., R.T.D., et al.,<br><br>       Plaintiffs,<br><br>  vs.<br><br>DEPARTMENT OF EDUCATION, State of Hawai'i,<br><br>       Defendants. | CIVIL NO. CV10 00436 DAE-KSC<br>(Other Civil Action)<br><br>**MEMORANDUM IN SUPPORT OF MOTION** |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................... ii

I.      INTRODUCTION ................................................................1

II.     PROPOSED CLASS DEFINITION..................................................3

III.    STATEMENT OF FACTS AND SUBSTANTIVE LAW.............................3

        A.      The IDEA's Age Provisions..................................................3

        B.      *B.T.* and Act 163....................................................................4

        C.      The DOE's Provision of Public Education to Non-Disabled
                Individuals Regardless of Age. ............................................5

        D.      The Rehabilitation Act and the Americans With Disabilities
                Act. ...............................................................................7

        E.      Judicial Estoppel..............................................................8

        F.      The Class Representatives.................................................13

IV.     ARGUMENT......................................................................16

        A.      The Proposed Class Satisfies the Requirements of Rule 23(a)...........16

                1.      The Class Is So Numerous That Joinder of All Members
                        Is Impracticable.................................................16

                2.      There Are Numerous Questions of Law And Fact
                        Common To The Class. ........................................19

                3.      Plaintiffs' Claims Are Typical of the Class..................20

                4.      Plaintiffs Will Fairly and Adequately Protect the Interests
                        of the Class.......................................................21

        B.      The Proposed Class Also Meets the Requirements of
                Rule 23(b)(2) and Should Be Certified. ................................25

V.      CONCLUSION...................................................................26

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 117 S. Ct. 2231 (1997)............26

*Amone v. Aveiro*, 226 F.R.D. 677 (D. Haw. 2005)............................................17, 18

*B.T. v. Department of Education*, 637 F. Supp. 2d 856 (D. Haw. 2009)...............1, 3

*B.T. v. Department of Education*, 2008 WL 3891867 (D. Haw. Aug. 21, 2008) ......................................................................................................4, 5

*B.T. v. Department of Education*, 2009 WL 4884447 (D. Haw. December 17, 2009).......................................................................................1

*Bates v. United Parcel Serv.*, 204 F.R.D. 440 (N.D. Cal. 2001) .............................20

*Christman v. American Cyanamid Co.*, 92 F.R.D. 441 (N.D.W. Va. 1981) ...........26

*Doe v. Los Angeles Unified School District*, 48 F. Supp. 2d 1233 (C.D. Cal. 1999) ........................................................................................................19

*General Telegraph Co. of S.W. v. Falcon*, 457 U.S. 147, 102 S. Ct.  2364 (1982) .................................................................................................20, 21

*Hamilton v. State Farm Fire & Casualty Co.*, 270 F.3d 778 (9th Cir. 2001) .........11

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .........................19, 20, 21

*Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 97 S. Ct. 2434 (1977) ......................................................................................24

*Jordan v. County of Los Angeles*, 669 F.2d 1311 (9th Cir. 1982), *vacated and remanded on other grounds*, 459 U.S. 810, 103 S. Ct. 35 (1982)..............18, 19

*Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507 (9th Cir. 1978).................22

*Lovell v. Chandler*, 303 F.3d 1039 (9th Cir. 2002) .................................................8

*Lozano v. Ocwen Federal Bank, FSB*, 489 F.3d 636 (5th Cir. 2007)......................12

*Oregon Advocacy Center v. Mink*, 322 F.3d 1101 (9th Cir. 2003) ..................24, 25

*Pederson v. Louisiana State University*, 213 F.3d 858 (5th Cir. 2000)..................19

*Poweragent v. Electronic Data Systems*, 358 F.3d 1187 (9th Cir. 2004)...............11

*Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597 (9th Cir. 1996) ...................................................................................................11, 12

*Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355 (3rd Cir. 1996) ..............................................................................................11

*San Antonio Hispanic Police Officers' Organization, Inc. v. City of San Antonio*, 188 F.R.D. 433 (W.D. Tex. 1999) ............................................................16

*Susan J. v. Riley*, 254 F.R.D.  439 (M.D. Ala. 2008) ........................................16, 17

*UNUM Corp. v. United  States*, 886 F. Supp. 150 (D. Me. 1995)....................11, 12

## FEDERAL RULES AND STATUTES

20 U.S.C. § 1232d(b)(7) ........................................................................................10

20 U.S.C. § 1400, *et seq.*........................................................................................1

20 U.S.C. §§ 1411-1419 ........................................................................................8

20 U.S.C. § 1412(a) .....................................................................................3, 4, 20

20 U.S.C. § 1412(a)(1)(B) .....................................................................................4

20 U.S.C. § 794(a) .................................................................................................7

29 U.S.C. § 501 *et seq.*..........................................................................................23

29 U.S.C. § 794e .............................................................................................22, 23

29 U.S.C. § 794e(f)(6) ..........................................................................................24

42 U.S.C. § 10801 *et seq*................................................................22

42 U.S.C. § 10802................................................................23

42 U.S.C. § 10805................................................................23

42 U.S.C. § 10805(a)(6)(B-C) ................................................................24

42 U.S.C. § 10805(c)(1)(B) ................................................................24

42 U.S.C. § 12101 *et seq*................................................................23

42 U.S.C. § 12132 ................................................................8

42 U.S.C. § 15001 *et seq.*................................................................22

42 U.S.C. § 15002................................................................23

42 U.S.C. § 15043................................................................23

FRCP Rule 23(a)................................................................2, 25

FRCP Rule 23(a)(1) ................................................................16

FRCP Rule 23(a)(2) ................................................................19

FRCP Rule 23(b)(2) ................................................................3, 25

FRE 902(5)................................................................9

## STATE RULES AND STATUTES

H.A.R. § 8-56-15................................................................9, 10

H.A.R. § 8-60-38(d)(2) ................................................................6, 9

H.R.S. § 302A-443(3)................................................................6

H.R.S. § 333F-8.5................................................................22

## MISCELLANEOUS

Newberg and Conte, *Newberg on Class Actions* § 3.6 (4th ed. 2002) ....................18

## MEMORANDUM IN SUPPORT OF MOTION

## I.    INTRODUCTION

The named Plaintiffs in this action (other than Plaintiff HAWAII

DISABILITY RIGHTS CENTER) are disabled individuals between the ages of 20

and 21 who are entitled to receive special education and related services from

Defendant Department of Education of the State of Hawai`i ("DOE") under the

Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq*.

Plaintiffs seek to represent a class of similarly-situated disabled individuals to

ensure that all class members continue to receive special education and related

services until the age of 22, as required by the IDEA.

The class's rights under the IDEA are threatened by the recent

passage of Act 163 (attached as Exhibit "A"), which was enacted in an attempt to

minimize the DOE's obligations under the IDEA and circumvent this Court's

rulings in *B.T. v. Department of Education*, 637 F.Supp.2d 856, 865-866 (D. Haw.

2009) and 2009 WL 4884447 at *5-8 (D. Haw. December 17, 2009) (attached as

Exhibit "B"), Civ. No. 08-356 DAE-BMK.

Despite Act 163, members of the class are entitled to continued

special education and related services because the DOE through its adult education

program continues to provide the equivalent of a high school education to non-

disabled students regardless of age and because the DOE is estopped from denying

those services as it represented to the U.S. Department of Education that it provided IDEA services to individuals through the age of 21.

Class certification is appropriate under FRCP Rule 23(a) because Plaintiffs meet the prerequisites of: (1) numerosity; (2) common issues of law and fact; (3) typicality; and (4) adequate representation.  There are hundreds of disabled individuals between the ages of 20 and 22 in Hawai`i who are entitled to receive special education and related services under the IDEA.  Whether the DOE's enforcement of Act 163 violates the IDEA, the Rehabilitation Act, and the Americans With Disabilities Act involves commons issues of law (*i.e.* the interpretation of Hawai`i law and these federal laws) and fact (*i.e.* the DOE's practice of providing the equivalent of a high school education to non-disabled individuals regardless of age and the DOE's representations to the U.S. Department of Education).  The named Plaintiffs' claims are typical of those of the class because they allege the same claims and have suffered the same injuries – the imminent risk that they will be deprived of special education and related services prior to reaching 22 years of age and discrimination on account of disability.  Finally, the named Plaintiffs including Plaintiff Hawaii Disability Rights Center ("HDRC") will adequately represent the class because they do not have any conflicts of interest with any class members and because they are represented by class counsel with vast experience in civil rights class actions.

Class certification is appropriate under subsection (b)(2) of Rule 23 because the DOE has "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."  Act 163 – by enacting a purported blanket age limit of 20 on admission to public school – is by its terms absolute and there is no reason to believe the DOE will not apply it uniformly to all members of the class.

## II.   PROPOSED CLASS DEFINITION

Plaintiffs seek certification of a class defined as follows:

> All individuals residing in the State of Hawai`i who over the age of 20 on or before the first instructional day of the school year (or who will imminently be over the age of 20 on that date) but under the age of 22 who are entitled to receive special education and related services from Defendant the Hawai`i Department of Education under the Individuals With Disabilities Education Act.

## III.   STATEMENT OF FACTS AND SUBSTANTIVE LAW

### A.   The IDEA's Age Provisions

The IDEA provides that each state shall provide a free appropriate public education ("FAPE") to "all children with disabilities ... between the ages of 3 and 21, inclusive...."  20 U.S.C. § 1412(a).  Federal eligibility for special education and related services ends, therefore, when a student becomes 22.  *B.T. v. Department of Education,* 637 F. Supp. 2d 856, 863, n. 9 (D. Haw. 2009).

States may impose different age limitations, however, to the extent the same age limitations are applied for public education generally:

> The obligation to make [FAPE] available to all children with disabilities does not apply with respect to children –
>
> (i) aged 3 through 5 and 18 through 21 in a State to the extent that its application to those children would be inconsistent with State law or practice, or the order of any court, respecting the provision of ***public education*** to children in those age ranges....

20 U.S.C. § 1412(a)(1)(B) (emphasis added).

## B.   *B.T.* and Act 163

In *B.T. v. Department of Education,* this Court applied 20 U.S.C. § 1412(a) and held that the State of Hawai`i could not deny special education services to a student based solely on that student's attaining the age of 20. Exhibit "B."  The Plaintiff in *B.T.* had argued that extending a free appropriate public education ("FAPE") to age 22 would be consistent with Hawai`i law and practice and that an administrative rule of the DOE that terminated special education services at age 20 was therefore invalid.  This Court granted summary judgment to the Plaintiff on his IDEA claim because general education students over 20 could obtain a public education if they met the age limits upon entering the ninth or tenth grade or received a waiver from a school principal.  *Id.*  In an earlier order, this Court also recognized that non-disabled individuals over the age of 20 could pursue secondary education in the adult education program.  *B.T. v.*

*Department of Education,* 2008 WL 3891867 at *4 (D. Haw. Aug. 21, 2008)

(Order Granting Plaintiff's Motion for a Preliminary Injunction entered August 21,

2008).

Act 163 – the State law amendment upon which the DOE relied in

eliminating services to the named Plaintiffs – purported to impose a 20-year age

limit on admission to public school in an attempt to reverse this Court's rulings in

*B.T.* Exhibit "A." Act 163 states that "no person who is twenty years of age or

over on the first day of the school year shall be eligible to attend a public school."

*Id.*

### C. The DOE's Provision of Public Education to Non-Disabled Individuals Regardless of Age.

Although Act 163 purports to impose an age limit of 20 for attendance

at a ***public school***," (emphasis added), the DOE continues to provide a ***public***

***education*** to students over the age of 20 through the CB (competency-based) and

GED (General Education Development) high school equivalency programs.

Plaintiffs allege that those equivalency programs are "public education" offered to

students in the age range of 20-22, as that term is used in IDEA. Act 163 therefore

terminated the right of students over 20 under the first two parts of this Court's

ruling in *B.T.* as set forth above, but it left the third option (the adult education

program) recognized in this Court's grant of a preliminary injunction to *B.T.* in

place.

Plaintiffs contend that the DOE's equivalency programs should be deemed "public education" under the IDEA for several reasons.  First, the Board of Education **admits***,* as a matter of policy, that the adult education program is "an integral part of public education in Hawai`i."  Exhibit "C" to attached Declaration of John P. Dellera ("Dellera Decl.").  Second, high school equivalency diplomas are so named because they are the ***equivalent*** of regular diplomas for many purposes (entry to college, service in the military, employment opportunities).  *See "Diploma, GED Method"* attached as Exhibit "D" to Dellera Decl.  Third, equivalency courses are offered in public schools funded by the DOE, and they are specifically for the purpose of allowing older students to complete their secondary education.  H.R.S. § 302A-443(3).  Fourth, the DOE steers students older than 18 into the adult education program to obtain a high school equivalency diploma, Exhibit "E" to Dellera Decl. at 102:18 – 103:5, and several hundred individuals of all ages receive the equivalent of a high school education in this manner.  *See* "Diploma Distress," Honolulu Star Advertiser, June 27, 2010, attached as Exhibit "F" to Dellera Decl.

Although disabled individuals are not *per se* excluded from the high school equivalency program, the DOE's administrative rules end special education and related services at age 20, H.A.R. § 8-60-38(d)(2), and the designated representative of the DOE in *B.T.* was not aware of ***any*** disabled individuals who

were receiving instruction in the adult education program under an IDEA IEP.

Exhibit "E" to Dellera Decl. at 69:22 – 70:15; 98:12 – 99:2.  Rather, such plans are

only available to young adults in the high schools – which are now completely

closed to disabled students between the ages of 20 and 22.  *Id.* at 98:21 – 99:13.

Given this context, Plaintiffs allege that Act 163 is a clumsy attempt

to continue the State's discrimination against students with disabilities age 20 and

21 contrary to the IDEA by denying them a secondary education, while their

nondisabled peers are allowed to pursue their secondary education until age 22 and

beyond.

**D.    The Rehabilitation Act and the Americans With Disabilities Act.**

Discrimination against persons with disabilities in federally-funded

programs is prohibited by Section 504 of the Rehabilitation Act of 1973, which

provides:

> No otherwise qualified individual with a disability ...
> shall, solely by reason of her or his disability, be
> excluded from the participation in, be denied the benefits
> of, or be subjected to discrimination under any program
> or activity conducted by any Executive Agency....

20 U.S.C. § 794(a).  To prove a claim for a violation of Section 504, the plaintiff

must prove that: "(1) she is handicapped within the meaning of the RA; (2) she is

otherwise qualified for the benefit or services sought; (3) she was denied the

benefit or services solely because of her disability; and (4) the program providing

the benefit or services receives federal financial assistance." *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002).[1]

As set forth above, Hawai'i offers a number of ways for non-disabled students over 20 to obtain a public education, and there is no maximum age for such students. By contrast, Act 163 excludes disabled students who have reached 20 years of age from public education, except to complete the school year during which they become 20. Plaintiffs claim that this discrimination violates the Rehabilitation Act and the Americans With Disabilities Act.

### E.   Judicial Estoppel

Plaintiffs also bring a claim for judicial estoppel and/or estoppel by contract. By letter dated April 30, 2008, the DOE applied for IDEA Part B funding for Federal Fiscal Year 2008.[2] *See* Application at Section II, item 1, attached as Exhibit "G" to Dellera Decl. and authenticated by Exhibit "E" at 47:24 – 49:4. An

---

[1] Plaintiffs also raise a claim for violation of Title II of the Americans With Disabilities Act, 42 U.S.C. § 12132, which prohibits discrimination against the disabled in any "services, programs, or activities of a public entity." Here, the provision of educational services by the DOE is clearly a service, program, or activity of a public entity. In this case, the Rehabilitation Act and Americans With Disability Act claims are functionally identical.

[2] The application uses the term "Part B of IDEA," but that was redesignated as "Subchapter II" (20 U.S.C. §§ 1411-1419) by Pub.L. 105-17 (June 4, 1997), 111 Stat. 37.

application was also submitted in 2010, which is essentially the same.  Exhibit "H"

to Dellera Decl.[3]  In both applications, the DOE represented that:

> A free appropriate public education is available to all
> children with disabilities residing in the State between
> the ages of 3 and *21*, inclusive… (Emphasis added.)

Section IV of the applications requires that the State identify in writing

any State rule or regulation not required by IDEA Part B or federal regulations that

relates to the State's eligibility for funding.  The DOE purported to comply with

that requirement by including the following in the "Section IV Attachment":

> State requirements include eligibility criteria to
> implement the IDEA-2004 eligibility categories.  The
> following may be construed as providing State-imposed
> mandates that are not required by IDEA-2004:
>
> • General eligibility criteria for the occurrence of
>   birthdays for children at age three and age twenty
>   to implement the applicable age ranges in the State
>   of Hawaii….

Exhibits "G" & "H" at Section IV-2.  According to a letter from Paul K. Ban, the

DOE's "age-out" rule (then H.A.R. § 8-56-15, now H.A.R. § 8-60-38(d)(2)) was

not attached to the FY 2008 application, but a copy was "previously provided" to

the Secretary of Education.  Exhibit "I" to Dellera Decl.  Thus, the DOE

---

[3] The 2010 application is self-authenticating pursuant to FRE 902(5) as an official
publication of the DOE.  As set forth below, this application was required to be
published and made available to the general public for comment.

represented that FAPE is available to disabled children between the ages of 3 and 21, inclusive, but it failed to disclose in terms a layperson could understand that it actually terminates special education at age 20.

The DOE may argue that it did not mislead the U.S. Department of Education because employees in one of the divisions of that department were informed in years past that special education ended at age 20 in Hawai`i. Whether that is true or not is immaterial, however, because Respondent's application for IDEA funds clearly misled the general public. The DOE was required to "provide reasonable opportunities for the participation by … representatives of the class of individuals affected … and other interested individuals" in planning for the use of IDEA funds and to publish its application for funds with an opportunity for public comment. 20 U.S.C. § 1232d(b)(7). Plaintiffs allege that the cryptic reference to "the occurrence of birthdays" in the Section IV Attachment is not reasonable notice that the affirmative representation in Section II is untrue. Nor did the DOE reasonably inform the public by having "previously provided" a copy of H.A.R. § 8-56-15 to someone at the U.S. Department of Education at some undisclosed time in the past.

In sum, Plaintiffs allege that the DOE misrepresented that it provides FAPE to disabled students through age 21 so it could get receive substantial IDEA funds from the federal government. Now, the DOE claims that it has a right to

terminate FAPEs at age 20, thereby depriving members of the class of the funds the DOE obtained by representing it would use them for their benefit.

Judicial estoppel is "the principle that a litigant may not benefit by making directly contradictory arguments regarding the same dispute in different tribunals." *Poweragent v. Electronic Data Systems,* 358 F.3d 1187, 1192 (9th Cir. 2004).  It precludes a party from gaining an advantage in one case by taking a particular position, and then "taking a clearly inconsistent position in either the same litigation or a different case concerning the same dispute." *Id*. at 1192-93, citing *Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778, 782-83 (9th Cir. 2001).

Judicial estoppel is not limited to cases where inconsistent positions are taken in judicial proceedings.  Because "a court has an extremely strong interest in being able to employ judicial estoppel in order to protect its integrity," *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.,* 81 F.3d 355, 358 (3rd Cir. 1996), the doctrine also applies where the prior statement was made to an administrative agency.  *Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 604 (9th Cir. 1996).  Judicial estoppel has been applied, for example, to statements made in applications to an administrative agency to convert from a mutual insurance company to a stock insurance company, *UNUM Corp. v. United*

*States,* 886 F. Supp. 150, 158 (D. Me. 1995), and applications for disability

benefits, *see Rissetto, supra,* 94 F.3d at 604, n. 4.

      Here, the DOE represented one thing to a federal executive agency

and received a benefit as a result – several millions of dollars in IDEA funds.  It

now seeks to take a contrary position on exactly the same issue before a federal

court in an effort to avoid spending those funds as represented.  Plaintiffs therefore

allege that the DOE should be estopped from taking the position it will take here.[4]

      Plaintiffs allege that the doctrine of estoppel by contract (also known

as quasi-estoppel) also applies here.  The DOE's application was essentially a

contract between the DOE and the federal government for the receipt of IDEA

funds.  Estoppel by contract applies where "it would be unconscionable to allow a

person to maintain a position inconsistent with one to which … he accepted a

benefit."  *Lozano v. Ocwen Federal Bank, FSB*, 489 F.3d 636, 640 (5th Cir. 2007)

(internal quotation omitted and alteration in original).  "In other words, the

doctrine forbids a party from accepting the benefits of a transaction and then

subsequently taking an inconsistent position to avoid corresponding obligations or

effects."  *Id.*  Here, the DOE received a benefit based on the assurance that it

---

[4] The Plaintiff in *B.T.* made a similar argument, but the Court did not rule on it
because such a determination was not necessary for the disposition of that case.
Exhibit "B" at *9, n. 3.

would provide FAPEs to disabled individuals through the age of 21 but now seeks to avoid the obligation to do so.  Plaintiffs allege that the DOE should be estopped from taking a position inconsistent with the benefits it received under a contract with the U.S. Department of Education.

     **F.**    **The Class Representatives**

     R.P.-K. is 20 years old and has been diagnosed with autism disorder. Attached Declaration of C.K. ("C.K. Decl.") at ¶ 2.  His disabilities require specialized instructions in a small, supportive, and structured environment.  *Id.* at ¶ 9.  R.P.-K. attends Castle High School and he has received special education services from the DOE since 2005.  C.K. Decl. at ¶ 3.

     His mother, C.K., twice requested that he continue receiving special education services beyond the 2009-10 school year.  C.K. Decl. at ¶¶ 4-5 and attached Exhibits "1"-"2."  The DOE initially refused to make a decision on these requests and C.K. therefore filed a Request for Impartial Due Process Hearing.  *Id.* at ¶¶ 4-6 and attached Exhibits "1" – "3."  On July 26, 2009, the DOE advised C.K. that it would not provide continued educational services to R.P.-K. on the grounds that he had reached 20 years of age.  *Id.* at ¶ 8.

     The Request for Due Process Hearing is still pending.  The DOE has agreed that it will continue to provide services to R.D. while that due process hearing is pending (including appeals).  *See* Exhibit "A" attached to Plaintiffs R.P.-

K. and R.T.D.'s Withdrawal of Motion for a Temporary Restraining Order and Preliminary Injunction, Filed on July 30, 2010, filed on August 2, 2010 [DE 7].

R.T.D. is also 20 years old and has been diagnosed with Downs Syndrome, mental retardation, Autism Spectrum Disorder, and Obsessive Compulsive Disorder.  Attached Declaration of R.D. ("R.D. Decl.") at ¶ 1.  R.T.D. is also hearing and vision impaired, has limited communication skills, and requires constant supervision in his daily activities to avoid harming himself or others.  *Id.* at ¶¶ 1, 7, & 11.  R.T.D. has attended Kaleheo High School since 2005 and receives special education from the DOE there.  *Id.* at ¶ 2.

Although R.T.D. and his parents engaged in several meetings with representatives of the DOE between January and June of this year to establish an Individualized Education Plan ("IEP") for the summer of 2010 and the 2010-11 school year, the DOE advised R.D. on June 28, 2010 that special education services would cease after July 30, 2010 because R.T.D. was over 20 years old. R.D. Decl. at ¶¶ 3-4 and attached Exhibit "1."

R.D. therefore filed a Request for Due Process Hearing, which is pending.  R.D. Decl. at ¶ 5 and attached Exhibit "2."  The DOE has agreed that it will continue to provide services to R.D. while that due process hearing is pending (including appeals).  *See* Exhibit "A" attached to Plaintiffs R.P.-K. and R.T.D.'s

Withdrawal of Motion for a Temporary Restraining Order and Preliminary

Injunction, Filed on July 30, 2010, filed on August 2, 2010 [DE 7].

B.P. is 21 years old and will become 22 in January 2011. Attached

Declaration of M.P. ("M.P. Decl.") at ¶ 2. She has been diagnosed as having

disruptive behavior disorder, not otherwise specified, generalized anxiety disorder,

fetal alcohol syndrome, mild mental retardation disorder, hyperopia and

astigmatism, seizure disorder, cardio-pulmonary problems, mild cerebral palsy,

orthopedic problems secondary to hip surgery, central auditory processing

disorder, and sensory integration issues. *Id.* B.P. has attended Loveland Academy

since 2006, most recently under a due process decision placing her there through

the end of the 2010 school year including extended school year. *Id.* at ¶ 3. Her

home school is Mililani High School. *Id.*

The DOE advised M. P. that special education would end for her

daughter at the end of Extended School Year 2010 pursuant to Act 163. M.P.

Decl. at ¶ 4. M.P. therefore filed a Request for Due Process Hearing, which is

pending. *Id.* The DOE has agreed that it will continue to provide services to B.P.

while that due process hearing is pending (including appeals). *Id.*

C.B. is a 21-year old student diagnosed with Autistic Disorder,

Disruptive Behavior Disorder, Obsessive Compulsive Disorder, Mild Mental

Retardation, and Seizure Disorder. Attached Declaration of N.B. ("N.B. Decl.") at

¶ 2.  C.B. has attended Kailua High School since 2003 and has been receiving

special education and related services.  *Id.* at ¶ 3.  Although N.B. requested

continued educational services in June 2009, the DOE refused because C.B. was

over 20 years old.  *Id.* at ¶ 4 and attached Exhibit "2."

C.B. filed a Request for Due Process, and a hearing was held.  The

decision was adverse to C.B. and an appeal to the U.S. District Court of Hawai`i,

*C.B. vs  Dep't of Education*; Civ. No. 10-00317 DAE-LEK is pending before this

Court.  The DOE has agreed to continue to provide educational services to C.B.

during the appeal.  Dellera Decl. at ¶ 3.

## IV.   ARGUMENT

### A.    The Proposed Class Satisfies the Requirements of Rule 23(a).

#### 1.    The Class Is So Numerous That Joinder of All Members Is Impracticable.

Plaintiffs satisfy the "numerosity" requirement of Rule 23(a)(1), as the

proposed class is "so numerous that joinder of all members is impracticable."  To

meet the numerosity requirement, "the exact number of potential members need

not be established nor do the members of the class need to be identified

individually*." San Antonio Hispanic Police Officers' Organization, Inc. v. City of

San Antonio*, 188 F.R.D. 433, 442 (W.D. Tex. 1999)  "When the exact number of

class members cannot be ascertained, the court may make common sense

assumptions to support a finding of numerosity."  *Susan J. v. Riley*, 254 F.R.D.

439, 458 (M.D. Ala. 2008).  In addition to looking to the number of plaintiffs in the class, courts also look to whether other factors – such as the plaintiffs' socio-economic status, which may affect the likelihood of separate actions being brought – also make joinder impracticable.  *See Amone v. Aveiro*, 226 F.R.D. 677, 684 (D. Haw. 2005).  In this case, Plaintiffs meet both the numerosity requirement as well as the impracticability requirement.

Here, the number of putative class members makes joinder impracticable, if not impossible.  Documents produced in the *B.T.* litigation show that in the 2008-09 school year, the Hawai`i public schools had the following number of special education students in grades 9-12:

| 9th | 10th | 11th | 12th |
|------|------|------|------|
| 1986 | 1730 | 1473 | 1332 |

*See* Exhibit "J" to Dellera Decl.  These figures are very consistent with those for previous school years.  *Id.*  Although the number of special education students decreases with each grade level, it is likely that – even with a substantial drop off between those in the 12th grade as of the 2008-09 school year and the ages included in the Class (20-22), there are several hundred individuals in the Class.

Prevailing consensus is that the class is sufficiently numerous if there are as few as 40 class members.  *See Amone,* 226 F.R.D. at 684 (holding that

present and past disabled residents of public housing fulfilled the numerosity requirement since the potential class likely exceed 40 members although the precise number and identity of the members were not definitively ascertained); Newberg and Conte, *Newberg on Class Actions* § 3.6 (4th ed. 2002); *see also Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319 & nn. 9-10 (9th Cir. 1982), *vacated and remanded on other grounds*, 459 U.S. 810, 103 S. Ct. 35 (1982). The number of putative class members therefore satisfies Rule 23's numerosity requirement.

Joinder is further impracticable because the putative class is comprised exclusively of learning-disabled young adults "whose financial circumstances may prevent them from pursuing individual litigation, who are unlikely to know that a cause of action exists, and whose individual claims are likely to be too small to make individual litigation feasible." *Amone*, 226 F.R.D. at 684. It is highly unlikely that these individuals would bring individual actions against the DOE challenging the validity of a state law if the class is not certified. Bringing individual actions would be impracticable and burdensome. Accordingly, considerations of impracticality lean heavily towards certification of this class.

Moreover, joinder is impracticable as a matter of law because of the inclusion of future members in the proposed class. The inherent difficulty in identifying who would be qualified for a FAPE in the absence of Act 163's

purported age limitation in the future makes joinder impracticable.  Courts have held that joinder is impracticable based upon this factor alone even where the potential class was composed of relatively few identified members.  For example, in *Pederson v. Louisiana State University,* 213 F.3d 858 (5th Cir. 2000), the Fifth Circuit reversed the district court's decision to decertify a class of women athletes because of lack of numerosity, holding that the inclusion of future female students satisfied numerosity.  "We have found the inclusion of future members in the class definition a factor to consider in determining if joinder is impracticable."  *Id.* at 686, n. 11.  *See also Jordan,* 669 F.2d at 1320 ("[T]he class is composed of unnamed and unknown future black applicants who may be discriminated against by the County's employment practices.  The joinder of unknown individuals is inherently impracticable.").

### 2.    There Are Numerous Questions of Law And Fact Common To The Class.

Rule 23(a)(2) requires questions of law or fact that are common to the class.  "Commonality" is established by "***the existence of shared legal issues with divergent factual predicates***" or, in the alternative, "***a common core of salient facts coupled with disparate legal remedies within the class***."  *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998) (emphasis added); *see also Doe v. Los Angeles Unified School Dist.*, 48 F. Supp. 2d 1233, 1241-42 (C.D. Cal. 1999).  The Ninth Circuit "considers the requirements for finding commonality under

Rule 23(a)(2) to be 'minimal.'" *Bates v. United Parcel Serv.,* 204 F.R.D. 440, 445

(N.D. Cal. 2001) (*citing Hanlon*, 150 F.3d at 1020).

This case presents both "shared legal issues" and "a common core of

salient facts" that more than satisfy this "minimal" requirement:

- Whether Act 163 is sufficient to override the IDEA's default age limitations in 20 U.S.C. § 1412(a);

- Whether the DOE provides individuals the equivalent of a high school education regardless of age;

- Whether enforcing Act 163 as to disabled individuals while providing non-disabled individuals the equivalent of a high school education regardless of age constitutes discrimination on account of disability prohibited by the Rehabilitation Act and the Americans With Disabilities Act;

- The representations made by the DOE to the United States Department of Education regarding the ages of the individuals to whom the DOE provides IDEA services and whether the United States Department of Education relied on those representations in calculating the IDEA funding for the DOE; and

- Whether the DOE is estopped from denying FAPEs to those who have reached the age of 20 before the first instructional day of a given school year and are not yet 22 because it represented to the United States Department of Education that it would provide FAPEs to all eligible students between the ages of 3 and 21, inclusive.

### 3. Plaintiffs' Claims Are Typical of the Class.

To satisfy the requirement of typicality, "a class representative must

be part of the class and possess the same interest and suffer the same injury as the

class members." *General Tel. Co. of S.W. v. Falcon,* 457 U.S. 147, 156, 102 S.Ct.

2364, 2370 (1982).  "Under the rule's ***permissive standards,*** representative claims are 'typical' if they are ***reasonably co-extensive with those of absent class members; they need not be substantially identical***." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998) (emphasis added).

The claims of the individual named Plaintiffs are typical of the claims of the other putative class members.  The individual named Plaintiffs are members of the class and have each been threatened with the loss of a FAPE before they reach the maximum age for eligibility under the IDEA.  Their rights under the IDEA have therefore been impaired.  Furthermore, because they have been deemed ineligible for continued special education and related services on the basis of their age while their non-disabled peers are able to pursue the equivalent of a high school education regardless of age, they have experienced discrimination on account of their disabilities.  These as the same injuries that members of the class are suffering, and unless this Court grants relief, will continue to suffer.  Although each of the individual named Plaintiffs has received temporary protection as a result of individual "stay put" agreements, there is no guarantee that such agreements will remain in place until they reach 22.

### 4. Plaintiffs Will Fairly and Adequately Protect the Interests of the Class.

Representation is adequate if (a) the named representative appears able to prosecute the action vigorously through qualified counsel; and (b) the class

representative is not disqualified by any interest antagonistic to the remainder of the class. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). Here, the Plaintiffs are severely disabled and are therefore represented by their parents. As demonstrated in the attached declarations by these parents, they have all actively and aggressively protected the rights of their children under the IDEA.

Plaintiffs' counsel have substantial expertise in class action, civil rights and disability law and are capable of adequately representing Plaintiffs in the prosecution of this high-impact and important civil rights litigation. Specifically, Plaintiffs are represented by Alston Hunt Floyd & Ing, which has extensive experience in representing members of minority groups in complex civil rights litigation against the State, and by the HDRC, which has extensive experience in enforcing the rights of individuals with disabilities, including under the IDEA. *See* Declaration of Paul Alston; Dellera Decl. at ¶ 16.

The HDRC also seeks to be a class representative in this matter. The HDRC is a Hawai`i non-profit corporation based in Honolulu, Hawai`i. Dellera Decl. at ¶ 14. Its mission – defined by federal law (29 U.S.C. § 794e and 42 U.S.C. §§ 10801 *et seq.* and 15001 *et seq.*) and state law (H.R.S. § 333F-8.5) – is to defend and enforce the legal rights of people with disabilities. *Id.* It serves mentally ill and disabled persons throughout the State. *Id.* The Protection and

Advocacy Systems established in each State by the federal laws cited above have

the authority to pursue legal, administrative, and other appropriate remedies or

approaches to ensure the protection of, and advocacy for, the rights of individuals

within the State who are disabled or mentally ill, pursuant to 42 U.S.C. § 10805,

42 U.S.C. § 15043, and 29 U.S.C. § 794e.

  The HDRC is pursuing this action to protect and advocate for the

rights and interests of "individuals with mental illness, "individuals with a

"developmental disability," and other individuals with disabilities, as those terms

are defined in 42 U.S.C. §§ 10802 and 15002 and 29 U.S.C. § 794e.  These

individuals are the HDRC's constituents.  These constituents have a significant

mental illness, developmental disability, or other impairment that substantially

limits one or more major life activities, including personal care, working, and

sleeping.  They are therefore individuals with disabilities for purposes of the

Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* and the Rehabilitation

Act, 29 U.S.C. § 501 *et seq.*

  The HDRC has standing to maintain this action on behalf of its

constituents who are members of the class sought to be certified in this action and

their parents.  An organization may sue on behalf of its members if:

> (a) its members would otherwise have standing to sue in
> their own right; (b) the interests it seeks to protect are
> germane to the organization's purpose; and (c) neither

the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343, 97 S. Ct. 2434, 2441 (1977).

Here, the HDRC's constituents include members of the proposed class who would have standing to sue in their own right.  Although the HDRC does not have "members," its constituents are the "functional equivalent of members for purposes of associational standing."  *Oregon Advocacy Center v. Mink*, 322 F.3d 1101, 1110 (9th Cir. 2003) (holding that Oregon's Protection and Advocacy organization had standing to sue on behalf of its constituents).  The HDRC's constituents have many of the indicia of membership, including representation on the HDRC's Board of Directors and PAIMI Advisory Counsel and the right to exercise a grievance procedure to assure that they have access to the Protection and Advocacy system, pursuant to 29 U.S.C. § 794e(f)(6), 42 U.S.C. § 10805(c)(1)(B), and 42 U.S.C. § 10805(a)(6)(B-C).  Dellera Decl. at ¶ 15.  *See Oregon Advocacy Center*, 322 F.3d at 1111-12.

Furthermore, the interests the HDRC seeks to protect through this lawsuit are germane to its purpose, which is to defend and enforce the legal rights of people with disabilities.  Through this lawsuit, it seeks to ensure that its constituents receive all the special education services to which they are entitled under the IDEA and do not suffer discrimination on account of their disabilities.

Finally, whether the claim presented or the relief requested requires the participation of individual members is irrelevant as to Protection and Advocacy organizations since they are specifically authorized by federal statute to bring litigation on behalf of their constituents. *Id.* at 1113 ("We hold that in light of the role Congress assigned by statute to advocacy organizations such as OAC, Congress abrogated the third prong of the *Hunt* test.")

The HDRC has standing to pursue this litigation on behalf of its constituents. It is therefore an adequate class representative pursuant to FRCP Rule 23(a). Allowing the HDRC to be a class representative in this matter will avoid concerns of mootness, given the narrow window of time in which a given individual will be a member of the class.

## B. The Proposed Class Also Meets the Requirements of Rule 23(b)(2) and Should Be Certified.

Because Plaintiffs' proposed class seeks systemic injunctive relief that will benefit all putative class members, Plaintiffs' class definition also satisfies the requirements of Rule 23(b)(2). Rule 23(b)(2) permits maintenance of a class action if the "party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." FRCP Rule 23(b)(2). It is not necessary for every single class member to have been injured or aggrieved in the same way by the defendant's conduct, or that the

defendant has acted directly against each member of the class.  It is sufficient if defendant's actions "affect all persons similarly situated."  *Christman v. American Cyanamid Co.*, 92 F.R.D. 441, 453 (N.D.W. Va. 1981).

The DOE is required to and apparently intends to enforce the purported blanket age limitation of Act 163 uniformly to all class members. Nothing in Act 163 allows the DOE to enforce it only selectively or to provide exceptions.

Furthermore, Plaintiffs claim that the enforcement of Act 163 violates the rights of all class members under the IDEA and discriminates against all class members in violation of the Rehabilitation Act and the Americans With Disabilities Act.  The fact that this is a civil rights action where the class representative seeks primarily injunctive and declaratory relief against discriminatory practices and procedures makes it particularly well suited for certification under 23(b)(2).  *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 614, 117 S. Ct. 2231, 2245 (1997) ("Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples" of Rule 23(b)(2) cases).

## V.     CONCLUSION

For all the reasons stated above, the Court should certify the class proposed by Plaintiffs in this matter.

DATED: Honolulu, Hawai`i, September 24, 2010.


/s/ Jason H. Kim
JOHN P. DELLERA
MATTHEW C. BASSETT
PAUL ALSTON
JASON H. KIM
Attorneys for Plaintiffs