IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| R.P.-K., through his parent C.K., R.T.D., through his parents R.D. and M.D., B.P., through her parent M.P., and C.B., through his parent N.B., for themselves and on behalf of a class of those similarly situated, and the HAWAII DISABILITY RIGHTS CENTER, in a representative capacity on behalf of its clients and all other similarly situated,<br><br>        Plaintiffs,<br><br>   vs.<br><br>DEPARTMENT OF EDUCATION, STATE OF HAWAII,<br><br>        Defendant.<br>_____ | Civ. No. 10-00436 DAE/KSC |

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

On March 14, 2011, the Court heard Plaintiffs' Motion for Class

Certification ("Motion"). Jason H. Kim, Esq., and John P. Dellera, Esq., appeared

at the hearing on behalf of Plaintiffs, Deputy Attorney General Steve K. Miyasaka

appeared at the hearing on behalf of Defendant Department of Education

("Defendant" or "DOE").  After reviewing the motion as well as the supporting

and opposing memoranda, the Court **GRANTS IN PART and DENIES IN**

**PART** Plaintiff's Motion for Class Certification (Doc. # 15). Specifically, the class is certified with R.P.-K., R.T.D., and the Hawaii Disability Rights Center as the class representatives. C.B. and B.P., however, are ineligible to be class members or representatives and are hereby **DISMISSED** from the action.

BACKGROUND

The named Plaintiffs in this case—excluding Plaintiff Hawaii Disability Rights Center ("HRDC")—are all disabled individuals who are or had been eligible for special education under the Individuals with Disabilities Education Act ("IDEA"). In this litigation Plaintiffs are challenging the validity of Act 163 of the Session Laws of Hawai'i for 2010 ("Act 163") arguing it is an invalid attempt at circumventing this Court's holdings in B.T. v. Dep't of Educ., 637 F. Supp. 2d 856 (D. Haw. 2009) (hereinafter "B.T. I") and B.T. v. Dep't of Educ., CV. Nos. 08-00356 DAE-BMK, 09-00059 DAE-BMK, 2009 WL 4884447 (D. Haw. Dec. 17, 2009) (hereinafter "B.T. II"). At present, the issue before the Court is the Plaintiffs' Motion to Certify the following class:

> All individuals residing in the State of Hawai'i who over the age of 20 on or before the first day of the school year (or who will imminently be over the age of 20 on that date) but under the age of 22 who are entitled to receive special education and related services from Defendant the Hawai'i Department of Education under the Individuals With Disabilities Education Act.

("Mot.," Doc. # 15 at 3.)

I.    _B.T._ and Act 163

The IDEA requires each state provide a free appropriate public education ("FAPE") to "all children with disabilities . . . between the ages of 3 and 21, inclusive . . . ." 20 U.S.C. § 1412(a). This Court determined that federal eligibility for special education and related services therefore ends when a student becomes twenty-two. B.T. I, 637 F. Supp. 2d at 863–64 n.9. States may impose different age limitations, however, provided those same limitations are applied to the public general education students as well. 20 U.S.C. § 1412(a)(1)(B) ("The obligation to make [FAPE] available to all children with disabilities does not apply with respect to children . . . aged 3 through 5 and 18 through 21 in a State to the extent that its application to those children would be inconsistent with State law or practice . . . ."); see also B.T. I, 637 F. Supp. 2d at 863 ("The State is only allowed to deviate from the requirements of the IDEA if there is a clear State law that says otherwise.").

In B.T., Plaintiff B.T. was a severely autistic twenty year old. B.T. I, 637 F. Supp. 2d at 859. He argued that extending a FAPE to the age of twenty-two was consistent with Hawaii law and that the Department of Education's ("DOE") policy of terminating special education services at the age of twenty was invalid

3

given the terms of the IDEA.  See id. at 862–65.  The Court agreed.  Specifically the Court focused on the "nature of the practice of Hawaii's schools toward students 20 years or older" and found that "Defendant has approved every single overage general education student and barred almost every single overage special education student."  Id. at 865.  Accordingly the law violated the IDEA and "Hawaii [had denied] these students a meaningful education."  Id. at 865–66.  Hawaii therefore was "enjoined from implementing a per se rule denying special education services based solely on [the students] attaining the age of 20."  Id. at 866.  The Court subsequently granted summary judgment, in part, for Plaintiff B.T.  B.T. II, 2009 WL 4884447, at *9.  The State of Hawaii did not appeal this Court's ruling.

Since then, however, the State of Hawaii has passed Act 163 which amended Haw. Rev. Stat § 302A-1134(c) to impose a twenty year age limit on all admissions to public high school.  See Haw. Rev. Stat. § 302A-1134(c).  Specifically, the statute states:

> No person who is twenty years of age or over on the first instructional day of the school year shall be eligible to attend a public school. If a person reaches twenty years of age after the first instructional day of the school year, the person shall be eligible to attend public school for the full school year.

Id. Plaintiffs complain that Act 163 is an impermissible attempt to circumvent this Court's holding in B.T. I. (Mot. at 5–7.) Specifically, Plaintiffs assert that "[a]lthough Act 163 purports to impose an age limit of 20 for attendance at a public school . . . , the DOE continues to provide a public education to students over the age of 20 through the CB (competency-based) and GED (General Education Development) high school equivalency programs." (Id. at 5.) Special education, according to Plaintiffs, should therefore continue until age twenty-two, notwithstanding Act 163. (See id. at 7.)[1]

II.    Plaintiffs

    A.    R.P.-K.

        R.P.-K. was born on October 20, 1989 and is twenty-one years old. ("Opp'n," Doc. # 24, Ex. 1 at 2.) R.P.-K. was IDEA-eligible and received special education and related services while in Defendants' K-12 education system. (See id.) R.P.-K.'s mother, C.K., twice requested that he continue to receive special education services beyond the 2009–10 school year. (Mot., C.K. Decl. ¶¶ 4–5.) On July 1, 2010, Act 163 took effect. (See id., Ex. A.) Subsequently an IEP

_____

[1] Plaintiffs advance multiple theories for invalidating Act 163, none of which are currently at issue before the Court as this is only a motion for class certification. The theories include: (1) Violation of the IDEA ("Compl.," Doc. # 1, ¶¶ 31–36); (2) Violation of Title II (Id. ¶¶ 37–41); (3) Violation of Section 504 (Id. ¶¶ 42–46); and Estoppel (Id. ¶¶ 47–50).

meeting for R.P.-K. was held on July 26, 2010 where it was determined that R.P.-K. was no longer eligible to attend public school. (Opp'n, Ex. 1 at 3.) Defendant issued a Prior Written Notice ("PWN") on August 6, 2010, stating that R.P.-K. was no longer eligible to attend public school because of his age. (Id.)

C.K. filed a Request for Due Process hearing and on October 25, 2010, the Office of Administrate Hearings, Department of Commerce and Consumer Affairs issued an Order awarding judgment for Defendant. (Id. at 6–7.) The Hearings Officer specifically found that Act 163 precluded R.P.-K.'s right to educational services until after the age of twenty. (Id. at 7.)

R.P.-K. filed a complaint appealing the decision with this Court on November 5, 2010. The appeal is currently pending before Judge Leslie E. Kobayashi. (See 1:10-cv-00644-LEK-KSC.)

B.     R.T.D.

R.T.D. was born on June 24, 1990 and is twenty years old. (See Opp'n, Ex. 3, at 2.) R.T.D. has been diagnosed with Downs Syndrome, mental retardation, Autism Spectrum Disorder, and Obsessive Compulsive Disorder. (Mot., R.D. Decl. ¶ 1.) He is also hearing and vision impaired, has limited communication skills and requires constant supervision. (Id. ¶¶ 1, 7, 11.) R.T.D. has received special education at Kalaheo High School from the DOE. (Id. ¶ 2.)

R.T.D., by and through his parents R.D. and M.D., met with DOE representatives to establish an IEP for the Summer of 2010 as well as the 2010–11 school year.  (See Opp'n, Ex. 3, at 2.)  On June 28, 2010, the DOE decided to terminate special education services because R.T.D. was over the age of twenty. (Id. at 2–3.)  R.D. and M.D., on behalf of their son R.T.D., therefore filed a Request for Due Process Hearing.  The Hearings Officer, relying on Act 163, granted summary judgment for Defendant.  (See id. 5–6.)

R.T.D. filed a Complaint appealing this decision with this Court on November 4, 2010.  The appeal is also currently pending before Judge Leslie E. Kobayashi.  (See 1:10-cv-00641-LEK.)

C.    B.P.

B.P. was born on January 7, 1989 and is now twenty-two years old. (See Opp'n, Ex. 5, at 2.)  B.P. has been diagnosed as having disruptive behavior disorder, not otherwise specified, general anxiety disorder, fetal alcohol syndrome, mild mental retardation disorder, hyperopia and astigmatism, seizure disorder, cardio-pulmonary problems, mild cerebral palsy, orthopedic problems secondary to hip surgery, central auditory processing disorder, and sensory integration issues. He is also hearing and vision impaired, has limited communication skills and

requires constant supervision.  (Mot., M.P. Decl. ¶ 2.)  B.P has received special education at Loveland Academy since 2006.  (Id. ¶ 3.)

The DOE advised M.P. that special education would terminate at the end of the Extended School Year 2010 pursuant to Act 163.  (See Opp'n, Ex. 3, at 3.)  M.P. therefore filed a Request for Due Process Hearing.  The Hearings Officer, relying on Act 163, granted summary judgment for Defendant on October 25, 2010.  (See id. 4–5.)

B.P. filed a Complaint appealing this decision with this Court on November 5, 2010.  This appeal is currently pending.  (See 1:10-cv-00643-DAE-BMK.)

D.      C.B.

C.B. was born on June 21, 1989 and is twenty-one years old.  (See Opp'n, Ex. 7, at 2.)  C.B. has been diagnosed as having Autistic Disorder, Disruptive Behavior Disorder, Obsessive Compulsive Disorder, Mild Mental Retardation, and Seizure Disorder.  (Mot., N.B. Decl. ¶ 2.)  C.B. has received special education at Kailua High School since 2003.  (Id. ¶ 3.)

An IEP meeting was held on June 23, 2009 to discuss further educational services for C.B.  (See Opp'n, Ex. 7, at 2.)  The IEP team determined that C.B. did not need further education both because he did not satisfy the

requirements of Act 163 and because he had the functional and academic skills

necessary to transfer into the noncompetitive workforce.  (Id. at 3.)  C.B. filed a

Request for Due Process Hearing on July 23, 2009 by and through his Parent N.B.

(Id.)  The Hearings Officer found that C.B. and N.B.  had failed to demonstrate that

C.B. was denied special education and related services solely due to C.B.'s age and

that C.B. and N.B. had failed to demonstrate that C.B. continued to need a special

education.  (Id. at 13.)

On May 27, 2010, C.B. and N.B. filed a complaint appealing the

Hearings Officer's decision with this Court.  (See 1:10-cv-00317-DAE-BMK.)

This Court affirmed the decision of the Hearing's Officer (1:10-cv-00317-DAE-

BMK, Doc. # 39.)  The Court specifically declined to address the applicability of

Act 163, stating the following:

> Also briefed by the parties is a recently passed Hawaiian statute, Act
> 163.  Act 163 amended Haw. Rev. Stat § 302A-1134(c) to impose a
> twenty year age limit on all admissions to public high school. See
> Haw. Rev. Stat. § 302A-1134(c).  Plaintiffs argue that Act 163 was
> passed to reverse this Court's decision in B.T. and argues that, not
> withstanding Act 163, B.T. remains good law.  (Doc. # 29, P's
> Brief, 10-11.)  Defendant takes the position that Act 163 is not
> relevant because it was not effective until July 1, 2010, two months
> after the Hearing Decision and one year after C.B.'s IEP meeting.
> (Doc. # 34, D's Brief, 19-20.)  Further, Act 163 is also at issue in
> pending litigation before the Court in R.P.-K. v. Department of

> Education, CV 10-00436 DAE-KSC. Given this concession by
> Defendant, the Court need not now consider its applicability in the
> instant case.

(Id. at 10 n.3.)  Accordingly, the Court affirmed the decision of the Hearings

Officer on the grounds that Defendant had satisfied its burden before the Hearings

Officer to demonstrate that C.B. could no longer benefit from further special

education.[2]  (Id. at 21.)  C.B and N.B. have since appealed this Court's decision to

the Ninth Circuit Court of Appeals.  (1:10-cv-00317-DAE-BMK, Doc. # 42.)

STANDARD OF REVIEW

Before certifying a class, a trial court must conduct a "rigorous

analysis" to determine whether the party seeking certification has met the

prerequisites of Federal Rule of Civil Procedure 23.  Valentino v. Carter-Wallace,

Inc., 97 F.3d 1227, 1233 (9th Cir. 1996) (citing In re Am. Med. Sys., 75 F.3d 1069

(6th Cir. 1996); Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1186 (9th

Cir. 2001), amended, 273 F.3d 1266 (9th Cir. 2001); Gen'l Tel. Co. of Sw. v.

Falvon, 457 U.S. 147, 161 (1982).  "While the trial court has broad discretion to

certify a class, its discretion must be exercised within the framework of Rule 23."

---

[2] There was some question as to which party had the burden before the
Hearings Officer in this Appeal.  (See 1:10-cv-00317-DAE-BMK,  Doc. # 39, at
11–12.)  The Court did not resolve that issue as it found, even assuming the burden
was on the Defendant, it had been satisfied.  (Id. at 21.)

Zinser, 253 F.3d at 1186 (citing Doninger v. Pacific Nw. Bell, Inc., 564 F.2d 1304, 1309 (9th Cir. 1977)). The party seeking class certification "bears the burden of demonstrating that he has met each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)." Id.; Armostrong v. Davis, 275 F.3d 849, 868 (9th Cir. 2001).

Rule 23(a) requires that a movant demonstrate numerosity, commonality, typicality, and adequacy of representation:

> (a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)-(4).

Next, the case must fall under one of the three categories of Rule 23(b):

> (1) the prosecution of separate actions by or against individual members of the class would create a risk of
>
> (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the      class, or

> (B) adjudications with respect to individual members of the
> class which would as a practical matter be dispositive of the
> interests of the other members not parties to the adjudications
> or substantially impair or impede their ability to protect their
> interests; or
>
> (2) the party opposing the class has acted or refused to act on grounds
> generally applicable to the class, thereby making appropriate final
> injunctive relief or corresponding declaratory relief with respect to the
> class as a whole; or
>
> (3) the court finds that the questions of law or fact common to the
> members of the class predominate over any questions affecting only
> individual members, and that a class action is superior to other
> available methods for the fair and efficient adjudication of the
> controversy.

Fed. R. Civ. P. 23(b).  Whether these requirements are satisfied does not involve an

inquiry into the merits of the plaintiff's claims.  See Eisen v. Carlisle & Jacquelin,

417 U.S. 156, 177–78 (1974).  Instead, the Court must analyze the allegations of

the complaint and other material, consider the nature and range of proof necessary

to establish those allegations, determine as best able the future course of the

litigation and then determine if the requirements are met at the time.  See Blackie

v. Barrack, 524 F.2d 891, 900–01 (9th Cir. 1975).

## DISCUSSION

Plaintiffs seek certification of the following Class:

> All individuals residing in the State of Hawai'i who over the age of 20
> on or before the first day of the school year (or who will imminently

be over the age of 20 on that date) but under the age of 22 who are
entitled to receive special education and related services from
Defendant the Hawai'i Department of Education under the Individuals
With Disabilities Education Act.

("Mot.," Doc. # 15 at 3.)

I.     Rule 23(a)

To satisfy the requirements of Rule 23(a), a putative class must meet

four criteria: (1) numerosity of the class members; (2) commonality of the factual

and legal issues; (3) typicality of the claims of the named plaintiffs; and (4)

adequacy of representation.  See Fed. R. Civ. P. 23(a).

A.     Numerosity

A class must be "so numerous that joinder of all members is

impracticable" in order for a court to certify it.  Fed. R. Civ. P. 23(a)(1).  The

numerosity requirement is not tied to any fixed numerical threshold.  See Gen Tel.

Col. of the Nw., Inc. v. EEOC, 446 U.S. 318, 330 (1980).  Indeed, courts need not

determine the exact size of a class in order to find numerosity satisfied.  Cervantez

v. Celestica Corp., 253 F.R.D. 562, 569 (C. D. Cal. 2008).  Generally, however, a

class that is likely to exceed forty members satisfies numerosity.  Amone v.

Aveiro, 226 F.R.D. 677, 684 (D. Haw. 2005); see also Jordan v. L.A. County, 669

F.2d 1311, 1319 (9th Cir. 1982), vacated and remanded on other grounds, 459 U.S.

810 (1982). "When the exact number of class members cannot be ascertained, the court may make common sense assumptions to support a finding of numerosity." Susan J. v. Riley, 254 F.R.D. 439, 458 (M.D. Ala. 2008). Moreover, "impracticability," as used in the numerosity requirement of Rule 23, does not mean "impossibility," but only "the difficulty or inconvenience of joining all members of the class." Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 914 (9th Cir. 1964). Finally in determining the numerosity requirement a court must, "[examine] the specific facts of each case and imposes no absolute limitations." Gen. Tel. Co., 446 U.S. at 330. Thus, in Amone, this Court found that a proposed class of Hawaii public housing residents had satisfied numerosity in part because the residents had limited financial means. 226 F.R.D. at 684.

The Court finds that the numerosity requirement has been satisfied. Plaintiffs, in support of their argument point to the number of special education students in grades 9–12. (Mot. at 17.) There are 1,986 special education students in 9th grade, 1,730 special education students in 10th grade, 1,473 special education students in 11th grade, and 1,332 special education students in 12th grade. (Mot., Ex. J.) Although these numbers diminish as the grade levels increase, the trend suggests that there would be at least several hundred individuals in the purported class.

Defendant responds by arguing that the number of class members dissipate after twelfth grade. Specifically, some of the special education seniors receive high school diplomas and are ineligible for further education. (Opp'n at 21–22.) Defendant also argues that some eligible students are transitioned into post-high school education or employment programs. (Id. at 22.) Some, according to Defendant, may not want more education or may not be entitled to any further education because it would no longer provide the student with a benefit. (Id. at 23.)

Taking these assertions as true, a "common sense assumption" dictates that the remaining class members would still be more than sufficiently numerous to warrant satisfaction of this requirement. Susan J., 254 F.R.D. at 458. Assuming that the "magic number" for class certification is forty as Defendant contends,[3] (Opp'n at 20–21), nearly 1,300 students would have to fall into the categories Defendant's proffer to defeat numerosity. (See Mot., Ex. J.) This seems highly improbable.[4] Further weighing in Plaintiffs' favor are the "specific facts of

_____

[3] That need not be the case, as one court in California has certified a class with only twenty-seven members. See Tietz v. Bowen, 695 F. Supp. 441, 445 (N.D. Cal. 1987).

[4] Further, Defendant presumably has access to these exact numbers but chose not to provide them to the Court.

[this] case." Amone, 226 F.R.D. at 684. The class is comprised exclusively of learning-disabled youth. It is extremely unlikely that these individuals would bring individual actions challenging the validity of Act 163.

The Court also believes that joinder of the class is impractical. Not only does the purported class already potentially encompass hundreds of members, but future members must be considered as well. A class may consist of "unnamed and unknown future [members]" whose joinder into the class is "inherently impracticable." Jordan, 669 F.2d at 1320. Here it is impossible to know who or how many students precisely would be qualified for a FAPE in the absence of Act 163 now or in the future. This renders joinder of the unnamed class members impracticable. For these reasons, the Court believes that Rule 23(a)(1)'s numerosity requirement has been satisfied.

B. Commonality

Rule 23 provides that there must be "questions of law or fact common to the class" for a class to be certified. Fed. R. Civ. P. 23(a)(2). Commonality is construed permissively, Rodriguez v. Hayes, 578 F.3d 1032, 1048 (9th Cir. 2009) (citation omitted), and "all questions of fact and law need not be common to satisfy the rule." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). "Commonality exists where class members' situations share a common issue of

law or fact, and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief." Wolin v. Jaguar Land Rover North America, LLC, 617 F.3d 1168, 1172 (9th Cir. 2010) (quotations and citations omitted); Hanlon, 150 F.3d at 1019 (finding commonality established by "the existence of shared legal issues with divergent factual predicates" or "a common core of salient facts coupled with disparate legal remedies within the class.") "[O]ne significant issue common to the class may be sufficient to warrant certification." Dukes v. Wal-Mart, Inc., 603 F.3d 571, 599 (9th Cir. 2010). Additionally, "class suits for declaratory or injunctive relief, 'by their very nature often present common questions satisfying Rule 23(a)(2).'" Daly v. Harris, 209 F.R.D. 180, 186 (D. Haw. 2002) (quoting Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 7A Federal Practice & Procedure § 1763 (1986)).

The Court finds that two of the Plaintiffs, R.P.-K. and R.T.D., have easily satisfied this requirement.[5] At issue here is the applicability of Act 163, a state law that by its own terms applies to students in the entire state. The common question of law at issue before the Court is whether Act 163 is sufficient to override the IDEA's default age limitations in 20 U.S.C. § 1412(a). This is not just a "significant issue common to the class," Dukes, 603 F.3d at 599, but it is the only

[5] C.B. and B.P., as discussed infra, have not.

17

issue in this litigation. Whether Act 163 alone provides sufficient grounds to deny special education students a FAPE is the sole purpose of this litigation. Each Plaintiff, excepting C.B., is a special education student that was denied a FAPE because they had aged out pursuant to Act 163. They now seek to certify a class to resolve whether such denial was appropriate. It is difficult to conceive of litigation that could present questions more common than those at issue here.

Defendant argues that "each of the . . . Plaintiffs has their own unique special needs that differ from each other" and that "application of law may differ as to each individual Plaintiff and their individual special needs." (Opp'n at 27.) The Court disagrees. While it may be true that each student has their own unique needs, the application of Act 163 will not and has not differed as to each individual Plaintiff. Each is older than twenty. Each have been told by the DOE that a FAPE was denied to them because of Act 163. This litigation will not determine, as Defendant seems to suggest, whether in the absence of Act 163 the individual Plaintiffs were entitled to a FAPE. Instead, the inquiry is focused on whether Act 163 alone may serve as a grounds for denying class members a FAPE. The Court therefore finds that R.P.-K. and R.T.D. have satisfied Rule 23(a)(2)'s commonality requirement.

## I.    C.B. and B.P.

The Court cannot find, however, that C.B.'s claim is common to the those of the other named Plaintiffs.  C.B. has already had his appeal heard before this Court.  Act 163 had not been enacted at the time Defendant decided not to provide C.B. a FAPE.  Accordingly, on appeal, Defendant took the position that Act 163 was not applicable when the DOE made its decision to terminate C.B.'s education.  (See 1:10-cv-00317-DAE-BMK, Doc. # 39, at 10 n.3.)  The Court subsequently affirmed the Hearings Officer's decision on grounds independent of Act 163.  (Id. 21.)  C.B.'s claim, now on appeal before the Ninth Circuit, is therefore necessarily different from those of the remaining three plaintiffs who were denied a FAPE specifically because of Act 163.  C.B. therefore has no common question to be addressed.  The Court thus finds that C.B. has failed to satisfy Rule 23(a)(2)'s commonality requirement.

B.P. turned twenty-two in January 2011 and has therefore aged out of the IDEA scheme irrespective of the applicability of Act 163.  See 20 U.S.C. § 1412(a) (finding a state must provide a FAPE to all children "with disabilities . . . between the ages of 3 and 21, inclusive . . ."); B.T. I, 637 F. Supp. 2d at 863–64 n.9 (determining that federal eligibility for special education and related services ends when a student becomes 22).  Accordingly, B.P.'s claim with

19

respect to Act 163 is moot and cannot be common to the remaining Plaintiffs'
claims.

At the hearing, Counsel for Plaintiffs conceded that C.B. and B.P.
could not be a part of the class and moved to voluntarily dismiss them from the
action. The Court agrees that C.B. and B.P. cannot be members or representatives
of the class; they are therefore **DISMISSED** from this action. The Court will
exclude them from its analysis moving forward.

C. <u>Typicality</u>

The typicality criterion requires that the representative Plaintiffs'
claims or defenses be of the same nature as the rest of the class. <u>See</u> Fed. R. Civ.
P. 23(a)(3). "[T]ypicality focuses on the relationship of facts and issues between
the class and its representatives." <u>Dukes</u>, 603 F.3d at 613 n.37. This requirement
assures "that the interest of the named representative aligns with the interest of the
class." <u>Hanon v. Dataproducts</u>, 976 F.2d 497, 508 (9th Cir. 1992.) The
representative plaintiff's claims are "'typical' if they are reasonably co-extensive
with those of absent class members." <u>Id.</u> Moreover, "[u]nder the rule's
permissive standards, [claims] need not be substantially identical." <u>Dukes</u>, 603
F.3d at 613. Instead, the class representatives must simply "possess the same

interest and suffer the same injury as the class members." <u>Gen. Tel. Co.</u>, 457 U.S. at 152.[6]

The Court also believes that Plaintiffs' claims are necessarily typical of the entire class. Plaintiffs want to represent a class of special education students who have been or could be denied FAPE on the basis of Act 163. Each of the named Plaintiffs were denied a FAPE exclusively on these grounds. Accordingly, the named Plaintiffs' claims are not merely typical but nearly identical.

Defendant's argument in response again misses the mark. It contends that "due to the individualized nature of special education cases, there is no typicality of claims or defenses" and that "[e]ach of the named Plaintiffs and any potential members of the class has unique and special needs." (Opp'n at 28.) Once more, while the Court agrees, the argument is non-responsive. The Plaintiffs are not asking the Court to make an individualized determination about whether the named Plaintiffs' specific individual needs entitle them to a FAPE. Instead, the Plaintiffs' only question is whether Act 163 can provide an adequate grounds to

---

[6] Although the "commonality and typicality requirements of Rule 23(a) tend to merge . . . each factor serves a discrete purpose. Commonality examines the relationship of facts and legal issues common to class members, while typicality focuses on the relationship of facts and issues between the class and its representatives." <u>Dukes</u>, 603 F.3d at 613 n.37 (quotations and citations omitted).

deny them a FAPE <u>independent of</u> any class members' unique needs. Accordingly the Court finds that Rule 23(a)(3)'s typicality requirement has been satisfied.

D.    <u>Adequacy</u>

The final prerequisite to class certification under Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Court must consider if the named plaintiffs and their counsel: (1) have any conflict of interest with any other class members, and, (2) if the named plaintiffs and counsel will prosecute the action vigorously on behalf of the class. <u>Dukes</u>, 603 F.3d at 614; <u>Hanlon</u>, 150 F.3d at 1020 (citing <u>Lerwill v. Infight Motion Pictures Inc.</u>, 582 F.2d 507, 512 (9th Cir. 1978).

Each of the named plaintiffs are represented by their parents who, according to their declarations, have all actively protected the rights of their children per the IDEA. Further, counsel for Plaintiff has significant experience in class action, civil rights and disability law litigation. (Mot. at 22.)

The HRDC also seeks to be a class representative. (<u>Id.</u>) The HRDC is a Hawaii non-profit corporation based in Honolulu whose mission it is to defend and enforce the legal rights of people with disabilities. (Mot., Dellera Decl. ¶ 4.) It has the authority to ensure the protection of, and advocacy for, the rights of individuals within the State who are disabled or mentally ill as a Protection and

Advocacy organization pursuant to 42 U.S.C. §§ 10805, 15043 and 29 U.S.C.

§ 794e.  (See id.)

Further, the HRDC has standing to maintain this action on behalf of

its constituents.  An organization may sue on behalf of its members if:

> (a) its members would otherwise have standing to sue in their own
> right; (b) the interests it seeks to protect are germane to the
> organization's purpose; and (c) neither the claim asserted nor the relief
> requested requires the participation of individual members in the
> lawsuit.

Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 342 (1977).

Although the HDRC does not have "members," its constituent are the "functional

equivalent of members for the purposes of associational standing."  Oregon

Advocacy Center v. Mink, 322 F.3d 1101, 1110 (9th Cir. 2003) (finding that

Oregon's Protection and Advocacy organization had standing to sue on behalf of

its constituents).  Further, the interest it seeks to protect is germane to its purpose -

to defend and enforce the legal rights of people with disabilities.  (Mot., Dellera

Decl.)  Finally, the third prong of the Hunt test is irrelevant with respect to

Protection and Advocacy organizations as they are specifically authorized by

federal statute to bring litigation on behalf of their constituents.  See Mink, 322

F.3d at 1113 ("We hold that in light of the role Congress assigned by statute to

advocacy organizations such as OAC, Congress abrogated the third prong of the Hunt test.")

Defendant, for its part, disputes very little on this point. In two paragraphs, Defendant focuses on the individual named Plaintiffs and argue that "[d]ue to the individual needs of each of the three remaining Plaintiffs [excluding C.B.], it is possible that further conflict may develop during the course of their administrative appeals or in this litigation." (Opp'n at 31–31.) As before, the Court is not persuaded. The focus of this litigation is not on the individual needs of any one student and whether these needs entitle them to a FAPE. Instead the issue is whether Act 163 provides sufficient independent grounds to deny a FAPE irrespective of their unique needs. The Court is not persuaded that in resolving this discrete legal issue a conflict would or could develop among the named Plaintiffs, especially given that each was denied a FAPE because they "aged out" as contemplated by Act 163. Accordingly, the Court finds the Plaintiffs have satisfied Rule 23(a)(4)'s adequacy requirement.

II.    Rule 23(b)

Plaintiffs may satisfy Rule 23(b) by meeting any of the three alternative criteria contained in 23(b)(1), (b)(2) or (b)(3). Here, Plaintiffs contend they satisfy 23(b)(2). Rule 23(b)(2) provides for the maintenance of a class action

if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). "Class certification under Rule 23(b)(2) requires that the primary relief sought is declaratory or injunctive." Rodriguez v. Hayes, 578 F.3d 1032, 1051 (9th Cir. 2009) (internal quotations omitted) superseded on other grounds by Rodriguez v. Hayes, 591 F.3d 1105 (9th Cir. 2010). "The rule does not require [a court] to examine the viability or bases of class members' claims for declaratory and injunctive relief, but only to look at whether class members seek uniform relief from a practice applicable to all of them." Rodrigues, 591 F.3d at 1125. "[I]t is sufficient to meet the requirements of Rule 23(b)(2) that 'class members complain of a pattern or practice that is generally applicable to the class as a whole.'" Id. (quoting Walters v. Reno, 145 F.3d 1032, 1047 (9th Cir. 1998)). Further, "'questions of manageability and judicial economy are . . . irrelevant to 23 (b)(2) class actions'" Id. (quoting Forbush v. J.C. Penney Co., Inc., 994 F.2d 1101, 1105 (5th Cir. 1993)).

The Court finds the Plaintiffs have satisfied this requirement as well. The party opposing the class—the DOE— has acted on grounds uniformly applicable to the entire class as required by Rule 23(b)(2). Specifically, the class

representatives have been denied a FAPE on the grounds that they have aged out under Act 163. Indeed, Defendant admits as much, conceding that "Defendant has taken uniform action based upon Act 163 in the cases of R.P.-K., R.D. and B.P." (Opp'n at 32.) Plaintiffs further request primarily declaratory and injunctive relief in their complaint:

> WHEREFORE, Plaintiffs pray that this Court:
> (a)    Find and declare that the DOE's refusal to provide Plaintiffs and the members of the Class with FAPEs violates the IDEA;
> (b)    Find and declare that the DOE's refusal to provide Plaintiffs and the members of the Class with FAPEs constitutes discrimination on account of disability in violation of Title II and Section 504;
> (c)    Find and declare that the DOE is estopped from arguing that it has no obligation to provide FAPEs to Plaintiffs and the members of the Class;
> (d)    Enjoin the DOE from failing to provide FAPEs to Plaintiffs and the members of the Class until they reach the age of twenty-two—both pending judgment in this matter and after judgment in this matter;
> (e)    Award Plaintiffs their reasonable attorney's fees, costs, and expenses under any applicable law;

(Compl. at 16.) The Ninth Circuit has been clear: "[I]t is sufficient to meet the requirements of Rule 23(b)(2) that 'class members complain of a pattern or practice that is generally applicable to the class as a whole.'" Rodrigues, 591 F.3d at 1125. (quoting Walters v. Reno, 145 F.3d 1032, 1047 (9th Cir. 1998)). Plaintiffs here are complaining of a pattern of practice whereby special education students are impermissibly denied a FAPE due to Defendant's reliance on Act 163.

In response, Defendant again focuses on the individualized nature of the IEP process in arguing that Plaintiffs have not satisfied Rule 23(b)(2). The Court is not persuaded for the reasons stated supra. The Court therefore finds that Plaintiffs have satisfied Rule 23(b)(2).

III.    Exhaustion of Administrative Remedies

Defendants finally argue that Plaintiffs have failed to exhaust their administrative remedies as each still have appeals pending before this Court or the Ninth Circuit. (Opp'n at 11–20.) As a general matter, the IDEA provides that

> [n]othing in this title shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973 or other Federal laws protecting the rights of children with disabilities, except that before filing a civil action under such laws seeking relief that is also available under this part, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this part.

20 U.S.C. § 1415(l). The Ninth Circuit has been clear, "plaintiffs must exhaust administrative remedies before filing a civil lawsuit if they seek relief for injuries that could be redressed to any degree by the IDEA's administrative procedures." Kutasi v. Las Virgenes Sch. Dist., 494 F.3d 1162, 1162 (9th Cir. 2007).

Plaintiffs counter Defendant's argument by noting that exhaustion of administrative remedies is not required "if it would be futile . . . or if the agency

has adopted a policy or pursued a practice of general applicability that is contrary to the law." N.D. v. Hawaii Dep't of Educ., 600 F.3d 1104, 1110 (9th Cir. 2010); see also Doe v. Ariz. Dep't of Educ., 111 F.3d 678, 681–82 (9th Cir. 1997); Hoeft v. Tuscon Unified Sch. Dist., 967 F.2d 1298, 1303–04 (9th Cir. 1992).

As a preliminary matter, the Court believes Plaintiffs have already exhausted their administrative remedies. Section § 1415(l) requires exhaustion of subsections (f) and (g). Both (f) and (g), however, require exhaustion of administrative hearings at the state level. See 20 U.S.C. § 1415(f)(1)(A) ("Whenever a complaint has been received . . . the parents or the local educational agency involved in such a complaint shall have an opportunity for an impartial due process hearing, which shall be conduced by the State educational agency or by the local educational agency, as determined by State law . . . ."); 20 U.S.C. § 1415(g)(1) ("If the hearing required by subsection (f) is conducted by a local educational agency, any party aggrieved by the findings and decision rendered in such a hearing may appeal such findings and decisions to the State educational agency.") Each of the named Plaintiffs have already exhausted their state administrative remedies and have appealed to this Court in parallel proceedings pursuant to 20 U.S.C. § 1415(i)(2)(A), as discussed supra. The Court can find nothing in the statute that suggests it must wait until the Court itself determines the

outcome of the appeals before determining the applicability of Act 163 in the instant action. Indeed, the Court has control to "efficiently and economically control its docket" as it sees fit. Landis v. North American Co, 299 U.S. 248, 255 (1936); see also Leyva v. Certified Grocers of California, Ltd., 59. F.2d 857, 863–64 (9th Cir. 1979) (finding a court may proceed in a manner that is "efficient for its own docket and the fairest course for the parties . . ."). Accordingly, the Court finds that Plaintiffs have already exhausted the administrative remedies as provided by the IDEA.

Assuming arguendo, however, the IDEA exhaustion doctrine requires Plaintiffs to proceed with their appeals at the federal court level before commencing litigation challenging the validity of Act 163, the Court finds that Plaintiffs have sufficiently alleged facts which demonstrate Defendant has "adopted a policy or pursued a practice of general applicability that is contrary to the law" such that Plaintiffs need not exhaust their administrative remedies. N.D., 600 F.3d at 1110. The Ninth Circuit in Hoeft developed a two part test to determine whether a practice is "contrary to law" such that an IDEA claim need not be exhausted. First, the issue must arise when "only questions of law are involved in determining the validity of a policy, as when the policy facially violated the IDEA." Hoeft, 967 F.2d at 1305. Second, a court must "afford[] the

agency an opportunity to consider and correct errors." Id. at 1307. The Court finds the Plaintiffs have made this required showing.

First, whether Act 163 provides a sufficient independent ground for denying a FAPE to special education children who reach the age of twenty is a discrete legal question. The Court need not evaluate the individual facts of the case or determine whether the State had an obligation based on the Plaintiffs' unique needs to provide a FAPE. It need only determine the applicability of Act 163. Second, the State had the opportunity to correct its alleged misplaced reliance on Act 163 in each of the named Plaintiffs' cases. Instead, each Hearings Officer determined that Act 163 was sufficient in and of itself to terminate the Plaintiffs' continued special education services. Accordingly the Court believes this is the precise scenario in which a Plaintiff does not have to exhaust administrative remedies under the IDEA as contemplated by the Ninth Circuit in Hoeft. Accordingly, the Court finds that Plaintiffs already have exhausted their administrative remedies or, in the alternative, were not required to do so.

## CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART and DENIES IN PART** Plaintiffs' Motion for Class Certification (Doc. # 15). Specifically the class is certified with R.P.-K., R.T.D., and the Hawaii Disability

Rights Center as the class representatives.  C.B. and B.P., however, are ineligible to be class members or representatives and are hereby **DISMISSED** from the action.

       IT IS SO ORDERED.

       DATED:  Honolulu, Hawaii, March 15, 2011.



_____
David Alan Ezra
United States District Judge

R.P.-K, et al.. v. Department of Education, Civ. No. 10-00436 DAE/KSC; ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR CLASS CERTIFICATION