UNITED STATES DISTRICT COURT

DISTRICT OF HAWAI‘I

| | |
|---|---|
| R.P.-K., through his parent C.K., R.T.D., through his parents R.D. and M.D., and the HAWAI‘I DISABILITY RIGHTS CENTER, in a representative capacity on behalf of its clients and all others similarly situated,<br><br>                              Plaintiffs,<br><br>        vs.<br><br>DEPARTMENT OF EDUCATION, State of Hawai‘i,<br><br>                              Defendant. | CIVIL NO. 10-00436 DAE-KSC (Class Action)<br><br><br><br>**MEMORANDUM IN SUPPORT OF MOTION** |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. iii

I. INTRODUCTION ...............................................................1

II. FACTUAL AND PROCEDURAL BACKGROUND ...................................2

    A. K.K. ...............................................................................2

    B. M.W. ..............................................................................3

    C. A.C.K. ............................................................................4

    D. K.C. ...............................................................................5

    E. A.D. ...............................................................................6

    F. M.L. ...............................................................................7

    G. The B.T. Case and Act 163 .................................................8

III. ARGUMENT ...................................................................9

    A. Standard for a Preliminary Injunction .................................9

    B. Plaintiffs Are Likely To Succeed On The Merits ...............................10

        1. The IDEA Requires the DOE to Offer FAPE to Age 22 ...............10

        2. Section 504 of the Rehabilitation Act and Title II of the
           Americans with Disabilities Act ......................................12

        3. Estoppel .............................................................14

    C. K.K., M.W., A.C.K., K.C., A.D., and M.L. Will Likely Suffer
       Irreparable Harm if Services are Interrupted ......................................19

    D. The Balance of Hardships Favors Granting
       a Preliminary Injunction .........................................................22

i

E.      The Public Interest Supports a Preliminary Injunction.......................23

IV.   CONCLUSION................................................................................................25

# TABLE OF AUTHORITIES

## Federal Cases

*Am. Trucking Ass'ns. v. City of Los Angeles,* 559 F.3d 1046 (9th Cir. 2009).........10

*Amoco Production Co. v. Gambell,* 480 U.S. 531 (1987) .......................................10

*B.T. v. Department of Education*, Civ. No. 08-00356 DAE-BMK,
    2009 WL 4884447 (D. Haw. Dec.17, 2009).....................................................2, 8

*B.T. v. Department of Education,* Civil No. 08-00356 DAE-BMK,
    2008 WL 3891867 (D. Haw. Aug. 21, 2008).................................................9, 12

*B.T. v. Department of Education*, 637 F.Supp.2d 856 (D. Haw. 2009)...................10

*Bd. of Educ. of Oak Park v. Illinois Bd. of Educ.,*
    79 F.3d 654 (7th Cir. 1996) ...................................................................... 24, 25

*Golden Gate Rest. Ass'n v. City of San Francisco,*
    512 F.3d 1112 (9th Cir. 2008) ...........................................................................22

*Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778 (9th Cir. 2001) ...............17

*Joshua A. v. Rocklin Unified School Dist.,* 559 F.3d 1036 (9th Cir. 2009).............23

*Lovell v. Chandler*, 303 F.3d 1039 (9th Cir. 2002) .................................................13

*Lozano v. Ocwen Federal Bank, FSB*, 489 F.3d 636 (5th Cir. 2007).....................18

*N.D. ex rel. parents v. Hawai'i Dept. of Educ.,*
    600 F.3d 1104, 1113 (9th Cir. 2010) ..................................................... 10, 19, 21

*Poweragent v. Electronic Data Systems,* 358 F.3d 1187 (9th Cir. 2004)...............16

*R.Y. v. Department of Education,* 2010 WL 558552 (D. Haw. 2010)....................24

*Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597 (9th Cir. 1996)......17

iii

*Ryan Operations G.P. v. Santiam-Midwest Lumber Co.,*
   81 F.3d 355 (3d Cir. 1996) ................................................................17

*Tindell v. Evansville-Vanderburgh School Corp.,*
   2010 WL 557058 (S.D. Ind. 2010) ........................................... 24, 25

*UNUM Corp. v. United States,* 886 F.Supp. 150 (D. Me. 1995)............................17

*Virginia S. ex rel. Rachael M. v. Department of Educ., Hawaii,*
   Civil No. 06-00128 JMS-LEK, 2007 WL 80814 (D. Haw. 2007) ....................21

*W.H. v. Clovis Unified School District,*
   2009 WL 2959849 (E.D. Cal. 2009)........................................... 22, 23

*Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7 (2008) ................................10

## **Federal Statutes**

20 U.S.C. § 1232d(b)(7) ................................................................16

20 U.S.C. § 1400, *et seq*................................................................1

20 U.S.C. § 1400(d)(1)(A)................................................................23

20 U.S.C. § 1412(a) ................................................................ 10, 23

20 U.S.C. § 1412(a)(1)(B) ................................................................11

20 U.S.C. § 1415(b)(6)................................................................23

20 U.S.C. § 1415(j) ................................................................23

20 U.S.C. §§ 1411-1419 ................................................................14

29 U.S.C. § 794(a) ................................................................13

42 U.S.C. § 12132................................................................13

American Recovery and Reinvestment Act of 2009,
    Pub. L. No. 111-5, 123 Stat. 182 ........................................................16

Americans With Disabilities Act ............................................................13

IDEA (Individuals With Disabilities Education Act) ...................................... passim

Pub.L. 105-17 (June 4, 1997), 111 Stat. 37 .........................................................14

Rehabilitation Act of 1973 ............................................................. 12, 13

Section 504 (Rehabilitation Act of 1973). .................................................. 12, 13, 14

**State Statutes**

Act 163 .................................................................................... passim

H.R.S. § 302A-433(3) ..............................................................................11

[H.R.S.] Section 1134(c) ...........................................................................2

**State Regulations**

H.A.R. § 8-56-15.................................................................. 15, 16

H.A.R. § 8-60-38(d)(2) ...........................................................................15

**Federal Rules**

FRE 902(5)...............................................................................14

<u>**MEMORANDUM IN SUPPORT OF MOTION**</u>

**I.      INTRODUCTION**

K.K., M.W., A.C.K., K.C., A.D., and M.L. are members of the Plaintiff class (disabled individuals now or imminently between the ages of 20 and 22) who have been receiving education and related services from Defendant Department of Education of the State of Hawaiʻi ("DOE") under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*  By this motion, they seek to continue receiving educational and related services from the DOE pending this Court's decision in this action.

If a preliminary injunction is not granted, the DOE will cease offering these class members education services at the end of their current Extended School Year ("ESY") as follows:

| | |
|---|---|
| **K.K.** | **July 14, 2011** |
| **M.W.** | **July 25, 2011** |
| **A.C.K.** | **July 25, 2011** |
| **K.C.** | **July 25, 2011** |
| **A.D.** | **July 31, 2011** |
| **M.L.** | **July 31, 2011.** |

Having such services interrupted for even a few days is likely to cause K.K., M.W., A.C.K., K.C., A.D., and M.L. and other class members who qualify for

1

ESY irreparable harm in the form of significant regression in their behavioral and educational progress and lengthy periods of recoupment.

The DOE has denied these Plaintiffs services on the basis of a newly-enacted law, Act 163 of the 2010 Session Laws of Hawaiʻi, amending Section 1134(c) of the Hawaiʻi Revised Statutes ("HRS") (attached as Exhibit A to the Declaration of John P. Dellera dated June 22, 2011 ("Dellera Decl")).  Act 163 was passed in an attempt to minimize the DOE's obligations under the IDEA and to circumvent this Court's ruling in *B.T. v. Department of Education*, Civ. No. 08-00356 DAE-BMK, Doc. # 140 at 22-23, 2009 WL 4884447 at *9 (D. Haw. Dec.17, 2009) (attached as Appendix 1).  Despite Act 163, these Plaintiffs are entitled to continued services because the DOE through its adult education program continues to provide the equivalent of a high school education to non-disabled students regardless of age.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    K.K.

K.K. is a 20-year-old student diagnosed with severe developmental delay, cerebral palsy, limited vision, seizure disorder, and other medical diagnoses. Declaration of J.K. dated June 17, 2011 ("J.K. Decl") at ¶ 2.  He is currently enrolled at Leilehua High School and is IDEA eligible.  K.K.'s most recent Individualized Educational Program ("IEP") provides for ESY because the IEP

2

team determined that due to the nature and severity of his disability, he suffers serious regression in his educational progress if there is an interruption in educational services longer than ten consecutive days.. *Id.* at ¶ 6.

At an IEP meeting held on February 25, 2011, K.K.'s parents requested that he be allowed to continue his education until he turns 22 years old with the special education and related services he needs.  The DOE rejected the request "because under the law no student can stay in school beyond age 20."  Instead, the DOE advised that K.K.'s special education and related services will end on July 14, 2011, the last day of extended school year 2011.  *Id.* at ¶ 4.

On May 31, 2011, K.K. filed a request for due process seeking an order that would continue his special education and related services to age 22.  *Id.* at ¶ 5.

### B.   M.W.

M.W. is a 21-year-old-IDEA-eligible student diagnosed with schizophrenia and anxiety disorder.  Declaration of N.W. dated June 16, 2011 ("N.W. Decl") at ¶ 2.  He is currently enrolled at Kalani High School.  *Id*. at ¶ 3.  M.W.'s educational program focuses on developing academic skills in the areas of reading, writing and language arts.  A significant part of M.W.'s educational programming also focuses on increasing his independence, developing coping strategies and other behavioral skills to address his schizophrenia and anxiety disorder.  *Id*. at ¶ 6.  M.W. qualifies for ESY due to the nature and severity of his disabling condition,

severe regression and slow rate of recoupment.  If there is an interruption in educational programming longer than 7 days, M.W. will suffer severe regression in the areas of math, language arts, and behavioral skills.  *Id.* at ¶ 7.

At an IEP team meeting held on March 21, 2011, M.W.'s mother requested special education and related services continue until M.W.'s 22nd birthday.  The DOE refused the request.  In a Prior Written Notice dated March 21, 2011, the DOE advised that M.W. will no longer be eligible for special education and related services because he turned 20 years old, and pursuant to Hawaiʻi Law, he is no longer eligible for services.  *Id.* at ¶ 4.

On June 2, 2011, M.W. filed a request for due process seeking an order that would continue his special education and related services to age 22.  *Id.* at ¶ 5.

## C.    **A.C.K.**

A.C.K. is a 20-year-old-IDEA-eligible student diagnosed with Down Syndrome and Autism Spectrum Disorder.  Declaration of A.K. dated June 22, 2011 ("A.K. Decl") at ¶ 2.  She is currently enrolled at Castle High School where she receives special education and related services that focus on functional academics, prevocational activities, life/social skills building, and community based instruction.  *Id.* at ¶¶ 3 and 6.  Due to the nature and severity of her disabling condition, A.C.K. experiences severe regression and a slow rate of recoupment when there is a gap in educational services longer than 5 days.  *Id.* at ¶ 7.

In a Prior Written Notice dated April 1, 2011, the DOE advised that in accordance with Act 163 signed by the Governor on June 3, 2010, A.C.K. will no longer be eligible for special education and related services as of July 25, 2011 (the end of the 2010-2011 extended school year) because she will be 20 years old by the end of the 2010-2011 ESY.  *Id.* at ¶ 4.

On June 13, 2011, A.C.K. filed a request for due process seeking an order that would continue her special education and related services to age 22.  *Id.* at ¶ 5. A resolution meeting was held on June 21, 2011 at which a DOE representative agreed to "stay put" pending an administrative decision and any judicial review. *Id.* ¶ 9.  The resolution session summary received after the June 21, 2011 meeting, however, does not clearly reflect the DOE's intention as to whether stay put will be acknowledged by the DOE.

### D.   **K.C.**

K.C. is a 19-year old student diagnosed with Autism Spectrum Disorder, Mental Retardation, and who displays severe Obsessive Compulsive Disorder ("OCD")-type behavior.  Declaration of B.C. dated June 20, 2011 ("B.C. Decl") at ¶ 2.  K.C. attends Castle High School and is eligible to receive special education and related services.  *Id.* at ¶ 3.  K.C.'s IEP focuses on developing skills in the areas of communication, mathematics, daily living skills, community interaction, behavioral skills and vocational skills.  K.C.'s IEP team has also recognized that

she has not yet gained an understanding of personal safety while in the community and therefore requires constant one-to-one supervision.  *Id.* at ¶ 6.

Due to the nature and severity of K.C.'s regression in her educational programming, she receives extended school year ("ESY") services when there is more than a one day break in school services.  When school is in session, K.C.'s educational services are provided until 4:45 p.m.  On Saturdays, she receives community based instruction for 6 hours.  *Id.* at ¶ 7.

In a Prior Written Notice dated April 21, 2011, the DOE advised that in accordance with Act 163 signed by the Governor on June 3, 2010, A.C.K. will no longer be eligible for Special Education and related services as of July 25, 2011 (the end of the 2010-2011 extended school year) because she will be 20 years old by the end of the 2010-2011 ESY.  *Id.* at ¶ 4.

On June 15, 2011, K.C. filed a request for due process seeking an order that would continue her son's special education and related services to age 22.  *Id.* at ¶ 5.

**E.    A.D.**

A.D. is 20 years old and severely disabled by autism and bi-polar disorder. He has attended Loveland Academy since age 7.  Declaration of L.D. dated June 17, 2011 ("L.D. Decl") at ¶ 1.  A.D. qualifies for ESY under his IEP after one day

6

because of the severe regression and behavioral problems he experiences when his routine is interrupted.  *Id.* at ¶ 4.

At an IEP meeting held on May 23, 2011, A.D.'s mother, L.D., requested special education and related services for her son until he became 22 years old. The DOE refused the request on the basis of a "new regulation" that was adopted to implement Act 163 of the 2010 Session Laws of Hawai'i.  According to the "regulation," students who are 20 years old on the first day of school are ineligible for admission.  Accordingly, L.D. was informed that special education and related services for her son will end on July 31, 2011, the last day of ESY 2011.  *Id.* at ¶ 2.

On June 17, 2011, L.D. filed a request for due process seeking an order that would continue her son's special education and related services to age 22.  *Id.* at ¶ 3.

### F.    M.L.

M.L. is a 20-year old student diagnosed with Autism Spectrum Disorder. Declaration of S.T. dated June 17, 2011 ("S.T. Decl") at ¶ 2.  M.L. is eligible to receive special education and related services.  She attends Loveland Academy and her home school is McKinley High School.  *Id*. at ¶ 3.  M.L.'s IEP focuses on functional academics, social skills, and career/vocational skills building.  *Id*. at ¶ 6. Due to the nature and severity of M.L.'s regression in her educational programming, she receives extended school year ("ESY") services when there is

7

more than a two-day break in school services.  When school is in session, M.L.'s

school day is extended by 2-1/2 hours.  *Id.* at ¶ 7.

At IEP team meetings held in March, April and May, 2011, M.L.'s parent

requested that M.L. be allowed to continue her special education and related

services until her 22nd birthday.  The Department of Education ("DOE") rejected

the request on the grounds that state law does not allow students beyond the age of

20 to stay in school.  *Id.* at ¶ 4.

On June 15, 2011, M.L. filed for due process seeking an order that would

continue her special education and related services to age 22.  *Id.* at ¶ 5.

### G.    The B.T. Case and Act 163

In *B.T. v. Department of Education,* Appendix 1, this Court enjoined the

State of Hawai'i from denying special education services based solely on a

student's attaining the age of 20.  Act 163 – the State law amendment upon which

the DOE relies in eliminating services to K.K., M.W., A.C.K., K.C., A.D., and

M.L. – purported to impose a 20-year age limit on admission to public school in an

attempt to reverse *B.T.*  Dellera Decl, Ex. A.

The Plaintiff in *B.T.* had argued that extending a free appropriate public

education ("FAPE") to age 22 would be consistent with Hawai'i law and practice

and that an administrative rule of the DOE that terminated special education

services at age 20 was therefore inapplicable.  This Court granted a preliminary

8

injunction on the basis that regular education students over 20 could obtain a

public education if (i) they met the age limits upon entering the ninth or tenth

grade, (ii) they received a waiver from the school principal, or (iii) they pursued

their secondary education in the adult education program. *B.T. v. Department of*

*Education,* Civil No. 08-00356 DAE-BMK, Doc. # 22, 2008 WL 3891867 at *5

(D. Haw. Aug. 21, 2008).  Appendix 2.

Act 163 terminated the right of students over 20 under the first two rules

above, but it left the third option in place as set forth below.  The DOE thus

continues to violate the IDEA and discriminates against students with disabilities

by effectively ending their secondary education at 20 years of age, while regular

education students may pursue a high school equivalency diploma in the adult

education program without any age limit.

In addition, the DOE should be estopped from denying K.K., M.W., A.C.K.,

K.C., A.D., and M.L. FAPEs until they are 22 because it obtained IDEA funding in

2008 and again in 2010 and 2011 based upon the representation that it offers a

FAPE through age 21 to all students with disabilities residing in the State.

## III.   ARGUMENT

### A.   Standard for a Preliminary Injunction

A plaintiff seeking a preliminary injunction must establish that he is likely to

succeed on the merits, he is likely to suffer irreparable harm in the absence of

preliminary relief, the balance of equities tips in his favor, and an injunction is in the public interest.  *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008); *N.D. ex rel. parents v. Hawai'i Dept. of Educ.,* 600 F.3d 1104, 1113 (9th Cir. 2010); *Am. Trucking Ass'ns. v. City of Los Angeles,* 559 F.3d 1046, 1052 (9th Cir. 2009).  Irreparable harm is that which cannot be adequately remedied by money damages and is permanent or at least of long duration.  *Amoco Production Co. v. Gambell,* 480 U.S. 531, 545, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987).

**B.    Plaintiffs Are Likely to Succeed On The Merits.**

**1.    The IDEA Requires the DOE to Offer FAPE to Age 22.**

The IDEA provides that a FAPE "is available to all children with disabilities ... between the ages of 3 and 21, inclusive...."  20 U.S.C. § 1412(a).  Federal eligibility for special education and related services ends, therefore, when a student becomes 22.  *B.T. v. Department of Education,* 637 F. Supp.2d 856, 863, fn.9 (D. Haw. 2009).  States may impose age limitations, however, to the extent the same age limitations are applied for public education generally:

> The obligation to make [FAPE] available to all children with disabilities does not apply with respect to children –
>
>     (i) aged 3 through 5 and 18 through 21 in a State to the extent that its application to those children would be inconsistent with State law or practice, or the order of any court, respecting the provision of public education to children in those age ranges....

20 U.S.C. § 1412(a)(1)(B).

Although Act 163 now states that "no person who is twenty years of age or over on the first day of the school year shall be eligible to attend a *public school*," (emphasis added), the DOE continues to provide a *public education* to non-disabled students over the age of 20 through the CB (competency-based) and GED (General Education Development) high school equivalency programs. Those equivalency programs are clearly "public education" that is offered to students in the age range of 20-22, as the quoted term is used in IDEA.

First, the Board of Education *admits,* as a matter of policy, that the adult education program is "an integral part of public education in Hawai'i." Dellera Decl, Ex. B. Second, high school equivalency diplomas are so named because they are the *equivalent* of regular diplomas for many purposes (entry to college, service in the military, employment opportunities). *See "Diploma, GED Method"* attached as Dellera Decl, Ex. C (part). Third, equivalency courses are offered in public schools funded by the DOE, and they are specifically for the purpose of allowing older students to complete their secondary education. H.R.S. § 302A-433(3) ("A program of secondary education for those adults who, in youth, left school or for some reason had their education curtailed and who now desire to continue their education"). Fourth, the DOE steers students older than 18 into the adult education program to obtain a high school equivalency diploma, Dellera

11

Decl, Ex. D at 102:18 – 103:5, and several hundred individuals ages 20 and 21

pursue the equivalent of a high school education in this manner each year.  Civil

No. 08-00356 DAE-BMK, Doc. # 82-3.

Given this context, it is clear that Act 163 discriminates against students

with disabilities aged 20 and 21 by denying them a secondary education, while

their nondisabled peers are allowed to pursue their secondary education until age

22 and beyond.  The exception to the IDEA requirement that FAPE be provided

through age 21 thus does not apply in Hawaiʻi because the federal age requirement

is consistent with State law and practice making public education available after

age 20.  The DOE's denial of a FAPE on the grounds that K.K., M.W., A.C.K.,

K.C., A.D., and M.L. "aged-out" of IDEA eligibility because they are now over 20

years of age is, therefore, unlawful.

> ### 2.      Section 504 of the Rehabilitation Act and Title II of the Americans With Disabilities Act.

Discrimination against persons with disabilities in federally-funded

programs is prohibited by Section 504 of the Rehabilitation Act of 1973, which

provides:

> No otherwise qualified individual with a disability ... shall, solely by
> reason of her or his disability, be excluded from the participation in,
> be denied the benefits of, or be subjected to discrimination under any
> program or activity conducted by any Executive Agency....

29 U.S.C. § 794(a).  To prove a claim for a violation of Section 504, the plaintiff must prove that: "(1) she is handicapped within the meaning of the [Rehabilitation Act of 1973, 29 U.S.C. § 794(a)]; (2) she is otherwise qualified for the benefit or services sought; (3) she was denied the benefit or services solely because of her disability; and (4) the program providing the benefit or services receives federal financial assistance."  *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002).[1]

As set forth above, Hawai'i offers a number of ways for non-disabled students over 20 to obtain a public education, and there is no maximum age for such students.  By contrast, Act 163 excludes from public education disabled students who have reached 20 years of age, except to complete the school year during which they become 20.

There can be no reasonable dispute that K.K., M.W., A.C.K., K.C., A.D., and M.L. are disabled within the meaning of the Rehabilitation Act, as they have for several years received special educational services under the IDEA.  If K.K., M.W., A.C.K., K.C., A.D., and M.L. were not disabled, they could continue their education after age 20 notwithstanding Act 163, by enrolling in the adult education

---

[1] Plaintiffs also raise a claim for violation of Title II of the Americans With Disabilities Act, 42 U.S.C. § 12132, which prohibits discrimination against the disabled in any "services, programs, or activities of a public entity."  Here, the provision of educational services by the DOE is clearly a service, program, or activity of a public entity.  Because the elements for a claim under Title II are otherwise identical to those for a claim under Section 504, Plaintiffs are likely to prevail on their claims under Title II for the same reasons they are likely to prevail on their claims under Section 504.

program.  *See* Dellera Decl, Exs. B-D.  That option is denied to them, however, solely because of their disabilities.  Although some accommodations for disabilities are available in the adult education program, the designated representative of the DOE in *B.T.* was not aware of any disabled individuals who were receiving instruction in the adult education program under an IDEA IEP. Dellera Decl Ex. E at 69:22 – 70:15, 98:12 – 99:2.  Rather, such plans are only available in the high schools – which are now completely closed to disabled students between the ages of 20 and 22.  *Id.* at 98:21 – 99:13.  Such disparate treatment in Hawai'i's public education program, which receives funding by the U.S. Department of Education as set forth below, violates Section 504 and Title II.

### 3.    Estoppel

By letter dated April 30, 2008, the DOE applied for IDEA Part B funding for Federal Fiscal Year 2008.[2]  *See* Dellera Decl, Ex. E, authenticated by Exhibit D at 47:24 – 49:4.  Applications were also submitted in 2010 and 2011, which are essentially the same.  Dellera Decl, Exs. F & G.[3]  In all three applications, the DOE represented in Section II, item 1 that:

---

[2] The application uses the term "Part B of IDEA," but that was redesignated as "Subchapter II" (20 U.S.C. §§ 1411-1419) by Pub.L. 105-17 (June 4, 1997), 111 Stat. 37.

[3] The 2010 and 2011 applications are self-authenticating pursuant to Rule 902(5) of the Federal Rules of Evidence as official publications of the DOE.  As set forth below, these applications were required to be published and made available to the general public for comment.

14

> A free appropriate public education is available to all children with disabilities residing in the State between the ages of 3 and 21, inclusive…

Section IV of the applications requires that the State identify in writing any State rule or regulation not required by IDEA Part B or federal regulations that relates to the State's eligibility for funding.  The DOE purported to qualify the representation in Section II, item 1 by including the following in the "Section IV Attachment":

> State requirements include eligibility criteria to implement the IDEA-2004 eligibility categories.   The following may be construed as providing State-imposed mandates that are not required by IDEA-2004:
>
> - General eligibility criteria for the occurrence of birthdays for children at age three and age twenty to implement the applicable age ranges in the State of Hawai'i….

Dellera Decl, Exs. E-G at Section IV-2.  According to a letter from Paul K. Ban, the DOE's "age-out" rule (then H.A.R. § 8-56-15, now H.A.R. § 8-60-38(d)(2)) was not attached to the FY 2008 application, but a copy was "previously provided" to the Secretary of Education.  Dellera Decl, Ex. H.  Thus, the DOE represented that FAPE is available to disabled children between the ages of 3 and 21, inclusive, but it failed to disclose in terms a layperson could understand that it actually terminates special education at age 20.

15

The DOE was required to "provide reasonable opportunities for the participation by … representatives of the class of individuals affected … and other interested individuals" in planning for the use of IDEA funds and to publish its application for funds with an opportunity for public comment.  20 U.S.C. § 1232d(b)(7).  The cryptic reference to "the occurrence of birthdays" in the Section IV Attachment is not reasonable notice that the affirmative representation in Section II is untrue.  Nor did the DOE reasonably inform the public by having "previously provided" a copy of H.A.R. § 8-56-15 at some undisclosed time in the past.

Simply put, the DOE misrepresented that it provides FAPE to disabled students through age 21 so it could get $38 million in IDEA funds in 2008, $39 million in 2010, substantial "stimulus" funding under Title VIII of the American Recovery and Reinvestment Act of 2009, Pub. L. No. 111-5, 123 Stat. 182, and millions more in 2011.  Now, the DOE claims that it has a right to terminate FAPE at age 20, thereby depriving K.K., M.W., A.C.K., K.C., A.D., and M.L. of the funds the DOE obtained by representing it would use them for their and others' benefit.

Judicial estoppel is "the principle that a litigant may not benefit by making directly contradictory arguments regarding the same dispute in different tribunals." *Poweragent v. Electronic Data Systems,* 358 F.3d 1187 (9th Cir. 2004).  It

precludes a party from gaining an advantage in one case by taking a particular position, and then "taking a clearly inconsistent position in either the same litigation or a different case concerning the same dispute." *Id*., citing *Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778, 782-83 (9th Cir. 2001).

Judicial estoppel is not limited to cases where inconsistent positions are taken in judicial proceedings. Because "a court has an extremely strong interest in being able to employ judicial estoppel in order to protect its integrity," *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.,* 81 F.3d 355, 358 (3d Cir. 1996), the doctrine also applies where the prior statement was made to an administrative agency. *Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 604 (9th Cir. 1996). Judicial estoppel has been applied, for example, to statements made in applications to an administrative agency to convert from a mutual insurance company to a stock insurance company, *UNUM Corp. v. United States,* 886 F.Supp. 150, 158 (D. Me. 1995), and applications for disability benefits, *see Rissetto, supra,* 94 F.3d at 604, fn.4.

Here, the DOE represented one thing to a federal executive agency and received a benefit as a result – over $100 million in IDEA funds. It now takes a contrary position on exactly the same issue before a federal court in an effort to avoid spending those funds as represented. The DOE should be estopped from taking the position it takes here.

17

The Plaintiff in *B.T.* made a similar argument, but the Court did not rule on it because a determination was not necessary for the disposition of that case. Dellera Decl, Appendix 1 at *9, fn.3.  Disregarding the argument and this Court's mention of it, the DOE submitted other applications for IDEA funds in 2010 and 2011 making precisely the same false representations.  This Court should hold the DOE to its word and order it to provide FAPEs to K.K., M.W., A.C.K., K.C., A.D., and M.L. until they are 22.

The doctrine of estoppel by contract (also known as quasi-estoppel) also applies here.  The DOE's application was essentially a contract between the DOE and the federal government for the receipt of IDEA funds.  Estoppel by contract applies where "it would be unconscionable to allow a person to maintain a position inconsistent with one to which … he accepted a benefit."  *Lozano v. Ocwen Federal Bank, FSB*, 489 F.3d 636, 40 (5th Cir. 2007) (internal quotation omitted and alteration in original).  "In other words, the doctrine forbids a party from accepting the benefits of a transaction and then subsequently taking an inconsistent position to avoid corresponding obligations or effects."  *Id.*  Here, the DOE received a benefit based on the assurance that it would provide FAPEs to disabled individuals through the age of 21 but now seeks to avoid the obligation to do so. The DOE should be estopped from taking a position inconsistent with the benefits it received from the U.S. Department of Education.

18

**C.     K.K., M.W., A.C.K., K.C., A.D., and M.L. Will Likely Suffer Irreparable Harm if Services are Interrupted.**

The Ninth Circuit has held that closing Hawaiʻi's public schools for 17 "furlough Fridays" would cause irreparable harm to disabled students because they would suffer regression in behavior, increased difficulty with activities, and outbursts of frustration and violence.  *N.D. ex rel. parents v. Hawaiʻi Dept. of Educ., supra,* 600 F.3d at 1113.  The declarations and exhibits submitted in support of this motion show that K.K., M.W., A.C.K., K.C., A.D., and M.L. (each of whom qualified for Extended School Year services) would suffer similar irreparable harm if their services are abruptly ended.

K.K. would suffer serious regression in his educational and life skills because he has a difficult time maintaining the level of skills he has learned after a ten-day interruption in services.  J.K. Decl. at ¶ 6.  Maintaining behavioral skills is critical for K.K.  He has a history of engaging in severe self-injurious behavior such as head banging when he is frustrated and wants to communicate pain or discomfort.  This behavior, which has been exhibited multiple times per day, can cause damage to the shunt in the upper right side of his head.  *Id*. at ¶ 7.

M.W. receives ESY not only because he suffers severe regression in academics but in his behavioral skills.  A major concern for M.W.'s parents is maintaining the gains he has made in his behavioral skills.  Without continued educational services M.W. would become withdrawn, non-responsive, isolate

19

himself from others, and the symptoms of his schizophrenia would increase.  N.W. Decl. at ¶ 7.

Due to the extent of A.C.K.'s regression, her IEP team has determined that A.C.K. requires educational services beyond the normal school day until 4:30 p.m. while school is in session.  She also receives four hours of educational services on Saturdays.  A.K. Decl. at ¶ 7.  Without continued services, A.C.K. would suffer severe regression in behavior and engage in tantrums and self-injurious behavior, such as head banging and hitting her face with her fist.  *Id*. at ¶ 7.

K.C. qualifies for ESY after a one-day interruption in services.  While school is in session, K.C. receives educational services until 4:45 p.m. during the week, and six hours on Saturdays.  Without continuity in her educational programming, K.C.'s severe tantruming, screaming, obsessive compulsive behavior, and self-injurious behavior would be exacerbated and more difficult to redirect.  B.C. Decl. at ¶ 7.

A.D. would suffer "severe regression" if his educational program were interrupted for more than one day because of his need for a carefully structured routine.  In order to benefit from his education and not regress, he requires the support of a 1:1 aide at all times during the school day and for 2-1/2 hours after school each day.  When his routine is changed abruptly, he sometimes responds

20

aggressively, threatening himself, family members, and caregivers.  L.D. Decl, ¶¶
4, 5.

M.L. relies on structure and a routine in order to function in her daily life.
Without the frequent and consistent prompting to use her communication skills
provided by continued educational services, she would lose those skills.  She
would use verbal expression less frequently, use fewer words, revert to using
inappropriate words to express herself, and ultimately become frustrated and
withdrawn.

Other members of the Plaintiff Class who qualify for Extended School Year
services would also be irreparably harmed by an interruption of educational
services.  In *Virginia S. ex rel. Rachael M. v. Department of Educ., Hawaiʻi*, Civil
No. 06-00128 JMS-LEK, 2007 WL 80814 (D. Haw. 2007), the court noted that
ESY "is the exception and not the rule under the regulatory scheme [citation
omitted]," and that it is available only where there is a likelihood of regression and
slow recoupment without ESY or "significant jeopardy" to the student.  *Id.* at *12.
It follows that an IEP team's decision that a student qualifies for ESY is a
sufficient basis for this Court to find, under *N.D. ex rel. parents v. Hawaiʻi Dept. of
Educ., supra,* 600 F.3d at 1113, that an interruption of services for the period ESY
is triggered (one day, 2, 5, 10, or something else) would be likely to cause

irreparable harm.  Class members who meet the ESY standard should, therefore, be protected by the preliminary injunction.

### D.    The Balance of Hardships Favors Granting a Preliminary Injunction.

Compared to the likelihood of irreparable harm to K.K., M.W., A.C.K., K.C., A.D., and M.L., the DOE will experience no meaningful hardship if a preliminary injunction is granted.  The DOE has been providing them with special educational services under the IDEA in public schools for several years and its personnel are familiar with their needs.  Continuing to provide such services under existing IEPs for a few more weeks and/or months will not cause the DOE any significant hardship.

Moreover, the effect of an injunction on the DOE would be merely financial. As the court noted in *W.H. v. Clovis Unified School District*, 2009 WL 2959849 (E.D. Cal. 2009), in ordering the school district to provide educational services under the IDEA during the pendency of an appeal to determine whether such services were required, when "[f]aced with … a conflict between financial concerns and preventable human suffering, we have little difficulty concluding that the balance of hardships tips decidedly in favor of the latter."  2009 WL 2959849 at * 7 (E.D. Cal. Sept. 10, 2009), *quoting Golden Gate Rest. Ass'n v. City of San Francisco*, 512 F.3d 1112, 1126 (9th Cir. 2008).

22

E.      **The Public Interest Supports a Preliminary Injunction.**

The IDEA embodies a strong public policy in favor of providing a free and appropriate public education to disabled individuals up through the age of 21.  20 U.S.C. § 1412(a).  *See W.H. v. Clovis Unified School District*, *supra* at * 7 (because "Congress enacted the IDEA to ensure 'all children with disabilities have available to them a free appropriate public education ... the public's interest in protecting the needs of children with disabilities in education tips the balance in Student's favor"), *quoting* 20 U.S.C. § 1400(d)(1)(A).

The IDEA embodies a policy of maintaining the child's placement until disputes about IDEA eligibility are resolved.  The IDEA allows individuals to present a complaint with respect to any matter relating to the provision of FAPE, 20 U.S.C. § 1415(b)(6), and during the pendency of such complaint, "the child shall remain in the then-current educational placement ... until all such proceedings have been completed."  20 U.S.C. § 1415(j) (the "Stay Put" rule).  "Such proceedings" includes appeals to the federal courts.  *Joshua A. v. Rocklin Unified School Dist.,* 559 F.3d 1036 (9th Cir. 2009) ("[w]e ... reject the District's position that the plain language of the stay put provision excludes appeals from final judgments of the district courts from civil actions").

The DOE may argue that "stay put" does not apply because K.K., M.W., A.C.K., K.C., A.D., and M.L. purportedly "aged-out" of public education as of the

beginning of the upcoming school year, but the issue of "age-out" is precisely what is at issue here.  The DOE may not extinguish Plaintiffs' "stay put" rights unilaterally, simply by asserting incorrectly that Act 163 ends public education for everyone at age 20.  It does not, as set forth above.  While the IDEA stay put provision may not apply after a student is no longer entitled to the protections of the Act, *Bd. of Educ. of Oak Park v. Illinois Bd. of Educ.,* 79 F.3d 654, 657 (7th Cir. 1996), that is the case "only when the student's ineligibility is undisputed." *Tindell v. Evansville-Vanderburgh School Corp.,* 2010 WL 557058 at *3 (S.D. Ind. 2010); *see also R.Y. v. Department of Education,* 2010 WL 558552 (D. Haw. 2010) (validity of high school diploma was disputed).[4]  The *Tindell* court based its conclusion on the fact that:

> reaching age twenty-one is an outer bound on eligibility, and, implicitly, on the fact that the parties ... did not dispute the student's age.  Had there been such a dispute, upholding the stay-put would have reinforced that provision's purpose of maintaining the student's placement until all disputes were resolved and his entitlement was conclusively foreclosed.

*Tindell, supra.*

Even where the statutory injunction is inapplicable, the Court may grant a preliminary injunction where the traditional elements are satisfied, as here.

---

[4] The Court in *R.Y. v. Department of Education* distinguished a case challenging the validity of a high school diploma from one where the student unquestionably exceeded age eligibility; it declined to extend the ruling in *Oak Park* to the former. Here, *Oak Park* should not apply because age eligibility is the very issue in dispute.

*Tindell, supra.*  The stay-put provision "is intended to prevent the child from losing benefits to which he is entitled."  *Oak Park, supra,* at 659-60.  Public policy therefore supports imposing the equivalent of a "stay put" order until the conclusion of this litigation.

## IV.    CONCLUSION

Based on the foregoing, Plaintiffs request that the Court issue, after hearing, a preliminary injunction requiring the DOE to continue to provide until the conclusion of this litigation educational and related services to K.K., M.W., A.C.K., K.C., A.D., and M.L. **and to all other members of the Plaintiff class who have qualified for Extended School Year services**.

DATED:  Honolulu, Hawaiʻi, June 23, 2011.

  /s/ John P. Dellera
JOHN P. DELLERA
MATTHEW C. BASSETT
ROY BENAVIDEZ
PAUL ALSTON
JASON H. KIM

Attorneys for Plaintiffs