ALSTON HUNT FLOYD & ING
PAUL ALSTON            1126
JASON H. KIM            7128
1001 Bishop Street, Suite 1800
Honolulu, Hawai'i  96813
Telephone:  (808) 524-1800
Facsimile:  (808) 524-4591
E-mail:      palston@ahfi.com
                 jkim@ahfi.com

HAWAI'I DISABILITY RIGHTS CENTER
JOHN P. DELLERA          6602
ROY BENAVIDEZ           7907
1132 Bishop Street, Suite 2102
Honolulu, Hawai'i  96813
Telephone:  (808) 949-2922
Facsimile:  (808) 949-2928
E-mail:      john@hawaiidisabilityrights.org
                 rbenavidez@hawaiidisabilityrights.org

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF HAWAI'I

| | |
|---|---|
| R.P.-K., through his parent C.K., R.T.D., through his parents R.D. and M.D., and the HAWAI'I DISABILITY RIGHTS CENTER, in a representative capacity on behalf of its clients and all others similarly situated,<br><br>                                    Plaintiffs,<br><br>          vs.<br><br>DEPARTMENT OF EDUCATION, State of Hawai'i,<br><br>                                    Defendant. | CIVIL NO. 10-00436 DAE-KSC (Class Action)<br><br>**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION; CERTIFICATE OF SERVICE**<br><br><br>Hearing<br>   Date:      July 11, 2011<br>   Time:      9:00 a.m.<br>   Judge:    Hon. David Alan Ezra |

070101.11

**PLAINTIFFS' REPLY MEMORANDUM
IN SUPPORT OF MOTION FOR
<u>PRELIMINARY INJUNCTION</u>**

Plaintiffs, by and through their undersigned counsel, hereby reply to

Defendant's opposition filed July 1, 2011 to Plaintiffs' motion for a preliminary

injunction.  Doc. # 48.

**A.   <u>LIKELIHOOD OF SUCCESS ON THE MERITS</u>**

*1.   Hawaiʻi Law or Practice*

Defendant claims that if Plaintiffs' motion is granted and the moving parties

are allowed to remain in their current placements,

> this Court would be conferring upon each of them a benefit that
> general education students are unable to enjoy.  Specifically, they
> would be permitted to attend K-12 schools beyond age 20 while
> general education students would be turned away.  That is reverse
> discrimination.

Doc. # 48 at 6.

This argument lacks merit for two reasons.  First, this argument is premised

on the distinction between a "public K-12 school" and other public education

programs offered by Defendant, a distinction that is wholly outside the IDEA.  It is

undisputed that programs equivalent to the K-12 program are offered to older

students in the community schools for adults.  Defendant thus misconstrues the

statutory scheme of the IDEA, which applies the federal age standard for a free

appropriate public education ("FAPE") ("18 through 21," 20 U.S.C. § 1412(a)(1))

unless that "would be inconsistent with State law or practice respecting the provision of *public education* to children in those age ranges."  (Emphasis added).

There is nothing in the IDEA to indicate that Congress intended to limit the definition of "public education" to K-12 education provided in elementary schools and high schools.  Although Defendant has chosen as an administrative matter to provide special education pursuant to the IDEA only in its elementary and high schools and not in its adult education programs, Defendant has not even attempted to explain why this arrangement is necessary or consistent with the IDEA.

Plaintiffs' motion submits abundant evidence that Defendant, by law and practice, offers a public education to students aged 20 and 21.  H.R.S. §§ 302A-432,[1] -433(3),[2] Doc. # 44-6 (adult education is "an integral part of public education in Hawaii"), Doc. # 44-7 (students aged 18 and over may earn their high school diplomas in the adult education program in one of three ways), Doc. # 44-8 at 102:24-25 (students over 20 years of age are steered to the adult education program "to finish their high school diploma.")  Extending a FAPE to special education students in that age range through the adult education programs would therefore

---

[1] "[T]he department shall establish and regulate a program of adult and community education of less than college grade."

[2] "[S]econdary education for those adults who, in youth, left school or for some reason had their education curtailed and who now desire to continue their education; for those youths who have been excepted from compulsory attendance under section 302A-1132; and for those youths who are in need of courses to complete their high school graduation requirements."

2

not be inconsistent with State law or practice.  As Defendant admits, Act 163 was not intended to apply outside the K-12 schools.  Doc. # 48 at 5 ("[I]t is clear that Act 163 was not intended to and does not apply to adult education programs" and therefore "does not prohibit either non-disabled or disabled students aged 20 and beyond from enrolling in adult education programs.")  Consequently, Plaintiffs are likely to succeed in proving that the IDEA age limits apply in Hawai'i, and that they are therefore entitled to a FAPE until age 22.

Second, Defendant ignores the fact that students with disabilities aged 20 and 21 who are in need of special education and related services could receive no meaningful benefit from its adult education program because special education is ended at age 20.  This Court has held that merely allowing disabled students to attend school without providing services to confer some educational benefit is insufficient:

> The Rowley Court determined that when Congress enacted the IDEA, it primarily sought to make public education available to disabled students, and that implicit in such a purpose was a requirement that the public education be sufficient to confer some educational benefit on the disabled student.  Although Congress did not impose any greater substantive educational standard than is necessary to make access meaningful, *a school may not simply abandon these children to the backs of classrooms where the adequacy of instruction is gauged by mere attendance.  By denying special services, Hawai'i is denying these students a meaningful education.*

*B.T. v. Department of Education,* 637 F.Supp.2d 856, 865-866 (D. Haw. 2009) (emphasis added).  As Defendant admitted in the *B.T.* case, IDEA FAPEs are not

offered through the adult education programs.  Doc. # 44-8 at 70:5-13, 98:21 –
99:13.

Defendant's complaint of "reverse discrimination" is essentially a complaint
that disabled students are given special services that are not provided to those
without disabilities.  But this is precisely what is required by the IDEA.  Those
services might consist of special aides and tutors, speech therapy, placement in
fully self-contained classrooms, or placement in private schools – whatever the IEP
team, hearings officers, or courts determine the student needs to receive a
meaningful educational opportunity.  In this case, the special services are
continued placement in public or private school.  That is not "reverse
discrimination."  It is what is needed to ensure "that the public education be
sufficient to confer some educational benefit on the disabled student."  *B.T., supra*,
as recognized by Congress in enacting the IDEA.

### 2.     *Section 504 and the ADA*

Plaintiffs do not "claim that Act 163 violates Section 504" or that it
"prevents disabled students beyond the age of 20 from enrolling in adult education
programs."  Doc. # 48 at 7.  Rather, Plaintiffs have demonstrated that Defendant
violates Section 504 and the Americans With Disabilities Act, 42 U.S.C. § 12132,
by offering secondary education (high school) programs to adults without
disabilities in community schools for adults, while closing those programs to

students with disabilities by failing to provide special education and related services that Congress has determined to be necessary to allow disabled students to access educational services on an equal basis with non-disabled students. Doc. # 44-8 at 70:5-13, 98:21 – 99:13; H.A.R. § 8-60-38(d).

Tellingly, Defendant has not even argued – much less proven – that extending the IDEA FAPE system to its adult education programs would entail an "undue burden" or result in a "fundamental alteration" in the programs.

Defendant claims there is no discrimination here because Plaintiffs have not applied for admission to the adult education program (Doc. # 48 at 7), but it would be futile to do so. Defendant admits that IEPs and special education services are not provided in community schools for adults, Doc. # 44-8 at 70:5-13, 98:21 – 99:13, and its administrative rules end eligibility for such services at age 20. H.A.R. § 8-60-38(d).[3] *See Parr v. Kapahulu Investments, Inc.,* 2000 WL 687646 at *3 (D. Haw. 2000) ("[t]he ADA does not require 'a person with a disability to engage in a futile gesture if such [a] person has actual notice that a person or organization ... does not intend to comply' with the ADA," citing 42 U.S.C. § 12188(a)(1).

---

[3] In order to be eligible for special education and related services, a student must be "[u]nder twenty on the first instructional day of the official school year calendar set by the department."

*Southeastern Community College v. Davis,* 442 U.S. 397 (1979) provides no support to Defendant.  That case involved admission to *post-secondary* education, where the issue was whether accommodating an applicant's disability would require a substantial change in the program.[4]  Here, the issue is providing substantially the same special education and related services until age 22 that have been provided as a part of the student's secondary education program before age 20.  Extending special education services to age 22 would therefore not require any change in the secondary education program; it would continue it unchanged for two more years.

### 3.  Estoppel

Defendant seems to argue that it had to "check the box" saying it offered FAPE to children aged 18 through 21 because there were only two boxes (one labeled "yes" and the other "no"), and it could not change the form.[5]  Doc. # 48 at 8.  Of course, it could have been honest, checked "no," and then provided an explanation, but that could easily have led the federal agency to realize that Defendant was taking IDEA funds and then engaging in "blatant discrimination" against the very children with disabilities those funds were intended to benefit.  *See*

---

[4] The plaintiff sought to be admitted to a nurses training program despite having a hearing impairment that forced her to rely on lip reading.  The Court found that the disability would present a danger to patients because lip reading may not always be feasible in a hospital setting; the plaintiff was thus not qualified for admission.

[5] "Oh! what a tangled web we weave/When first we practise to deceive!"  -- Sir Walter Scott.

*B.T. v. Department of Education,* 637 F.Supp.2d 856, 865 (D. Haw. 2009) ("[w]hat

emerges is a picture of blatant discrimination in violation of the IDEA and Section

504 of the Rehabilitation Act of 1973").

So Defendant lied, checked "yes," and now is left to argue that a cryptic

phrase buried "several pages later" ("[g]eneral eligibility criteria for the occurrence

of birthdays for children age three and age twenty to implement the applicable age

ranges in the State of Hawai'i," Doc. # 48 at 8) somehow cleared everything up.

This "disclosure" cannot by any stretch be deemed sufficient to transform a

misrepresentation into an honest answer.

Defendant then says that the Office of Special Education Programs

("OSEP") knows Hawai'i terminates special education at age 20, Doc. # 48 at 9,

but that is beside the point. There is no reason to believe that OSEP was ever

aware or that it is aware now that Defendant ends FAPE at 20 while continuing to

offer a high school education (now an equivalent high school program) to students

without disabilities aged 20 and 21.

Defendant ignores the fact that it misled not only the U.S. Department of

Education, but the general public as well. *See* Doc. # 44-1 at 16 (memorandum in

support of the present motion). The fact that OSEP's letter (stating that special

education ends at age 20) was "accessible to the general public on the OSEP

website is irrelevant. Doc. # 48 at 9. There is nothing in Defendants' applications

for IDEA funding that would disclose to parents of disabled students (who were entitled to comment under 20 U.S.C. § 1232d(b)(7)) that students without disabilities were being offered educational opportunities that were denied to their own children of the same age.

Finally, Defendant says judicial estoppel does not apply to positions taken before an administrative agency, apparently discerning no reason why it cannot promise to use funds in one way in order to get them, and then breaking its promise when the cash is securely in hand.  Doc. # 48 at 9.  The Ninth Circuit disagreed in *Rissetto,* as we pointed out.  Doc. # 44-1 at 17.

## B.   <u>IRREPARABLE HARM</u>

Defendant argues, inexplicably, that Plaintiffs would not be harmed by a termination of special education and related services at age 20 because they will be denied those services anyway when they reach age 22.  Doc. # 48 at 10.  What this argument ignores is that – even though services will be ended when they reach 22 – Plaintiffs will obtain some benefit (potentially life-long) from several months of additional education before then.  Furthermore, the Ninth Circuit has recognized that the disruption of special education can cause irreparable harm.  *N.D. ex rel. parents v. Hawai'i Dept. of Educ.,* 600 F.3d 1104, 1113 (9th Cir. 2010).  The evidence submitted with this motion shows that the six moving parties and all other members of the Plaintiff class who qualify for Extended School Year services

8

would suffer regression in academics and behavior, increased difficulty with daily activities, and outbursts of frustration and violence.

## C.   <u>BALANCE OF EQUITIES</u>

In *N.D. v. Hawai'i Department of Education, supra,* the Ninth Circuit held that the district court did not abuse its discretion by balancing the cost of keeping public schools open on "furlough Fridays" against the harm closing school for one day a week could cause individual students.  The Court also distinguished, however, "a complete cut-off of funding for private placement" from an administrative decision to finance education for all students "with slightly fewer school days."  *Id.,* 600 F.3d at 1117.  It also found that a "school district's failure to provide the number of minutes and type of instruction guaranteed in an IEP could support a claim of material failure to implement an IEP."  Such a claim would be resolved through due process proceedings and judicial review.  *Ibid.* Obviously, *N.D.* does not support Defendant's argument that a preliminary injunction should be denied in this case.

Defendant complains generally about cost but has provided no details about the additional expenses it will incur if a preliminary injunction is granted (other than the costs for those Movants at Loveland).  Unlike the *N.D.* case, there is no evidence here that the costs of providing a special education to Movants will cause Defendant to take other actions that are nondiscriminatory (such as laying off

9

teachers) that will have a countervailing harm to students with disabilities.  It also complains that educating disabled students would interrupt summer vacations of teachers and school administrators.  Doc. # 48 at 11-12.  Those factors cannot outweigh Plaintiffs' right to a public education.[6]

As to those class members who have been placed in private schools at public expense, they are only there because Defendant failed to provide a FAPE in the public schools.  The remedy for that is clear:

> public educational authorities who want to avoid reimbursing parents for the private education of a disabled child can do one of two things: give the child a free appropriate public education in a public setting, or place the child in an appropriate private setting of the State's choice.

*Florence County School Dist. v. Carter*, 510 U.S. 7, 15 (1993).  If the school district fails to do either, it should not be heard to complain about tuition charged by a private school that is found to be an appropriate placement.

## D.    **THE PUBLIC INTEREST**

The public interest would be served by extending FAPE to age 22, as that is consistent with Hawaiʻi law and practice respecting public education generally.

---

[6] Defendant's claim that Loveland Academy is unaccredited, Doc. # 48 at 10, is incorrect.  *See Marcus I. ex rel. Karen I. v. Hawaiʻi, Dept. of Educ.*, 2009 WL 3378589 at * 1 (D. Haw. 2009) ("Loveland is nationally accredited under the Counsel for Association of Rehabilitation Facilities ('CARF') to provide community based mental health treatment").  In any event, if Defendant proposes to change placement, it must exhaust its administrative remedies.  20 U.S.C. § 1415(b)(6).

There is no public interest in enforcing a state law that conflicts with the IDEA and is preempted as a result.

Defendant says there is no evidence that class members would obtain a high school diploma or live independently if they receive an additional year or two of FAPE. There is no evidence that students without disabilities who are admitted to the community schools for adults will obtain a high school diploma either, but that is irrelevant. In order to terminate special education and related services before a student ages out or receives a full high school diploma, Defendant must determine that the student no longer needs those services after conducting an evaluation in accordance with 34 C.F.R. §§ 300.304-300.311.

What Defendant is really saying is that the Plaintiff class members cannot be educated and that trying to educate them is a waste of money. Fortunately, that attitude is not in accord with the law. In *Timothy W. v. Rochester, N.H. School District,* 875 F.2d 954, 960-961 (1st Cir. 1989), the Court found nothing in IDEA "which requires as a prerequisite to being covered by the Act, that a handicapped child must demonstrate that he or she will "benefit" from the educational program." The Court ruled:

> Rather, the Act speaks of the *state's* responsibility to design a special education and related services program that will meet the unique "needs" of all handicapped children. The language of the Act in its entirety makes clear that a "zero-reject" policy is at the core of the Act, and that no child, regardless of the severity of his or her handicap, is to ever again be subjected to the deplorable state of

11

affairs which existed at the time of the Act's passage, in which millions of handicapped children received inadequate education or none at all. In summary, the Act mandates an appropriate public education for all handicapped children, regardless of the level of achievement that such children might attain.

Defendant argues that stay put does not apply after a student ages out, Doc. # 48 at 13, but aging out is the very issue in dispute.  In any event, Plaintiffs have moved for a preliminary injunction "that affects a stay put invocation, not the stay put invocation itself."  *See N.D. v. Hawaiʻi Dept. of Educ., supra,* 600 F.3d at 1112.  Because the standards for a preliminary injunction having been satisfied, the motion should be granted.[7]

Defendant's "buyer's remorse" argument is misplaced.  Doc. # 48 at 14. Unfortunately, the Hawaiʻi Legislature was willing to close the door in Act 163 to a handful of regular education students who need a few more credits to graduate after reaching 20 years of age.  It left the option of adult education open, however, for 700 students aged 20 and 21 who pursue high school equivalency diplomas each year.  By doing so, it must provide a FAPE for overage special education students too.  *B.T. v. Department of Education, supra,* 637 F.Supp.2d at 866.

---

[7] Defendant's argument that Plaintiffs must exhaust their administrative remedies before they can move for a preliminary injunction invoking "stay put" lacks merit. *N.D. v. Hawaiʻi Dept. of Educ., supra,* 600 F.3d at 1111.

12

The requirement in Rule 65(c) that Plaintiffs post a security bond should be waived. *See Swanson v. University of Hawaiʻi Professional Assembly*, 269 F.Supp.2d 1252, 1261 (D. Haw. 2003).

DATED:  Honolulu, Hawaiʻi, July 5, 2011.

Respectfully submitted,


   /s/ John P. Dellera
JOHN P. DELLERA
ROY M. BENAVIDEZ
PAUL ALSTON
JASON H. KIM

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF HAWAIʻI

| | |
|---|---|
| R.P.-K., through his parent C.K., R.T.D., through his parents R.D. and M.D., and the HAWAIʻI DISABILITY RIGHTS CENTER, in a representative capacity on behalf of its clients and all others similarly situated, | CIVIL NO. 10-00426 DAE-KSC (Class Action) |
| Plaintiffs, | **CERTIFICATE OF SERVICE** |
| vs. | |
| DEPARTMENT OF EDUCATION, State of Hawaiʻi, | |
| Defendant. | |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the date noted below, a true and correct copy of the PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION was served electronically via CM-ECF upon the Defendant's counsel of record as follows:

| | |
|---|---|
| Gary S. Suganuma | Gary.S.Suganuma@hawaii.gov |
| Carter K. Siu | carter.k.siu@hawaii.gov |
| Holly T. Shikada | holly.t.shikada@hawaii.gov |

DATED:  Honolulu, Hawaiʻi, July 5, 2011.

  /s/ John P. Dellera
JOHN P. DELLERA
Attorney for Plaintiffs