IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| R.P.-K., etc., et al.,<br><br>              Plaintiffs,<br><br>      vs.<br><br>DEPARTMENT OF EDUCATION,<br>State of Hawai'i,<br><br>              Defendants. | CIVIL NO. CV10 00436 DAE-KSC<br> (Other Civil Action)<br><br>**MEMORANDUM IN SUPPORT OF<br>MOTION** |

786239v1/9966-1

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................. ii

I.  INTRODUCTION ................................................................... 1

II.  FACTUAL AND PROCEDURAL BACKGROUND .................................. 2

    A.  *B.T.* and Act 163 ............................................................ 2

    B.  Even After Act 163, the DOE Continues to Provide "Public
        Education" to Students Between 20 and 22. ......................... 4

    C.  K.K. .......................................................................... 6

    D.  M.W ......................................................................... 7

    E.  A.C.K. ...................................................................... 8

    F.  K.C. ......................................................................... 9

    G.  A.D. ........................................................................ 10

    H.  M.L. ........................................................................ 11

III.  ARGUMENT ...................................................................... 12

    A.  Standard for a Preliminary Injunction .................................. 12

    B.  Plaintiffs are Likely to Succeed on the Merits of Their IDEA
        Claims. ...................................................................... 13

        1.  The IDEA Requires the DOE to Offer FAPE to Age 22. ......... 13

    C.  K.K., M.W., A.C.K., K.C., A.D., and M.L. Will Likely Suffer
        Irreparable Harm if Services are Interrupted. ........................ 16

    D.  The Balance of Hardships Favors Granting a Preliminary
        Injunction. ................................................................... 19

    E.  The Public Interest Supports a Preliminary Injunction. .............. 20

i

IV.   CONCLUSION..............................................................................................21

# TABLE OF AUTHORITIES

## FEDERAL CASES

*America Trucking Ass'ns. v. City of Los Angeles*, 559 F.3d 1046 (9th Cir. 2009) ...................................................................................12

*Amoco Production Co. v. Gambell*, 480 U.S. 531, 107 S. Ct. 1396, 94 L. Ed. 2d 542 (1987)............................................................................12

*B.T. v. Department of Education*, Civil No. 08-00356 *DAE-BMK,* 2008 WL 3891867 (D. Haw. Aug. 21, 2008) ............................................2, 3

*B.T. v. Department of Education*, 637 F. Supp. 2d 856 (D. Haw. 2009)...........13, 14

*B.T. v. Department of Education*, 2009 WL 4884447 (D. Haw. Dec. 17, 2009) ....................................................................................2, 3

*Golden Gate Rest. Ass'n v. City of San Francisco*, 512 F.3d 1112, 1126 (9th Cir., 2008) .......................................................................20

*Joshua A. v. Rocklin Unified School District*, 559 F.3d 1036 (9th Cir. 2009) ........21

*N.D. ex rel. parents v. Hawaii Department of Education*, 600 F.3d 1104 (9th Cir. 2010) ...............................................................12, 16, 19

*Virginia S. ex rel. Rachael M. v. Department of Education, Hawaii*, Civil No. 06-00128 *JMS-LEK*, 2007 WL 80814 (D. Haw. 2007)....................18, 19

*W.H. v. Clovis Unified School District*, 2009 WL 2959849 (E.D. Cal. 2009) ..19, 20

*Winter v. Natural Resource Defense Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008)....................................................12

## FEDERAL STATUTES

20 U.S.C. 1400, *et seq*....................................................................................1

20 U.S.C. § 1400(d)(1)(A) ...........................................................................20

20 U.S.C. § 1412(a) ...................................................................................2, 13, 20

20 U.S.C. § 1412(a)(1)(B) ...............................................................................2, 13

20 U.S.C. § 1415(b)(6).........................................................................................20

20 U.S.C. § 1415(j) ..............................................................................................20

FRCP Rule 30(b)(6) ...............................................................................................1

## HAWAII STATUTES

H.R.S. § 302A-433(3) ..........................................................................................14

H.R.S. § 302A-1134(c) ..........................................................................................3

## MEMORANDUM IN SUPPORT OF MOTION

## I.       INTRODUCTION

On June 23, 2011, Plaintiffs filed their Motion for Preliminary Injunction.  This Court denied the motion *without prejudice* because there was inadequate evidence in the record to demonstrate a likelihood of success on the merits.  Order Denying Plaintiffs' Motion for a Preliminary Injunction Without Prejudice, entered July 12, 2011 [53] ("Order").  Specifically, the Court found no evidence in the record that "the DOE has adopted a practice whereby general education students of the same age are allowed to continue their secondary education in adult education programs with regularity."  Order at 8.

On July 27, 2011, Plaintiffs took the deposition of two representatives of Defendant Department of Education of the State of Hawai`i ("DOE") pursuant to FRCP Rule 30(b)(6).  The excerpts of those depositions and deposition exhibits attached to this motion prove that the DOE does have a practice of allowing students between the ages of 20 and 22 to continue their education in the community schools, despite the passage of Act 163.  Indeed, hundreds of students in that age range are currently working towards a high school equivalency diploma in the community schools.  For this reason, Plaintiffs are likely to succeed on the merits of their claim under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. 1400, *et seq*.

Furthermore, the movants will suffer irreparable harm if a preliminary injunction is not granted.  K.K., M.W., A.C.K., K.C., A.D., and M.L. are members of the Plaintiff class (disabled individuals now or imminently between the ages of 20 and 22) who had until recently been receiving education and related services from the DOE under the IDEA.  As of July 31, 2011 (at the latest), the DOE had ceased offering special education and related services to these and other class members who qualify for Extended School Year ("ESY") services.

Allowing this interruption of services to continue is likely to cause K.K., M.W., A.C.K., K.C., A.D., and M.L. and other class members who qualify for ESY irreparable harm in the form of significant regression in their behavioral and educational progress and lengthy periods of recoupment.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     *B.T.* and Act 163

The IDEA requires each state to provide a free appropriate public education ("FAPE") to "all children with disabilities ... between the ages of 3 and 21, inclusive ...."  20 U.S.C. § 1412(a).  States may impose different age restrictions if those same limitations are applied to general education students as well.  20 U.S.C. § 1412(a)(1)(B).

In *B.T. v. Department of Education,* this Court enjoined the State of Hawai`i from denying special education services based solely on a student's

attaining the age of 20.  The Plaintiff in *B.T.* had argued that extending a free

appropriate public education ("FAPE") to age 22 would be consistent with Hawai`i

law and practice and that an administrative rule of the DOE that terminated special

education services at age 20 was therefore inapplicable.

This Court granted a preliminary injunction because regular education

students over 20 could obtain a public education if (i) they met the age limits upon

entering the ninth or tenth grade, (ii) they received a waiver from the school

principal, or (iii) they pursued their secondary education in the adult education

program.  *B.T. v. Department of Education,* Civil No. 08-00356 DAE-BMK, Doc.

# 22, 2008 WL 3891867 at *5 (D. Haw. Aug. 21, 2008).  In granting summary

judgment in favor of Plaintiff, the Court found that the DOE, in practice, allowed

"a [general education] student to attend school after 20 years of age" while not

providing special education students that same opportunity.  *B.T. v. Department of

Education*, 2009 WL 4884447, at *9 (D. Haw. Dec. 17, 2009).

Act 163 – the State law upon which the DOE relied in eliminating

services to K.K., M.W., A.C.K., K.C., A.D., and M.L. – purports to impose a 20-

year age limit on admission to public school.  HRS § 302A-1134(c).  As explained

further below, Act 163 addressed only two of the three options this Court

recognized by which overage students could continue their secondary education.

General education students are still allowed to pursue secondary education in the DOE's adult education program.

   **B.    Even After Act 163, the DOE Continues to Provide "Public Education" to Students Between 20 and 22.**

   The depositions of the DOE's 30(b)(6) representatives established the following facts, which demonstrate unambiguously that the DOE has continued to provide "public education" to students between the ages of 20 and 22 through its GED and Competency-Based ("CB") diploma programs, summarized in Exhibit "A" to the attached Declaration of Jason H. Kim ("Kim Decl."),[1] despite the passage of Act 163:

   •    As of the effective date of Act 163, ***646*** students between the ages of 21 and 22 were enrolled in an adult education program in the community schools: (a) 125 in the GED program; (b) 231 in the CB diploma program; and (c) the remainder in the English as a Second Language program or remedial programs who indicated a desire to eventually earn a GED or CB diploma.  (Exh. "C" to Kim Decl. at 4:13-21 and 5:19-23 and Exh. "D" to Kim Decl.)

   ———————————————

   [1] This document was authenticated by the DOE's 30(b)(6) representative.  Exh. "B" to Kim Decl. at 19:18 – 21:3.

- Act 163 had no impact on the adult education program.  No one enrolled in the GED or CB programs was disqualified because of Act 163.  (Exh. "B" to Kim Decl. at 15:20 – 16:1 and 59:20-25.)

- There are essentially no qualifications to participate in the GED or CB programs.[2]  Although the DOE administers screening tests when a student applies, no student is prevented from participating in such programs because of a low score.  Furthermore, even those students who demonstrate a lower-than-optimal level of competency are allowed to enroll in remedial classes to obtain the desired level of competency.  (Exh. "B" to Kim Decl. at 24:10 – 25:2, 25:22 – 26:17, 31:8 – 33:19, and Exh. "E" to Kim Decl.)

- Although nominal fees are charged to students in connection with the adult education program, the DOE's adult education program is almost entirely funded by state and federal money.  (Exh. "B" to Kim Decl. at 38:5 – 39:12 and 42:6-25.)

- Guidance counselors in the high schools advise students who "age out" of eligibility for high school to continue their education in

---

[2] For both programs, a student must be over the age of 18 or have been released from compulsory education.  Furthermore, to graduate with a GED diploma, the student must have had some previous connection to a Hawai`i high school (with some exceptions).  Neither of these qualifications is relevant to this case.

the DOE's adult education program.  (Exh. "C" to Kim Decl. at 18:11

– 20:24.)

- The goal of the adult education diploma programs is to "ensure

  that the graduates are prepared for transitions to post secondary

  education and have the necessary skills to become productive

  members of Hawaii's economic workforce."  (Exh. "B" to Kim Decl.

  at 67:9-20 and Exh. "F" to Kim Decl.)

**C.    K.K.**

K.K. is a 20-year-old male student diagnosed with severe

developmental delay, cerebral palsy, limited vision, seizure disorder, and other

medical diagnoses.  Declaration of J.K. dated June 17, 2011 ("J.K. Decl") at ¶ 2.

He was most recently enrolled at Leilehua High School and is IDEA eligible.

K.K.'s most recent Individualized Educational Program ("IEP") provides for ESY

because the IEP team determined that due to the nature and severity of his

disability, he suffers serious regression in his education progress if there is an

interruption in educational services longer than ten consecutive days.  *Id.* at ¶ 6.

At an IEP meeting held on February 25, 2011, K.K.'s parents

requested that he be allowed to continue his education until he turns 22 years old

with the special education and related services he needs.  The DOE rejected the

request "because under the law no student can stay in school beyond age 20."

Instead, the DOE advised that K.K.'s special education and related services would end on July 14, 2011, the last day of extended school year 2011. *Id.* at ¶ 4.

On May 31, 2011, K.K. filed a request for due process seeking an order that would continue his special education and related services to age 22. *Id.* at ¶ 5.

**D.    M.W.**

M.W. is a 21-year-old-IDEA-eligible student diagnosed with schizophrenia and anxiety disorder.  Declaration of N.W. dated June 16, 2011 ("N.W. Decl") at ¶ 2.  He was most recently enrolled at Kalani High School. *Id.* at ¶ 3.  M.W.'s educational program focused on developing academic skills in the areas of reading, writing and language arts.  A significant part of M.W.'s educational programming also focused on increasing his independence, developing coping strategies and other behavioral skills to address his schizophrenia and anxiety disorder. *Id.* at ¶ 6.  M.W. qualifies for ESY due to the nature and severity of his disabling condition, severe regression and slow rate of recoupment.  If there is an interruption in educational programming longer than 7 days, M.W. will suffer severe regression in the areas of math, language arts, and behavioral skills. *Id.* at ¶ 7.

At an IEP team meeting held on March 21, 2011, M.W.'s mother requested special education and related services continue until M.W.'s 22nd

birthday.  The DOE refused the request.  In a Prior Written Notice dated March 21, 2011, the DOE advised that M.W. will no longer be eligible for Special Education and related services because he turned 20 years old and pursuant to Hawaii Law, he is no longer eligible for services.  *Id.* at ¶ 4.

On June 2, 2011, M.W. filed a request for due process seeking an order that would continue his special education and related services to age 22.  *Id.* at ¶ 5.

### E.     A.C.K.

A.C.K. is a 20-year-old-IDEA-eligible student diagnosed with Down Syndrome and Autism Spectrum Disorder.  Declaration of A.K. dated June 22, 2011 ("A.K. Decl") at ¶ 2.  She was most recently enrolled at Castle High School where she received special education and related services that focused on functional academics, prevocational activities, life/social skills building, and community based instruction.  *Id.* at ¶¶ 3 and 6.  Due to the nature and severity of her disabling condition, A.C.K. experiences severe regression and a slow rate of recoupment when there is a gap in educational services longer than 5 days.  *Id.* at ¶ 7.

In a Prior Written Notice dated April 1, 2011, the DOE advised that in accordance with Act 163 signed by the Governor on June 3, 2010, A.C.K. will no longer be eligible for Special Education and related services as of July 25, 2011

(the end of the 2010-2011 extended school year) because she will be 20 years old by the end of the 2010-2011 ESY.  *Id.* at ¶ 4.

On June 13, 2011, A.C.K. filed a request for due process seeking an order that would continue her special education and related services to age 22.  *Id.* at ¶ 5.

**F.    K.C.**

K.C. is a 19-year old student diagnosed with Autism Spectrum Disorder, Mental Retardation, and who displays severe Obsessive Compulsive Disorder ("OCD")-type behavior.  Declaration of B.C. dated June 20, 2011 ("B.C. Decl.") at ¶ 2.  K.C. most recently attended Castle High School and is eligible to receive special education and related services.  *Id.*  K.C.'s IEP focuses on developing skills in the areas of communication, mathematics, daily living skills, community interaction, behavioral skills and vocational skills.  K.C.'s IEP team has also recognized that she has not yet gained an understanding of personal safety while in the community and therefore requires constant one-to-one supervision.  *Id.* at ¶ 6.

Due to the nature and severity of K.C.'s regression in her educational programming, she received ESY services when there is more than a one day break in school services.  When school is in session, K.C.'s education services were

provided until 4:45 p.m.  On Saturdays, she received community based instruction for 6 hours.  *Id.* at ¶ 7.

In a Prior Written Notice dated April 21, 2011, the DOE advised that in accordance with Act 163 signed by the Governor on June 3, 2010, A.C.K. will no longer be eligible for special education and related services as of July 25, 2011 (the end of the 2010-11 ESY) because she will be 20 years old by the end of the 2010-11 ESY.  *Id.* at ¶ 4.

On June 15, 2011, K.C. filed a request for due process seeking an order that would continue her son's special education and related services to age 22.  *Id.* at ¶ 5.

### G.    A.D.

A.D. is 20 years old and severely disabled by autism and bi-polar disorder.  He has attended Loveland Academy since age 7.  Declaration of L.D. dated June 17, 2011 ("L.D. Decl.") at ¶ 1.  A.D. qualifies for ESY under his IEP after one day because of the severe regression and behavioral problems he experiences when his routine is interrupted.  *Id.* at ¶ 4.

At an IEP meeting held on May 23, 2011, A.D.'s mother, L.D., requested special education and related services for her son until he became 22 years old.  The DOE refused the request on the basis of a "new regulation" that was adopted to implement Act 163 of the 2010 Session Laws of Hawaii.

According to the "regulation," students who are 20 years old on the first day of school are ineligible for admission. Accordingly, L.D. was informed that special education and related services for her son will end on July 31, 2011, the last day of ESY 2011. *Id.* at ¶ 2.

On June 17, 2011, L.D. filed a request for due process seeking an order that would continue her son's special education and related services to age 22. *Id.* at ¶ 3.

**H.    M.L.**

M.L. is a 20-year old student diagnosed with Autism Spectrum Disorder. Declaration of S.T. dated June 17, 2011 ("S.T. Decl.") at ¶ 2. M.L. is eligible to receive special education and related services. She attends Loveland Academy and her home school is McKinley High School. *Id.* at ¶ 3. M.L.'s IEP focuses on functional academics, social skills, and career – vocational skills building. *Id.* at ¶ 6. Due to the nature and severity of M.L.'s regression in her educational programming, she receives ESY services when there is more than a two-day break in school services. When school is in session, M.L.'s school day is extended by 2-1/2 hours. *Id.* at ¶ 7.

At IEP team meetings held in March, April and May, 2011, M.L.'s parent requested that M.L. be allowed to continue her special education and related

services until her 22nd birthday.  The DOE rejected the request on the grounds that state law does not allow students beyond the age of 20 to stay in school.  *Id.* at ¶ 4.

On June 15, 2011, M.L. filed for due process seeking an order that would continue her special education and related services to age 22.  *Id.* at ¶ 5.

## III.   ARGUMENT

### A.   Standard for a Preliminary Injunction

A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, he is likely to suffer irreparable harm in the absence of preliminary relief, the balance of equities tips in his favor, and an injunction is in the public interest.  *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008); *N.D. ex rel. parents v. Hawaii Dept. of Educ.,* 600 F.3d 1104, 1113 (9th Cir. 2010); *Am. Trucking Ass'ns. v. City of Los Angeles,* 559 F.3d 1046, 1052 (9th Cir. 2009).  Irreparable harm is that which cannot be adequately remedied by money damages and is permanent or at least of long duration.  *Amoco Production Co. v. Gambell,* 480 U.S. 531, 545, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987).

**B.    Plaintiffs are Likely to Succeed on the Merits of Their IDEA Claims.[3]**

**1.    The IDEA Requires the DOE to Offer FAPE to Age 22.**

The IDEA provides that a FAPE "is available to all children with disabilities ... between the ages of 3 and 21, inclusive...."  20 U.S.C. § 1412(a). Federal eligibility for special education and related services ends, therefore, when a student becomes 22.  *B.T. v. Department of Education,* 637 F. Supp.2d 856, 863, fn.9 (D. Haw. 2009).  States may impose age limitations, however, to the extent the same age limitations are applied to public education generally:

> The obligation to make [FAPE] available to all children with disabilities does not apply with respect to children –
>
> (i) aged 3 through 5 and 18 through 21 in a State to the extent that its application to those children would be inconsistent with State law or practice, or the order of any court, respecting the provision of public education to children in those age ranges....

20 U.S.C. § 1412(a)(1)(B).

Although Act 163 states that "no person who is twenty years of age or over on the first day of the school year shall be eligible to attend a ***public school***,"

---

[3] This motion addresses only Plaintiffs' likelihood of success on their IDEA claims. If the Court awards Plaintiffs a preliminary injunction based on the IDEA, Plaintiffs will have obtained the complete relief they are seeking without the need for this Court to consider their claims under Title II of the Americans With Disabilities Act, Section 504 of the Rehabilitation Act, or judicial estoppel.

(emphasis added), the DOE has a practice of providing a ***public education*** to general education students over the age of 20, just as it did at the time of this Court's opinions in *B.T.*

Despite the enactment of Act 163, hundreds of students who were over the age of 20 on the first instructional day of the school year but who are under 22 are enrolled in the GED and CB diploma programs or remedial programs intended to prepare students to enroll in the diploma programs. Exh. "C" to Kim Decl. at 4:13-21 and 5:19-23 and Exh. "D" to Kim Decl. Act 163 had no effect whatsoever on these programs. Exh. "B" to Kim Decl. at 15:20 – 16:1 and 59:20-25.

Furthermore, the GED and CB programs clearly constitute "public education." By statute, the DOE is required to provide a program for adults to continue their secondary education. H.R.S. § 302A-433(3) (authorizing the DOE to establish "[a] program of secondary education for those adults who, in youth, left school or for some reason had their education curtailed and who now desire to continue their education"). Most of the funding for these programs comes from the government and students are charged only nominal fees. Exh. "B" to Kim Decl. at 38:5 – 39:12 and 42:6-25. The programs are accessible to all who wish to benefit from them, regardless of their level of academic competency. Exh. "B" to Kim Decl. at 24:10 – 25:2, 25:22 – 26:17, 31:8 – 33:19, and Exh. "E" to Kim Decl. The

goal of these programs is the same as the goal of the DOE's K-12 public education

program:  to prepare students for post secondary education and provide necessary

vocational skills.  Exh. "B" to Kim Decl. at 67:9-20 and Exh. "F" to Kim Decl.

Finally, in appropriate cases, the guidance counselors in the public

high schools advise students who age-out of eligibility for high school that they

may continue their education through the DOE's adult education program.

Exh. "C" to Kim Decl. at 18:11 – 20:24.  *See* Order at 7 ("To prevail on these

claims, Plaintiffs must demonstrate that the DOE uses Act 163 as a means of

denying special education students a FAPE beyond the age of twenty while

simultaneously ushering general education students of the same age into adult

education programs to complete their secondary education.")

While disabled students are not categorically barred from the DOE's

adult education programs and some accommodations for their disabilities are

available, the IDEA requires far more than nominal non-discrimination and

reasonable accommodations.  As the DOE's 30(b)(6) representative admitted, no

IDEA or special education services are available in the adult education programs.

Exh. "B" to Kim Decl. at 62:2-19 and 65:18-25.

Providing disabled students FAPEs until the age of 22 would not be

inconsistent with any Hawai`i law or practice.  Act 163 has not been interpreted to

prevent the DOE's community schools from providing a public education to

students between the ages of 20-22 and indeed, as a matter of practice, the DOE's community schools have offered a public education to hundreds of students in that age range since the enactment of Act 163.  Plaintiffs are therefore entitled to FAPEs until they reach the age of 22 and Plaintiffs are likely to succeed on the merits of their claims under the IDEA.

### C.   K.K., M.W., A.C.K., K.C., A.D., and M.L. Will Likely Suffer Irreparable Harm if Services are Interrupted.

The Ninth Circuit has held that closing Hawai`i's public schools for 17 "furlough Fridays" would cause irreparable harm to disabled students because they would suffer regression in behavior, increased difficulty with activities, and outbursts of frustration and violence.  *N.D. ex rel. parents v. Hawaii Dept. of Educ., supra,* 600 F.3d at 1113.  The declarations and exhibits submitted in support of this motion show that K.K., M.W., A.C.K., K.C., A.D., and M.L. (each of whom qualified for ESY) would suffer similar irreparable harm if their services are abruptly ended.  Indeed, all the individual movants – as well as the other class members on whose behalf this motion is brought – have been found by the DOE to require ESY because they would be harmed by any sustained interruption in services.

K.K. would suffer serious regression of his educational and life skills because he has a difficult time maintaining the level of skills he has learned after a ten-day interruption in services.  J.K. Decl. at ¶ 6.  Maintaining behavioral skills is

critical for K.K.  He has a history of engaging in severe self-injurious behavior such as head banging when he is frustrated and wants to communicate pain or discomfort.  This behavior, which has been exhibited multiple times per day, can cause damage to the shunt in the upper right side of his head.  *Id*. at ¶ 7.

M.W. receives ESY because he suffers severe regression in both academics and behavioral skills.  Without continued educational services M.W. would become withdrawn, non-responsive, isolate himself from others, and the symptoms of his schizophrenia would increase.  N.W. Decl. at ¶ 7.

Due to the extent of A.C.K.'s regression, her IEP team has determined that A.C.K. requires educational services beyond the normal school day until 4:30 p.m. while school is in session. She also receives four hours of educational services on Saturdays.  A.K. Decl. at ¶ 7.  Without continued services, A.C.K. would suffer severe regression in behavior and engage in tantrums and self-injurious behavior, such as head banging and hitting her face with her fist.  *Id*. at ¶ 7.

K.C. qualifies for ESY after a one-day interruption in services.  While school is in session, K.C. receives educational services until 4:45 p.m. during the week, and six hours on Saturdays.  Without continuity in her educational programming, K.C.'s severe tantruming, screaming, obsessive compulsive

behavior, and self-injurious behavior would be exacerbated and more difficult to redirect.  B.C. Decl. at ¶ 7.

A.D. would suffer "severe regression" if his educational program were interrupted for more than one day because of his need for a carefully structured routine.  In order to benefit from his education and not regress, he requires the support of a 1:1 aide at all times during the school day and for 2-1/2 hours after school each day.  When his routine is changed abruptly, he sometimes responds aggressively, threatening himself, family members, and caregivers. L.D. Decl at ¶¶ 4, 5.

M.L. relies on structure and a routine in order to function in her daily life.  Without the frequent and consistent prompting to use her communication skills provided by continued educational services, she would lose those skills.  She would use verbal expression less frequently, use fewer words, revert to using inappropriate words to express herself, and ultimately become frustrated and withdrawn.

Other members of the Plaintiff Class who qualify for Extended School Year services would also be irreparably harmed by an interruption of educational services.  In *Virginia S. ex rel. Rachael M. v. Department of Educ., Hawaii*, Civil No. 06-00128 JMS-LEK, 2007 WL 80814 (D. Haw. 2007), the court noted that ESY "is the exception and not the rule under the regulatory scheme [citation

omitted]," and that it is available only where there is a likelihood of regression and slow recoupment without ESY or "significant jeopardy" to the student. *Id.* at *12. It follows that an IEP team's decision that a student qualifies for ESY is a sufficient basis for this Court to find, under *N.D. ex rel. parents v. Hawaii Dept. of Educ., supra,* 600 F.3d at 1113, that an interruption of services for the period ESY is triggered (one day, 2, 5, 10, or something else) would be likely to cause irreparable harm.  All class members who meet the ESY standard should, therefore, be protected by the preliminary injunction.

>    **D.    The Balance of Hardships Favors Granting a Preliminary Injunction.**

Compared to the likelihood of irreparable harm to K.K., M.W., A.C.K., K.C., A.D., and M.L. and the other class members who qualify for ESY services, the DOE will experience no meaningful hardship if a preliminary injunction is granted.  The DOE has been providing them with special educational services under the IDEA in public schools for several years and its personnel are familiar with their needs.  Continuing to provide such services under existing IEPs for a few more weeks and/or months will not cause the DOE any significant hardship.

Moreover, the effect of an injunction on the DOE would be merely financial.  As the court noted in *W.H. v. Clovis Unified School District*, 2009 WL 2959849 (E.D. Cal. 2009), in ordering the school district to provide educational

services under the IDEA during the pendency of an appeal to determine whether such services were required, when "[f]aced with … a conflict between financial concerns and preventable human suffering, we have little difficulty concluding that the balance of hardships tips decidedly in favor of the latter."  2009 WL 2959849 at * 7 (E.D. Cal. Sept. 10, 2009), *quoting Golden Gate Rest. Ass'n v. City of San Francisco*, 512 F.3d 1112, 1126 (9th Cir., 2008).

### E.   The Public Interest Supports a Preliminary Injunction.

The IDEA embodies a strong public policy in favor of providing a free and appropriate public education to disabled individuals up through the age of 21.  20 U.S.C. § 1412(a).  *See W.H. v. Clovis Unified School District*, *supra* at * 7 (because "Congress enacted the IDEA to ensure 'all children with disabilities have available to them a free appropriate public education ... the public's interest in protecting the needs of children with disabilities in education tips the balance in Student's favor"), *quoting* 20 U.S.C. § 1400(d)(1)(A).

The IDEA itself embodies a policy of maintaining the child's placement until disputes about IDEA eligibility are resolved.  The IDEA allows individuals to present a complaint with respect to any matter relating to the provision of FAPE, 20 U.S.C. § 1415(b)(6), and during the pendency of such complaint, "the child shall remain in the then-current educational placement ... until all such proceedings have been completed."  20 U.S.C. § 1415(j).  "Such

proceedings" includes appeals to the federal courts.  *Joshua A. v. Rocklin Unified School Dist.,* 559 F.3d 1036 (9th Cir. 2009) ("[w]e ... reject the District's position that the plain language of the stay put provision excludes appeals from final judgments of the district courts from civil actions").  Public policy therefore supports imposing the equivalent of a "stay put" order until the conclusion of this litigation.

## IV.    CONCLUSION

Based on the foregoing, Plaintiffs request that the Court issue, after hearing, a preliminary injunction requiring the DOE to continue to provide until the conclusion of this litigation educational and related services to K.K., M.W., A.C.K., K.C., A.D., and M.L. ***and to all other members of the Plaintiff class who have qualified for Extended School Year services***.

DATED: Honolulu, Hawai`i, August 1, 2011.

/s/ Jason H. Kim
JOHN P. DELLERA
PAUL ALSTON
JASON H. KIM
Attorneys for Plaintiffs