IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| R.P.-K., through his parent C.K., et al., | ) ) ) | Civ. No. 10-00436 DAE-KSC |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| DEPARTMENT OF EDUCATION, STATE OF HAWAII, | ) ) ) | |
| Defendant. | ) ) ) | |
| _____ | ) | |

ORDER: (1) DENYING PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT WITHOUT PREJUDICE; (2) GRANTING IN PART AND
DENYING IN PART WITHOUT PREJUDICE DEFENDANT'S MOTION TO
DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT; AND
(3) DENYING PLAINTIFFS' RENEWED MOTION FOR A PRELIMINARY
INJUNCTION WITHOUT PREJUDICE

On September 12, 2011, the Court heard Plaintiffs' Motion for

Summary Judgment, Defendant's Motion to Dismiss, or in the alternative, for

Summary Judgment ("Defendant's Motion"), and Plaintiffs' Renewed Motion for a

Preliminary Injunction ("Plaintiffs' Injunction Motion"). Jason H. Kim, Esq.,

Matthew C. Basset, Esq., and Lou Erteschik, Esq., appeared at the hearing on

behalf of Plaintiffs; Deputy Attorney General Carter K. Siu appeared at the hearing

on behalf of Defendant Department of Education ("Defendant" or "DOE"). After

reviewing the motions as well as the supporting and opposing memoranda, the

Court: **DENIES WITHOUT PREJUDICE** Plaintiffs' Motion for Summary

Judgment (Doc. # 57); **GRANTS IN PART AND DENIES IN PART**

**WITHOUT PREJUDICE** Defendant's Motion to Dismiss, or in the alternative,

for Summary Judgment (Doc. # 60); and **DENIES WITHOUT PREJUDICE**

Plaintiffs' Motion for a Preliminary Injunction (Doc. # 59).

<u>BACKGROUND</u>

      The named Plaintiffs in this case—excluding Plaintiff Hawaii

Disability Rights Center ("HDRC")—are disabled individuals who are or had been

eligible for special education under the Individuals with Disabilities Education Act

("IDEA").  In this litigation Plaintiffs are challenging the validity of Act 163 of the

Session Laws of Hawaii for 2010 ("Act 163"), arguing it is an invalid attempt at

circumventing this Court's holdings in <u>B.T. v. Dep't of Educ.</u>, 637 F. Supp. 2d 856

(D. Haw. 2009), <u>B.T. v. Dep't of Educ.</u>, 2009 WL 4884447 (D. Haw. Dec. 17,

2009) (hereinafter "<u>B.T. II</u>"), and <u>B.T. v. Dep't of Educ.</u>, 2008 WL 3891867 (D.

Haw. Aug. 21, 2008) (hereinafter "<u>B.T. III</u>") and therefore violates the IDEA.

Plaintiffs also allege violations of Title II of the Americans with Disabilities Act

("ADA") as well as Section 504 of the Rehabilitation Act ("Rehab Act").  Finally,

Plaintiffs contend that principles of judicial estoppel should preclude Defendant

from denying Plaintiffs a special education per the IDEA.

I.       <u>*B.T.*</u> <u>and Act 163</u>

The IDEA requires each state to provide a free appropriate public education ("FAPE") to "all children with disabilities . . . between the ages of 3 and 21, inclusive . . . ." 20 U.S.C. § 1412(a). This Court determined that federal eligibility for special education and related services therefore ends on a student's twenty-second birthday. <u>B.T. I</u>, 637 F. Supp. 2d at 863–64 n.9. States, however, may impose different age restrictions provided those same limitations are applied broadly to general education students as well. 20 U.S.C. § 1412(a)(1)(B) ("The obligation to make [FAPE] available to all children with disabilities does not apply with respect to children . . . aged 3 through 5 and 18 through 21 in a State to the extent that its application to those children would be inconsistent with State law or practice . . . ."); <u>see also</u> <u>B.T. I</u>, 637 F. Supp. 2d at 863 ("The State is only allowed to deviate from the requirements of the IDEA if there is a clear State law that says otherwise.").

In <u>B.T.</u>, Plaintiff B.T. was a severely autistic twenty-year-old. <u>B.T. I</u>, 637 F. Supp. 2d at 859. He argued that extending a FAPE to the age of twenty-two was consistent with Hawaii law and that the DOE's policy of terminating special education services at the age of twenty was invalid given the practice of the state of Hawaii. <u>See</u> <u>id.</u> at 862–65. The Court agreed. Specifically, the Court focused on

the "nature of the practice of Hawaii's schools toward students 20 years or older" and found that "Defendant has approved every single overage general education student and barred almost every single overage special education student." Id. at 865. Accordingly, "Hawaii [had denied] these students a meaningful education" and violated the IDEA and Rehab Act. Id. at 865–66. Hawaii therefore was "enjoined from implementing a per se rule denying special education services based solely on [the students] attaining the age of 20." Id. at 866. The Court subsequently granted summary judgment, in part, for Plaintiff B.T. B.T. II, 2009 WL 4884447, at *9. The state of Hawaii did not appeal this Court's ruling.

Since then, however, Hawaii has passed Act 163 which amended Haw. Rev. Stat § 302A-1134(c) to impose a twenty year age limit on all admissions to public high school. See Haw. Rev. Stat. § 302A-1134(c). Specifically, the statute states:

> No person who is twenty years of age or over on the first instructional day of the school year shall be eligible to attend a public school. If a person reaches twenty years of age after the first instructional day of the school year, the person shall be eligible to attend public school for the full school year.

Id. Plaintiffs assert that while Act 163 imposes an age limit of twenty for attendance at a public school, the DOE continues to provide a public education to students over the age of twenty through the CB (competency-based) and GED

(General Education Development) high school equivalency programs (collectively "adult education programs").  A special education student, according to Plaintiffs, cannot therefore be denied a FAPE on the grounds that he or she has "aged-out" of IDEA eligibility per Act 163 because general education students may continue their studies in these adult education programs.

II.     Procedural History

On July 17, 2010, Plaintiffs filed their Class Action Complaint for Declaratory and Injunctive Relief.  ("Compl.," Doc. # 1.)  On September 24, 2010, Plaintiffs filed a Motion to Certify Class.  (Doc. # 15.)  On March 15, 2011, the Court issued an Order Granting in Part and Denying in Part Plaintiffs' Motion for Class Certification.[1]  (Doc. # 31.)  On June 23, 2011, the Plaintiffs filed a Motion for Preliminary Injunction.  (Doc. # 44.)  On July 12, 2011, the Court denied

---

[1] Specifically, the Court certified the following class:

All individuals residing in the State of Hawai'i who over the age of 20 on or before the first day of the school year (or who will imminently be over the age of 20 on that date) but under the age of 22 who are entitled to receive special education and related services from Defendant the Hawai'i Department of Education under the Individuals With Disabilities Education Act.

(Doc. # 31 at 2.)

Plaintiffs' Motion for a Preliminary Injunction without prejudice ("July Order").

("July Order," Doc. # 53.)  In its July Order the Court held that in order to prevail:

> Plaintiffs must demonstrate that the DOE uses Act 163 as a means of denying special education students a FAPE beyond the age of twenty while simultaneously ushering general education students of the same age into adult education programs to complete their secondary education.

(Id. at 7.)  The Court went on to deny the Motion for  Preliminary Injunction

finding that

> While Plaintiffs have demonstrated that Act 163 is used to deny special education students a FAPE beyond the age of twenty, there is no evidence yet on the record to suggest that the DOE has adopted a practice whereby general education students of the same age are allowed to continue their secondary education in adult education programs with regularity.  See B.T., 637 F. Supp. 2d at 865–66 (focusing on the "nature of the practice of Hawaii's schools towards students 20 years or older" and finding that "Defendant has approved every single overage general education student and barred almost every single overage special education student").  Without this evidence, the Court cannot conclude that Plaintiffs have satisfied their heavy burden with respect to their Motion for a Preliminary Injunction.  Specifically, Plaintiffs have not demonstrated a likelihood of success on the merits.

(Id. at 8–9.)  The Court, however, invited Plaintiffs to refile the Motion for

Preliminary Injunction once further discovery had taken place.  (Id. at 9.)

On August 1, 2011, Plaintiffs filed their Motion for Summary

Judgment.  ("Ps' Mot.," Doc. # 57.)  Plaintiffs also filed a Renewed Motion for

Preliminary Injunction. ("Ps' Injunction Mot.," Doc. # 59.) Also on August 1, 2011, Defendant filed its Motion. ("D's Mot.," Doc. # 60.)

On August 22, 2011, Plaintiffs filed their Opposition to Defendant's Motion. ("Ps' Opp'n," Doc. # 63.) The same day, Defendant filed its Opposition to Plaintiffs' Motion for Summary Judgment. ("D's Opp'n," Doc. # 65.) Defendant also filed an Opposition to Plaintiffs' Injunction Motion. ("D's Injunction Opp'n," Doc. # 67.) On August 29, 2011, Defendant filed its Reply in support of its Motion. ("D's Reply," Doc. # 69.) The same day, Plaintiffs filed a consolidated Reply in support of both their Motion for Summary Judgment as well as their Injunction Motion. ("Ps' Reply," Doc. # 71.)

<u>STANDARD OF REVIEW</u>

I. <u>Motion for Summary Judgment</u>

Federal Rule of Civil Procedure ("Rule") 56 requires summary judgment to be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>see also</u> <u>Porter v. Cal. Dep't of Corr.</u>, 419 F.3d 885, 891 (9th Cir. 2005); <u>Addisu v. Fred Meyer, Inc.</u>, 198 F.3d 1130, 1134 (9th Cir. 2000). A main purpose of summary judgment is to dispose of factually unsupported claims and defenses. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323–24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. See id. at 323. Before granting summary judgment, however, a non-moving party must have a "'full and fair opportunity to ventilate the issues [related to] the . . . claims.'" Norse v. City of Santa Cruz, 629 F.3d 966, 972–73 (9th Cir. 2010) (quoting Greene v. Solano Cnty. Jail, 513 F.3d 982, 990 (9th Cir. 2008)).

A moving party without the ultimate burden of persuasion at trial—usually, but not always, the defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323). This assertion must be supported by citations "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials," or by demonstrating "that the materials cited do not

establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and may not rely on the mere allegations in the pleadings.  Porter, 419 F.3d at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence without page or line numbers.  S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties.").  "[A]t least some 'significant probative evidence'" must be produced.  T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."  Addisu, 198 F.3d at 1134.  Further, the Ninth Circuit has "refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony."  Villiarimo v. Aloha Island Air, Inc.,

281 F.3d 1054, 1061 (9th Cir. 2002) (citing <u>Kennedy v. Applause, Inc.</u>, 90 F.3d 1477, 1481 (9th Cir. 1996)). "Conclusory allegations unsupported by factual data cannot defeat summary judgment." <u>Rivera v. Nat'l R.R. Passenger Corp.</u>, 331 F.3d 1074, 1078 (9th Cir. 2003). If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, a court may either give the party an opportunity to support or address the fact, consider the fact undisputed for purposes of the motion and grant or deny summary judgment accordingly, or issue any other appropriate order. Fed. R. Civ. P. 56(e).

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." <u>T.W. Elec. Serv.</u>, 809 F.2d at 631. In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party. <u>Porter</u>, 419 F.3d at 891. The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage. <u>Id.</u>; <u>see also</u> <u>Nelson v. City of Davis</u>, 571 F.3d 924 (9th Cir. 2009) ("[C]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.") (citations omitted). However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts

that the judge is required to resolve in favor of the nonmoving party.  <u>T.W. Elec.</u>

<u>Serv.</u>, 809 F.2d at 631.

II.     <u>Motion to Dismiss</u>

      A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of

a claim."  <u>Navarro v. Block</u>, 250 F.3d 729, 732 (9th Cir. 2001).  A complaint may

be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal

theory or (2) insufficient facts alleged to support a cognizable theory.  <u>Id.</u>  (citing

<u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1990)).  Because a

Rule 12(b)(6) motion to dismiss focuses on the sufficiency of a claim statement,

review is generally limited to the face of the complaint.  <u>Lee v. City of Los</u>

<u>Angeles</u>, 250 F .3d 668, 688 (9th Cir. 2001) (citation omitted); <u>Clegg v. Cult</u>

<u>Awareness Network</u>, 18 F.3d 752, 754 (9th Cir. 1994) (citations omitted).  The

Court must accept all allegations of material fact as true and construe them in a

light most favorable to the nonmoving party.  <u>Sprewell v. Golden State Warriors</u>,

266 F.3d 979, 988 (9th Cir. 2001).  The Court, however, need not accept as true

conclusory allegations of law, unwarranted deductions of fact, and unreasonable

inferences.  <u>Id.</u>

      As to a plaintiff's pleading burden, the Supreme Court has held that

while a complaint "does not require 'detailed factual allegations,' . . . it demands

more than an unadorned, the defendant-unlawfully-harmed-me accusation."
Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 555 (2007)). "Factual allegations must be enough to raise
a right to relief above the speculative level." Twombly, 550 U.S. at 555. Thus, to
survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts
to state a claim to relief that is plausible on its face." Id. at 570. A claim is
plausible on its face "when the plaintiff pleads factual content that allows the court
to draw the reasonable inference that the defendant is liable for the misconduct
alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556). If a court
dismisses the complaint or portions thereof, it must consider whether to grant leave
to amend. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (finding that leave
to amend should be granted "if it appears at all possible that the plaintiff can
correct the defect" (quotations and citations omitted)).

III.    Preliminary Injunction

        "[I]njunctive relief is an extraordinary remedy that may only be
awarded upon a clear showing that the plaintiff is entitled to such relief." Winter
v. Natural Res. Def. Council, Inc., 129 S. Ct. 365, 376 (2008). To obtain a
preliminary injunction, the moving party must demonstrate "that he is likely to
succeed on the merits, that he is likely to suffer irreparable harm in the absence of

preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Id. at 365 (citing Munaf v. Geren, 128 S. Ct. 2207, 2218–19 (2008); Amoco Prod. Co. v. Gambell, 480 U.S. 531, 542 (1987); Weinberger v. Romero-Barcelo, 456 U.S. 305, 311–12 (1982)); see also Stormans, Inc. v. Selecky, 586 F.3d. 1109, 1126–27 (9th Cir. 2009) (applying heightened standard mandated by Winter). "'[S]erious questions going to the merits' and a hardship balance that tips sharply towards the plaintiff can [also] support issuance of an injunction, so long as the plaintiff also shows a likelihood of irreparable injury and that the injunction is in the public interest." Alliance for Wild Rockies v. Cottrell, 622 F.3d 1045, 1053 (9th Cir. 2010). A district court has great discretion in determining whether to grant or to deny a temporary restraining order or a preliminary injunction. See Wildwest Inst. v. Bull, 472 F.3d 587, 589–90 (9th Cir. 2006); see also Lopez v. Heckler, 713 F.2d 1432, 1435 (9th Cir. 1983) ("At one end of the continuum, the moving party is required to show both a probability of success on the merits and the possibility of irreparable injury. At the other end of the continuum, the moving party must demonstrate that serious legal questions are raised and that the balance of hardships tips sharply in its favor.") (internal citations omitted).

<u>DISCUSSION</u>

Plaintiffs' Motion for Summary Judgment addresses only the first count of the Complaint.  (Ps' Mot. at 1.)  Similarly, Plaintiffs' Injunction Motion "addresses only Plaintiffs' likelihood of success on their IDEA claims" and does not address the other counts of the Complaint.  (Ps' Injunction Mot. at 13 n.3.) Defendant's Motion, on the other hand, addresses each count of the Complaint.

I.      <u>Count I: Violation of the IDEA</u>

Both parties move for summary judgment on count one of the Complaint.  The Court finds that both motions are premature.

A.      <u>Statutory Interpretation</u>

The statutory provision at issue in this count of the Complaint provides as follows:

(a) In general
A State is eligible for assistance under this subchapter for a fiscal year if the State submits a plan that provides assurances to the Secretary that the State has in effect policies and procedures to ensure that the State meets each of the following conditions:

(1) Free appropriate public education

(A) In general

A free appropriate public education is available to all children with disabilities residing in the State between the ages of 3 and 21, inclusive, including children with

14

disabilities who have been suspended or expelled from
school.

(B) Limitation

The obligation to make a free appropriate public
education available to all children with disabilities does
not apply with respect to children--

(i) aged 3 through 5 and 18 through 21 in a State to
the extent that its application to those children
would be inconsistent with State law or practice, or
the order of any court, respecting the provision of
public education to children in those age ranges.

20 U.S.C. § 1412(a).  As outlined, this Court has held that in general federal

eligibility for special education and related services ends on a student's twenty-

second birthday per this subsection.  B.T. I, 637 F. Supp. 2d at 863–64 n.9.

According to § 1412(a)(1)(B)(i), however, a state may lower this age limit to as

little as eighteen, provided it is done consistent with "the provision of public

education" made available to all students of that age.  Id. (emphasis added).  What

Congress meant by "public education" in this age governing provision of the IDEA

is the precise question raised in this count of the Complaint.  Specifically, this

Court is here called upon to determine whether Hawaii's adult education programs

qualify as "public education" such that Defendant cannot rely upon Act 163 as a

justification for denying special education students aged twenty and twenty-one a FAPE.

To determine, however, whether the adult education programs qualify as "public education," this Court must first determine what Congress meant by "public education" as used in 20 U.S.C. § 1412(a)(1)(B)(i).

Congress did not define "public education" in the IDEA, and there is a complete dearth of authority interpreting this provision. "Without a definition . . . in the statute or any binding precedent, [a court] must 'find that interpretation which can most fairly be said to be imbedded in the statute, in the sense of being most harmonious with its scheme and with the general purposes that congress manifested." N.D. v. Haw. Dep't of Educ., 600 F.3d 1104, 1114 (9th Cir. 2010) (quoting United States v. Alghazouli, 600 F.3d 1104, 1184 (9th Cir. 2008)).

The Court finds that neither interpretation proffered by the parties is particularly persuasive. Plaintiffs simply assume in their papers that the adult education programs qualify as "public education." (Ps' Mot. at 11 ("[I]t is undisputed that the DOE has a practice of providing a public education to general education students over the age of twenty, just as it did at the time of this Court's opinions in B.T.").). As the Court expressed at the Hearing, however, Plaintiffs assume to much. Under this interpretation Congress would have had to intend for

a state to terminate <u>all</u> educational services for students beyond the age restriction established by the state—in this case, the age of twenty—until a student attains the age of twenty-two. This construction leads to illogical results. To lower the age limit per this subsection, Hawaii, for instance, could offer adult education programs to students from the age of eighteen to twenty, but would have to stop the programs for students aged twenty and twenty-one, before recommencing them for students aged twenty-two and older.[2] Further, not only would adult education programs be affected, but any public education service would have to be terminated for students aged twenty and twenty-one as well. The Court cannot conclude that Congress intended for the age governing provision to have this effect on all of a state's education services.[3]

---

[2] Alternatively, Hawaii could simply abandon its adult education programs for students until they turn twenty-two. This result is inconsistent with the statutory scheme established by the IDEA as discussed infra.

[3] Indeed, one open question would be the effect a public university had on a state's decision to change the upper age limit at which a special education student is entitled to a FAPE. By Plaintiffs' logic, the existence of a public university that provides an education to students aged twenty and twenty-one (such as the University of Hawaii) might suffice to trigger the IDEA's requirement that special education students be provided a FAPE until the age of twenty-two. Plaintiffs argued at the Hearing that in contrast to the adult education programs, public universities have acceptance standards and are not free. In making this argument, however, Plaintiffs necessarily concede that there must be some sort of implicit restriction on the term "public education."

Defendants, on the other hand, argue that the IDEA by its own terms is limited only to "Hawaii's preschools, elementary, and secondary schools." (D's Opp'n at 7.) This construction is also unpersuasive. A state could simply pass a law terminating all secondary education at the age of eighteen, but transfer general education students who would have otherwise "aged out" to an "adult education" program to continue their studies and ultimately receive a high school diploma or its functional equivalent. This would be grossly inconsistent with the underlying purposes of the IDEA. Indeed, as the Ninth Circuit recently discussed:

> Congress has been very clear about stating its overarching goals in relation to the IDEA. Part of Congress's concern was that "children were excluded entirely from the public school system and from being educated with their peers." 20 U.S.C. § 1400(c)(2)(B) (2006). To alleviate that, disabled children were to have "access to the general education curriculum in the regular classroom, to the maximum extent possible." § 1400(c)(5)(A). We extract from the statute that the overarching goal of the IDEA is to prevent the isolation and exclusion of disabled children, and provide them with a classroom setting as similar to non-disabled children as possible.

N.D., 600 F.3d at 1115. Defendant's proposed construction would create a loophole inconsistent with Congress's intent "to prevent the isolation and exclusion of disabled children, and provide them with a classroom setting as similar to non-disabled children as possible." Id. The Court therefore rejects Defendant's proposed construction as well.

18

Instead, the Court begins its interpretation of the provision with an analysis of its plain terms. While the dictionary definition of "public education" is not helpful, the Court notes that in 20 U.S.C. § 1412(a)(1) the term "public education" appears five times. In each instance, with the exception of the subsection at issue, it appears as a part of the phrase "free appropriate public education." See id. The IDEA defines "free appropriate public education" as special education and related services that . . . include an appropriate preschool, elementary school, or secondary school education in the state involved." 20 U.S.C. § 1401(9)(C) (emphasis added). This suggests to the Court that the term "public education" relates closely to "secondary school education" as the term "free appropriate public education" is defined, in part, as "secondary school education."

The Court is cognizant, however, of the purposes underlying the IDEA. Construing "public education" to mean simply a "secondary education" could run afoul of the purposes behind the IDEA as discussed.[4] Instead, Congress, likely aware that a state might try to unfairly constrict the age range in which a special education student is entitled to a FAPE, deliberately used the unqualified

_____

[4] Indeed, as noted, this is Defendant's proposed construction. (D's Opp'n at 7.)

19

term "public education" in the age governing provision rather than simply restating

"free appropriate public education."  This ensured Congress's "overarching goal of

the IDEA[,] to prevent the isolation and exclusion of disabled children" was not

frustrated based solely on a state's rigid definition of "secondary education."  See

N.D., 600 F.3d at 1115.  Accordingly, although "public education" relates closely

to "secondary school education," Congress intended the term to encompass more to

ensure states would not deprive special education students a FAPE by terminating

"secondary education" at the age of eighteen but providing a functional equivalent

to general education students under the guise of a program with a different name.

   The Court therefore concludes that the term "public education" as

used in the age governing provision of the IDEA, 20 U.S.C. § 1412(a)(1)(B)(i),

means an educational program which in practice provides a secondary education or

its functional equivalent to students.  Importantly, it does not mean any and all

educational opportunities provided by a state to students.  Nor, however, is it

limited to a state's definition of "secondary education."

   With this definition of "public education" in hand, the age operating

provision of the IDEA is much clearer.  To determine whether a state has validly

changed the age range in which a special education student is entitled to a FAPE

per the age governing provision, a court must look at state law or practice and determine whether there are any educational programs which provide the functional equivalent of a secondary education to non-disabled students with regularity.  See 20 U.S.C. § 1412(a)(1)(B)(i).  If there are no such programs, the state has validly changed the age range.  If such programs exist, the state has violated the IDEA and will be precluded from changing the age range.

Applying these principles to the case before it, the Court finds that to prevail on their IDEA claim, Plaintiffs must demonstrate: (1) the adult education programs provide the functional equivalent of a high school diploma and (2) that students are "ushered" with regularity from a general education to adult education programs.[5]

_____

[5] This latter requirement stems from the age operating provision's requirement that a court consider, in part, a state's "practice."  20 U.S.C. § 1412(a)(1)(B)(i).  If students are not shuffled with regularity between high school and adult education programs, the state cannot be said to have a regular "practice" of providing general education students beyond the age of twenty with a high school diploma or its functional equivalent.  See B.T., 637 F. Supp. 2d at 865–66 (focusing on the "nature of the practice of Hawaii's schools towards students 20 years or older" and finding that "Defendant has approved every single overage general education student and barred almost every single overage special education student").

B.    Motions for Summary Judgment

Plaintiffs' Motion for Summary Judgment with respect to count one of the Complaint is based upon relatively few undisputed facts:

- The DOE provides adult education programs, the goal of which is to "ensure that the graduates are prepared for transitions to post secondary education and have the necessary skills to become productive members of Hawaii's economic workforce." ("PSCSF," Doc. # 58, Ex. A; id. Ex. B at 19:18–21:3, 67:9–20; id. Ex. F.)

- As of the effective date of Act 163, 646 students between the ages of twenty-one and twenty-two were enrolled in adult education programs. (Id. Ex. C at 5:19–23.) Specifically, 125 were in the GED program, 231 were in the CB diploma program. The remainder were in an English as a Second Language program or remedial programs. (Id.)

- Act 163 had no impact on the adult education programs. (Id. Ex. B at 15:20–16:1.)

- There are minimal qualifications required to participate in the GED or CB programs.[6] (Id. Ex. B at 24:10–25:2, 25:22–26:17, 31:8–33:19; id. Ex. E.)

- Despite some nominal fees, the DOE's adult education programs is nearly entirely funded by state and federal money. (See id. Ex. B at 38:6–39:12, 42:6–25.)

- On a "case-by-case" basis, Guidance counselors advise students when it is "appropriate" to continue their education in the DOE's adult education programs. (Id. Ex. C at 18:11–20:24.)

- There are no IDEA or special education services available in the adult education program. (Id. Ex. B at 62:2–19, 65:18–25.)

Plaintiff argues that these facts alone are sufficient to warrant judgment in their favor on count one of the Complaint. The Court disagrees.

The Court has been clear throughout these proceedings. To prevail on count one of the Complaint, Plaintiffs will have to demonstrate that the DOE uses Act 163 as a means of denying special education students a FAPE beyond the age

---

[6] The DOE does administer screening tests when a student applies, but no student is prevented from participating in the programs because of a low score. Further, those with lower than optimal scores have the option of entering a remedial class. (PCSF Ex. B at 24:10–25:2, 25:22–26:17, 31:8–33:19; id. Ex. E.)

of twenty while simultaneously engaging in a practice of providing general education students of the same age an adult education as a means of completing their secondary education. The Court has qualified this statement by noting that the shuffling of general education students from secondary schools to adult education programs must be done with "regularity." (July Order at 8.)

In B.T., for instance, Defendant's practice was "to require overage general education and special education eligible students to obtain the permission of the principal to attend school." 637 F. Supp. 2d at 864. The evidence before the Court demonstrated that collectively the principals had "approved every single overage general education student and barred almost every single overage special education student." Id. at 865. As a result, "a picture of blatant discrimination [emerged] in violation of the IDEA" and B.T. was entitled to summary judgment. Id. Plaintiffs have not made a similar showing here.

Plaintiffs' primary shortcoming is that the number of students aged twenty-one and twenty-two enrolled in adult education programs without any context does not illustrate that Defendant "ushers" general education students into adult education programs with regularity. The number 646 may or may not statistically relevant. If thousands upon thousands of general education students age out every year per Act 163 and only a few hundred pursue adult education, it

cannot be said that Defendant is placing general education students into adult

education programs with regularity as a means of continuing their secondary

education.  Conversely, if only a few hundred general education students age out

per Act 163 on a yearly bases, the number 646 becomes much more statistically

relevant.

Further, as Defendant points out, Hawaii makes its adult education

programs available to the public generally.  The number 646 may include students

who dropped out of high school when they were sixteen, moved to Hawaii from

another state or country after turning twenty, or perhaps have been in adult

education from the time they were eighteen or nineteen.[7]  (D's Opp'n at 6.)  The

number 646, by itself, is simply not probative of whether Defendant is ushering

students who age out per Act 163 into adult education with regularity.

In Reply, Plaintiffs argue that the "IDEA's age eligibility rule, 20

U.S.C. § 1412(a)(1)(b), in no way depends on the length of that student's residence

in the state in which he or she seeks IDEA services or on whether that student was

_____

[7] Plaintiffs complain in their Reply that the "DOE could easily determine
from its records precisely how many of these 646 students were not previously
enrolled in a DOE high school.  The fact that it has chosen not to . . . speaks for
itself." (Ps' reply at 4 n.2.)  However, this is the <u>Plaintiffs</u>' case to prosecute.  It
was <u>Plaintiffs</u>' obligation to seek this information in discovery.  Defendant is under
no obligation to volunteer this information or help Plaintiffs prosecute this action.

previously enrolled in that state's public education system." (Reply at 5.) Plaintiffs misconstrue Defendant's argument. The larger point is that many of the 646 students currently enrolled in adult education may not be general education students who would have "aged out" pursuant to Act 163 but were purportedly ushered into adult education programs. This alone is sufficient grounds to deny Plaintiffs' Motion for Summary Judgment.

The Court also finds that neither Plaintiffs nor Defendant have provided undisputed facts which describe the qualitative nature of the education students receive in the adult education programs.

Plaintiffs point out that Hawaii state law requires Defendant, by statute, to establish a "program of <u>secondary education</u> for those <u>adults</u> who, in youth, left school or for some reason had their education curtailed and who now desire to continue their education." Haw. Rev. Stat. § 302A-433(3). Plaintiffs contend that the DOE has provided no evidence that it operates any program to provide secondary education for adults other than the adult education programs at the heart of this litigation which the DOE now claims are distinct from secondary education. (Ps' Opp'n at 18–19.) Defendant does not refute this point. Moreover, Plaintiffs have provided this Court evidence which suggests that Defendant, at a

minimum, advertises to the public that its adult education programs provide a high school diploma or its functional equivalent. (See Doc. # 64-2.)

Defendants, however, provide arguments and evidence to this Court which suggests that the education which students receive in the adult education programs are completely distinct. (D's Mot. at 14–23.) For instance, Hawaii Revised Statutes § 317-1 defines secondary school students as those in grades seven to twelve. See Haw. Rev. Stat. § 317-1. By contrast, there are no grade levels in the adult education system. ("Naguwa Decl.," Doc. # 61-3, ¶ 6.) Defendant has also provided evidence which suggests that the courses provided in adult education programs "do not provide students with credits that can be applied towards a high school diploma or college credits." (Id. ¶ 11.) Moreover, credits achieved in high school cannot be transferred to adult education programs.[8] (Doc. # 61-9 at 21:12–29:24; 30:17–31:6.)

Absent more facts, the Court cannot conclude that either party is entitled to summary judgment on their IDEA claim. Plaintiffs' evidence is insufficient with respect to whether general education students are being

_____

[8] Defendant also presents evidence which suggests that the military views adult education diplomas as distinct from high school diplomas and that the rigors associated with obtaining a high school diploma are different from those associated with obtaining an adult education program diploma. (D's Mot. at 19.)

intentionally shuffled into adult education programs with regularity.[9]  With respect

to the type of education provided in the adult education classes, it appears to the

Court on the record before it that there may exist a dispute of material fact.

Plaintiff has provided evidence which demonstrates, at least superficially, that the

adult education programs are effectively the equivalent of high school education.

Defendants, on the other hand, have proffered evidence which suggests they are

distinct.

　　　　　In sum, the Court simply cannot grant either motion based on the facts

before it.  As the Court alluded at the Hearing, however, further discovery may

---

[9] Plaintiffs' remaining arguments are not persuasive.  For instance, even
assuming guidance counselors advise students on a "case-by-case" basis to
continue their studies in adult education programs, if it is not done with regularity,
Plaintiffs cannot demonstrate that there has been a violation of the IDEA.
Moreover, the Court is skeptical that a guidance counselor suggesting adult
education programs as one of many possible "next-steps" to a student about to age
out per Act 163 qualifies as actively placing general education students into adult
education programs in violation of the IDEA.  Indeed, it appears to the Court that
the evidence demonstrates that guidance counselors discuss a wide variety of
options with students about to age out per Act 163.  As discovery revealed:

> The DOE . . . counsels every student at the high school [about]
> wherever they [are] going.  If it is to post secondary, if it's to a job, if
> it's to a trade school, if it's to a community school, wherever they
> go . . . even without a diploma, they're counseled.  And . . . the
> schools help [students] find their niche.  That has not changed in
> DOE.

(PCSF, Ex. C at 18:11–20:24.)

illustrate that Defendant <u>regularly</u> encourages general education students who would otherwise "age out" per Act 163 to pursue continued education in adult education courses.  Further discovery may also illustrate the extent to which the adult education programs and Hawaii's secondary education program are similar in nature.  Accordingly, the Court **DENIES WITHOUT PREJUDICE** both Plaintiffs' Motion for Summary Judgment and Defendant's Motion with respect to count one.

II.     <u>Counts II and III: Violations of Title II of the ADA and the Rehab Act</u>

In count two of the Complaint Plaintiffs allege that Defendant violated Title II of the ADA by allowing nondisabled adults to continue their "public education" through the adult education programs beyond the age of twenty while simultaneously denying special education students a similar opportunity.  (Compl. ¶¶ 37–41.)  Plaintiffs make the same factual allegations in their third claim for relief where they allege Defendant violated Section 504 of the Rehab Act.  (<u>Id.</u> ¶¶ 42–46)

In order to state a claim under Title II of the ADA, a plaintiff must allege:

> (1) he 'is an individual with a disability;' (2) he 'is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;' (3) he 'was either excluded from participation

in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;' and (4) 'such exclusion, denial of benefits, or discrimination was by reason of [his] disability.'

O'Guinn v. Lovelock Correctional Ctr., 502 F.3d 1056, 1060 (9th Cir. 2007)

(quoting McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004)).

Similarly, to state a claim under the Rehab Act, a plaintiff must allege "(1) he is an

individual with a disability; (2) he is otherwise qualified to receive the benefit; (3)

he was denied the benefits of the program solely by reason of his disability; and (4)

the program receives federal financial assistance." Duvall v. Cnty. of Kitsap, 260

F.3d 1124, 1135 (9th Cir. 2001); see also O'Guinn, 502 F.3d at 1060 (same).[10]

Here, Defendant "concedes that Plaintiffs are disabled and that the

[adult education programs] receive federal funds and/or is a public entity." (D's

Opp'n at 28.) Defendant disputes, however, that Plaintiffs have properly pled the

remaining prima facie requirements. (Id. at 29.) The Court disagrees.

The first of the remaining requirements, whether Plaintiffs are

"otherwise qualified" for the adult education programs or a public education, is

---

[10] Given the close similarities between alleging a cause of action per § 504 of the Rehab Act and Title II of the ADA, an analysis of Plaintiffs' Complaint with respect to these two counts can be combined. See Wong v. Regents University of Cal., 192 F.3d 807, 816 (9th Cir. 1999).

plainly alleged in the Complaint. (Compl. ¶ 40 ( "Plaintiffs, and the members of the Class, are qualified individuals with disabilities.").) Moreover, the DOE's adult education programs have no meaningful prerequisites for admission. (PCSF, Ex. B at 24:10–25:2, 25:22–26:17, 31:8–33:19; id. Ex. E.) Defendant proffers no argument on this point aside from baldly stating it has been insufficiently pled.

The second of the remaining pleading requirements, whether Plaintiffs have been denied benefits of the program based solely by reason of their disability, has also been adequately pled. As the Complaint states:

> Plaintiffs, and the members of the Class, have been excluded from, denied the benefits of, or otherwise discriminated against with respect to the DOE's provision of public education to those who reach the age of twenty on or before the first instructional day of the school year. A general education student of the same age may continue his public education through Hawai'i's adult education program. Plaintiffs and the members of the Class do not have this option, as the adult education program is not equipped to educate all students who reach the age of twenty on or before the first instructional day of the school year through the age of twenty-two whose disabilities previously qualified them for a FAPE under the IDEA.

(Id. ¶ 41.) The Court finds this more than suffices as an allegation that Plaintiffs have been denied benefits of the program based solely by reason of their disability.

For summary judgment purposes under these Acts, a plaintiff "bears the initial burden of producing evidence both that a reasonable accommodation exists and that this accommodation would enable [plaintiff] to meet the educational

institution's eligibility requirements."  Wong, 192 F.3d 807, 816–17 (internal

quotation marks omitted).  As discussed, Plaintiffs are plainly qualified for the

adult education programs given their virtually nonexistent prerequisites for

admission.  (PCSF, Ex. B at 24:10–25:2, 25:22–26:17, 31:8–33:19; id. Ex. E.)

What is still unclear to the Court, however, is whether Plaintiffs have demonstrated

there exists a reasonable accommodation such that Plaintiffs will derive a

meaningful benefit from continued education.

       "A public entity must 'make reasonable modifications in policies,

practices, or procedures when the modifications are necessary to avoid

discrimination on the basis of disability."  Wong, 192 F.3d at 818 (quoting Zukle

v. Regents University of Cal, 166 F.3d 1041, 1046 (9th Cir. 1999).  These Acts,

however, do not require an academic institution "to make fundamental or

substantial modifications to its programs or standards."  Id. (citing Se. Comm.

Coll. v Davis, 422 U.S. 397, 413 (1979).  Indeed, "[b]ecause the issue of

reasonableness depends on the individual circumstances of each case, this

determination requires a fact-specific, individualized analysis of the disabled

individual's circumstances and the accommodations that might allow him to meet

the program's standards."  Id. (citing Crowder v. Kitagawa, 81 F.3d 1480, 1486

(9th Cir. 1996)).

Plaintiffs argue that they have "proven" a reasonable accommodation exists. Specifically, they contend that "the continuation of their FAPEs under the IDEA until they reach the age of 22" is a reasonable accommodation. (Ps' Opp'n at 22.) The Court disagrees. In <u>B.T.</u>, B.T. claimed that Defendant violated both the IDEA and Section 504 of the Rehab Act. 637 F. Supp. 2d at 865. The Court agreed with B.T., concluding that Defendant's practice of approving "every single overage general education student" while barring "almost every single overage special education student without the commencement of legal action," resulted in a violation of Section 504 of the Rehab Act. <u>Id.</u> ("What emerges is a picture of blatant discrimination in violation of the IDEA <u>and Section 504 of the Rehabilitation Act of 1973.</u>" (emphasis added)).

Here, Plaintiffs have not yet made a similar showing. Considering the facts and circumstances of this case as well as the close relationship between these claims and Plaintiffs' IDEA claim, the Court finds it is not automatically "reasonable" per Title II and the Rehab Act for the DOE to continue to provide FAPEs to each of the Plaintiffs as Plaintiffs suggest.[11] Instead, to show that continuing to provide a FAPE to Plaintiffs is a "reasonable accommodation" per

---

[11] This is especially so given the large costs related to providing a FAPE to Plaintiffs for two additional years.

the Acts, Plaintiffs first must demonstrate a pattern which suggests Defendant is discriminating against special education students by actively moving students who would otherwise "age out" per Act 163 from secondary school to adult education. See B.T., 637 F. Supp. 2d at 865. Plaintiffs must also demonstrate, as discussed supra, that the adult education programs provide the functional equivalent of a high school education to adult education students. As discussed, Plaintiffs have not yet proffered evidence which suggests Defendant is engaging in this sort of conduct. As with count one of the Complaint, however, further discovery may reveal otherwise. Defendant's Motion is therefore premature.

Accordingly, the Court **DENIES WITHOUT PREJUDICE** Defendant's Motion with respect to counts two and three of the Complaint.[12]

III.    Count IV: Judicial Estoppel

In Plaintiffs' fourth claim for relief, they allege that Defendant should be estopped from asserting that a student's special education and related services end at age twenty because Defendant allegedly misrepresented to the United States

---

[12] Plaintiffs also complain in Opposition that they allege a "disparate impact" claim under the ADA and RA. (Ps' Opp'n at 25–26.) The Court disagrees. It has reviewed the Complaint carefully and Plaintiffs plainly have not alleged a disparate impact claim under either statute. A Court's review under a Motion to Dismiss is limited to the contents of the Complaint. Clegg v. Cult Awareness Network, 18 F.3d 752, 754 (9th Cir. 1994). Plaintiffs may not now add claims in its Opposition.

Department of Education that special education and related services are provided through age twenty-one.  (See Compl. ¶¶ 47–50.)

In response to this allegation, Defendant has proffered deposition testimony which establishes that Defendant made clear to the United States Department of Education that Hawaii limits the provision of FAPE to children in public K-12 schools until age twenty.  (See Doc. # 61-13, 62:19–63:17; 66:3–67:6.)  Plaintiffs present no evidence to  contradict this assertion, and, indeed, seemingly concede that the United States Department of Education was aware of this limitation.  (Ps' Opp'n at 28.)  Plaintiffs nonetheless contend that judicial estoppel should apply because Defendant was required to "provide reasonable opportunities for the participation by . . . representatives of the class of individuals affected . . . and other interested individuals in planning for the use of the IDEA funds and to publish its plan for the funds with an opportunity for public comment."  (Id.)  The theory seems to be that Defendant effectively misrepresented on a form submitted to the United States Department of Education that it provided a FAPE to special education students until their twenty-second birthday.  As a result, according to Plaintiffs, affected members of the public were denied the opportunity to comment on the change in law.

Judicial estoppel is "the principle that a litigant may not benefit by making directly contradictory arguments regarding the same dispute in different tribunals." Poweragent v. Electronic Data Sys., 358 F.3d 1187 (9th Cir. 2004). It precludes a party from gaining an advantage in one case by taking a particular position, and then "taking a clearly inconsistent position in either the same litigation or a different case concerning the same dispute." Id. (citing Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782–83 (9th Cir. 2001).

Even assuming, as Plaintiffs suggest, that judicial estoppel is not limited to cases where inconsistent positions are taken in judicial proceedings, the Court nonetheless concludes that the DOE made no misrepresentation which would justify estopping it from denying Plaintiffs a FAPE beyond the age of twenty. The document in which Plaintiffs claim Defendant misrepresented the age at which special education students "age out" is a state application for federal funding for the Federal Fiscal Year of 2010. (Doc. # 64-8, at 1.) The Federal Government provides each state with this form which the state must fill out to receive federal funding. (See id. at 1–2.) Section II of the form contains five rows with enumerated assurances that a state must give before it is entitled to federal funding. (Id. at 3.) A state must either mark "yes" or "no" beside each assurance; there is no

space in this part of the form for explanation or qualification. One such assurance

listed in section II provides as follows:

> A free appropriate public education is available to all children with
> disabilities residing in the State between the ages of 3 and 21,
> inclusive, including children with disabilities who have been
> suspended or expelled, in accordance with 20 U.S.C. 1412(a)(1); 34
> C.F.R. §§ 300.109–300.110.

(Id.) Defendant marked "yes" next to this assurance. (Id.) This is the

misrepresentation which Plaintiffs suggest should estop Defendant from denying

them a FAPE beyond the age of twenty. The Court disagrees.

As a preliminary matter, the form did not provide Defendant with the

opportunity to explain that it had lowered the age limit as permitted by the IDEA in

section II of the form. Defendant either had either to check "yes" or not receive

federal funding. That the form does not contemplate a state's statutory right to

lower the age limit is not Defendant's fault.[13] In any event, the last clause of this

assurance states "in accordance with 20 U.S.C. 1412(a)(1)." (Id. (emphasis

added).) Included within this subsection is the age governing clause at issue in the

instant litigation. Specifically 20 U.S.C. § 1412(a)(1)(B)(ii) provides that "[t]he

obligation to make [FAPE] available to all children with disabilities does not apply

---

[13] Moreover, as will be discussed, Defendant explained elsewhere in the
form that a FAPE was denied beyond the age of twenty.

with respect to children . . . aged 3 through 5 and 18 through 21 in a State to the

extent that its application to those children would be inconsistent with State law or

practice . . . ."  Accordingly, Defendant did not make a misrepresentation, it

accurately represented that it provides FAPEs to special education children in

accordance with 20 U.S.C. § 1412(a)(1) which by default establishes an age range

of three to twenty-one but also provides that a state may constrict the age range to a

minimum of five to eighteen.  Hawaii's purported decision not to provide any

student (including special education students) a secondary education beyond the

age of twenty is therefore consistent with this assurance.  Accordingly, by checking

"yes" next to this assurance, Defendant did not make a misrepresentation.

Further, in section IV of the form, Defendant explicitly states that

FAPEs are not provided beyond the age of twenty.  Specifically, section IV

provides:

> State requirements include eligibility criteria to implement the IDEA-
> 2004 eligibility categories.  The following may be construed as
> providing State-imposed mandates that are not required by IDEA-
> 2004:
> • General eligibility criteria for the occurrence of birthdays for
>   children at age three and age twenty to implement the
>   applicable age ranges in the State of Hawaii.

(Id. at 5.)  Although not a model of clarity, Defendant here fully discloses that

general eligibility criteria are contingent upon a student being between the ages of

three and twenty.  Without a misrepresentation on the form, and in light of this

disclosure, the Court finds the doctrine of judicial estoppel does not require

Defendant to provide Plaintiffs a FAPE beyond the age of twenty.

Accordingly, the Court **GRANTS** Defendant's Motion with respect to

count four of the Complaint.

IV.    Preliminary Injunction

As discussed, Plaintiffs seek a Preliminary Injunction as to count one

of the Complaint only.  (Ps' Injunction Motion at 13 n.3.)  Plaintiffs posit that the

same arguments and evidence proffered in support of their Motion for Summary

Judgment also demonstrate that they are likely to succeed the merits.  (Id. at

13–16.)  Specifically, Plaintiffs contend that they have demonstrated a likelihood

of success on the merits because over six hundred people aged twenty-one and

twenty-two are enrolled in adult education and because in "appropriate" cases

guidance counselors will encourage students to continue their studies in the adult

education programs.  (Id.)  The Court, however, has already considered these

arguments and rejected them.  As outlined supra, Plaintiffs have failed to show that

Defendant transfers general education students who would otherwise "age out" per

Act 163 from secondary education to adult education programs with any sort of

regularity.  Similarly, Plaintiffs have not demonstrated a likelihood of success in

showing that the education offered by adult education programs the functional equivalent of the education provided in Hawaii's secondary schools. Without more, the Court cannot conclude that Plaintiffs have satisfied their heavy burden with respect to their Motion for a Preliminary Injunction. Specifically, Plaintiffs have not demonstrated a likelihood of success on the merits.

Accordingly, the Court **DENIES WITHOUT PREJUDICE** Plaintiffs' Injunction Motion. Plaintiffs are again invited to refile a request for a preliminary injunction once their theories of liability are supported by evidence.

CONCLUSION

For these reasons the Court: **DENIES WITHOUT PREJUDICE** Plaintiffs' Motion for Summary Judgment (Doc. # 57); **GRANTS IN PART AND DENIES IN PART WITHOUT PREJUDICE** Defendant's Motion to Dismiss, or in the alternative, for Summary Judgment (Doc. # 60); and **DENIES WITHOUT PREJUDICE** Plaintiffs' Motion for a Preliminary Injunction (Doc.

# 59).  The parties are hereby directed to report to United States Magistrate Judge

Kevin S.C. Chang for an amended Rule 16 scheduling order.

      IT IS SO ORDERED.

      DATED:  Honolulu, Hawaii, September 19, 2011.



      _____
      David Alan Ezra
      United States District Judge

R.P.-K, et al.. v. Department of Education, Civ. No. 10-00436 DAE-KSC;
ORDER: (1)DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
WITHOUT PREJUDICE; (2) GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR
SUMMARY JUDGMENT; AND (3)  DENYING PLAINTIFFS' RENEWED
MOTION FOR A PRELIMINARY INJUNCTION WITHOUT PREJUDICE