PAUL ALSTON            1126
JASON H. KIM           7128
ALSTON HUNT FLOYD & ING
1001 Bishop Street, Suite 1800
Honolulu, Hawai`i  96813
Telephone:  (808) 524-1800
Facsimile:  (808) 524-4591
E-mail:     palston@ahfi.com
            jkim@ahfi.com

MATTHEW C. BASSETT     6443
HAWAI'I DISABILITY RIGHTS CENTER
1132 Bishop Street, Suite 2102
Honolulu, Hawai'i 96813
Telephone:  (808) 949-2922
Facsimile:  (808) 949-2928
E-mail:     mattbassettesq@gmail.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| R.P.-K., through his parent C.K., R.T.D., through his parents R.D. and M.D., B.P., through her parent M.P., and C.B., through his parent N.B., for themselves and on behalf of a class of those similarly situated, and the HAWAII DISABILITY RIGHTS CENTER, in a representative capacity on behalf of its clients and all others similarly situated,<br><br>        Plaintiffs,<br><br>  vs.<br><br>DEPARTMENT OF EDUCATION, State of Hawai'i, | CIVIL NO. CV10 00436 DAE-KSC (Other Civil Action)<br><br>**PLAINTIFFS' TRIAL BRIEF;** CERTIFICATE OF SERVICE<br><br>TRIAL:  February 28, 2012<br>TIME:   9:00 a.m.<br>JUDGE:  David A. Ezra |

|               |
|---------------|
| Defendants.   |

# PLAINTIFFS' TRIAL BRIEF

Plaintiffs submit this trial brief pursuant to Local Rule 16.7 of the Local Rules of the United States District Court for the District of Hawaiʻi.

## I.  INTRODUCTION

This is a class action by Plaintiffs and class representatives the Hawaii Disability Rights Center ("HDRC"), R.P.-K. through his parent C.K., and R.T.D. through his parents R.D. and M.D. for permanent injunctive and declaratory relief under the Individuals With Disabilities Education Act ("IDEA"), Section 504 of the Rehabilitation Act ("RA"), and Title II of the American's With Disabilities Act ("ADA").  Plaintiffs seek to enforce the class members' rights under the IDEA to receive a free appropriate public education ("FAPE") until they reach the age of 22 and the class members' right to be free of discrimination on account of their disabilities and to reasonable accommodations for their disabilities under the RA and ADA.

The IDEA requires Defendant the Department of Education of the State of Hawaiʻi ("DOE") to provide members of the class a free appropriate public education ("FAPE") until they reach the age of 22, unless doing so would be

"inconsistent with state law or practice ... respecting the provision of public education to children in those age ranges." 20 U.S.C. § 1412(a)(1)(B).

The State of Hawai'i attempted to limit eligibility for services under the IDEA by enacting Act 163 in 2010 (codified as HRS § 302A-1134(c)). Act 163 purports to terminate eligibility for education in the "public schools" for students who are twenty years of age or over on the first day of the school year.

As set forth below, however, the evidence at trial will show that the DOE has a practice of allowing students between the ages of 20 and 22 to continue their public, secondary education in the Community Schools for Adults despite the passage of Act 163. Indeed, hundreds of students in that age range are currently working towards a high school equivalency diploma in the DOE's Community Schools for Adults.

The evidence at trial will also show that the class members are entitled to a continuation of FAPEs through the age of 22 to avoid discriminating against them as compared to similarly-situated non-disabled individuals and as a reasonable accommodation under the ADA and RA.

## II.    FACTS

### A.    The Parties

#### 1.    The HDRC

The HDRC is a Hawai'i non-profit corporation based in Honolulu, Hawai'i. Its mission – defined by federal law (29 U.S.C. § 794e and 42 U.S.C.

§§ 10801 *et seq.* and 15001 *et seq.*) and state law (H.R.S. § 333F-8.5) – is to defend and enforce the legal rights of people with disabilities.  It serves mentally ill and disabled persons throughout the State.  The Protection and Advocacy Systems established in each State by the federal laws cited above have the authority to pursue legal, administrative, and other appropriate remedies or approaches to ensure the protection of, and advocacy for, the rights of individuals within the State who are disabled or mentally ill, pursuant to 42 U.S.C. § 10805, 42 U.S.C. § 15043, and 29 U.S.C. § 794e.

The HDRC is pursuing this action to protect and advocate for the rights and interests of "individuals with mental illness," individuals with a "developmental disability," and other individuals with disabilities, as those terms are defined in 42 U.S.C. §§ 10802 and 15002 and 29 U.S.C. § 794e.  These individuals are the HDRC's constituents.  These constituents have a significant mental illness, developmental disability, or other impairment that substantially limits one or more major life activities, including personal care, working, and sleeping.  They are therefore individuals with disabilities for purposes of the ADA, 42 U.S.C. §§ 12101 *et seq.*, and the RA, 29 U.S.C. § 501 *et seq.*

The HDRC has standing to maintain this action on behalf of its constituents who are members of the class certified in this action and their parents. An organization may sue on behalf of its members if:

> (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343, 97 S. Ct. 2434, 2441 (1977).

Here, the HDRC's constituents include members of the proposed class who would have standing to sue in their own right. Although the HDRC does not have "members," its constituents are the "functional equivalent of members for purposes of associational standing." *Oregon Advocacy Center v. Mink*, 322 F.3d 1101, 1110 (9th Cir. 2003) (holding that Oregon's Protection and Advocacy organization had standing to sue on behalf of its constituents). The HDRC's constituents have many of the indicia of membership, including representation on the HDRC's Board of Directors and PAIMI Advisory Counsel and the right to exercise a grievance procedure to assure that they have access to the Protection and Advocacy system, pursuant to 29 U.S.C. § 794e(f)(6), 42 U.S.C. § 10805(c)(1)(B), and 42 U.S.C. § 10805(a)(6)(B-C). *See Oregon Advocacy Center*, 322 F.3d at 1111-12.

Furthermore, the interests the HDRC seeks to protect through this lawsuit are germane to its purpose, which is to defend and enforce the legal rights of people with disabilities. Through this lawsuit, it seeks to ensure that its

constituents receive all the special education services to which they are entitled under the IDEA and do not suffer discrimination on account of their disabilities.

Finally, whether the claim presented or the relief requested requires the participation of individual members is irrelevant as to Protection and Advocacy organizations since they are specifically authorized by federal statute to bring litigation on behalf of their constituents. *Id.* at 1113 ("We hold that in light of the role Congress assigned by statute to advocacy organizations such as OAC, Congress abrogated the third prong of the *Hunt* test.")

Therefore, the HDRC has standing to pursue this litigation on behalf of its constituents.

### 2. R.P.-K.

When the Complaint in this action was filed, R.P.-K. – who was born on October 3, 2009 – was 20 years old. He has been diagnosed with autism disorder. His disabilities require specialized instructions in a small, supportive, and structured environment. R.P.-K. attended Castle High School and received special education services from the DOE from 2005 until October 3, 2011.

His mother, C.K., twice requested that he continue receiving special education services beyond the 2009-10 school year. The DOE initially refused to make a decision on these requests and C.K. therefore filed a Request for Impartial Due Process Hearing. On July 26, 2009, the DOE advised C.K. that it would not

provide continued educational services to R.P.-K. on the grounds that he had reached 20 years of age.[1]

### 3. R.T.D.

At the time the Complaint was filed, R.T.D. – who was born on June 24, 1990 – was also 20 years old. He has been diagnosed with Downs Syndrome, mental retardation, Autism Spectrum Disorder, and Obsessive Compulsive Disorder. R.T.D. is also hearing and vision impaired, has limited communication skills, and requires constant supervision in his daily activities to avoid harming himself or others. R.T.D. attended Kaleheo High School from 2005 through the end of 2011and received special education from the DOE there.

Although R.T.D. and his parents engaged in several meetings with representatives of the DOE between January and June of 2010 to establish an Individualized Education Plan ("IEP") for the summer of 2010 and the 2010-11 school year, the DOE advised R.D. on June 28, 2010 that special education

---

[1] Pursuant to a stipulation with the DOE, the DOE agreed to continue to provide special education services to R.P.-K. while his due process hearing (including appeals) was pending. *See* Exhibit "A" attached to Plaintiffs R.P.-K. and R.T.D.'s Withdrawal of Motion for a Temporary Restraining Order and Preliminary Injunction, Filed on July 30, 2010, filed on August 2, 2010 [DE 7]. The DOE terminated his special education services when he reached 22 years of age.

services would cease after July 30, 2010 because R.T.D. was over 20 years old. His father R.D. therefore filed a Request for Due Process Hearing on his behalf.[2]

### 4. The Class

A motion to certify the Plaintiff Class was filed on September 24, 2010, Doc. # 15, and granted in part on March 15, 2011. Doc. # 31. The Class was certified to include:

> All individuals residing in the State of Hawaiʻi who [are] over the age of 20 on or before the first day of the school year (or who will imminently be over the age of 20 on that date) but under the age of 22 who are entitled to receive special education and related services from Defendant the Hawaiʻi Department of Education under the Individuals With Disabilities Education Act.

Doc. # 31 at 2; *R.P.-K. et al. v. Department of Education,* 272 F.R.D. 541, 543 (D. Haw. 2011).

### B. The *B.T.* Case and Act 163

The IDEA requires each state to provide a free appropriate public education ("FAPE") to "all children with disabilities ... between the ages of 3 and 21, inclusive ...." 20 U.S.C. § 1412(a). States may impose different age

---

[2] As with R.P.-K., the DOE stipulated to continue to provide special education to R.T.D. while his due process hearing (including appeals) was pending. In December 2011, however, the DOE took the position that R.P.-K. was no longer entitled to such services and terminated them effective as of the last school day of 2011.

restrictions only if those same limitations are applied to general education students as well.  20 U.S.C. § 1412(a)(1)(B).

In *B.T. v. Department of Education,* this Court enjoined the State of Hawai'i from denying special education services based solely on a student's attaining the age of 20.  The Plaintiff in *B.T.* had argued that extending a free appropriate public education ("FAPE") to age 22 would be consistent with Hawai'i law and practice and that an administrative rule of the DOE that terminated special education services at age 20 was therefore inapplicable.

This Court granted a preliminary injunction because regular education students over 20 could obtain a public education if (i) they met the age limits upon entering the ninth or tenth grade, (ii) they received a waiver from the school principal, or (iii) they pursued their secondary education in the adult education program.  *B.T. v. Department of Education,* Civil No. 08-00356 DAE-BMK, Doc. # 22, 2008 WL 3891867 at *5 (D. Haw. Aug. 21, 2008).  In granting summary judgment in favor of Plaintiff, the Court found that the DOE, in practice, allowed "a [general education] student to attend school after 20 years of age" while not providing special education students that same opportunity.  *B.T. v. Department of Education*, 2009 WL 4884447, at *9 (D. Haw. Dec. 17, 2009).

Act 163 – the State law upon which the DOE relied in eliminating services to the Plaintiff class – purports to impose a 20-year age limit on admission

to public school.  HRS § 302A-1134(c).  As will be proven at trial, however, Act 163 addressed only two of the three options this Court recognized by which over-aged students could continue their secondary education.  General education students are still allowed to pursue a public, secondary education in the DOE's adult education program.

### C. The Court's Order on the Parties' Cross-Motions for Summary Judgment

Plaintiffs and the DOE filed cross-motions for summary judgment.  In ruling on those motions, this Court held that the following disputed issues of material fact remain to be tried:

- Whether the DOE provides educational programs to students between the ages of 20-22 "which provide the functional equivalent of a secondary education to non-disabled students with regularity" [Doc. # 79 at 21];

- Whether the DOE regularly "ushers" over-aged students from a general education program to adult education programs [*Id.*];

- Whether "there exists a reasonable accommodation such that Plaintiffs will derive a meaningful benefit from continued education," which can be shown by proving a "pattern which suggests Defendant is discriminating against special education students by actively moving students who would otherwise 'age

out' per Act 163 from secondary school to adult education" and that the "adult education programs provide the functional equivalent of a high school education to adult education students [*Id.* at 34].[3]

Order: (1) Denying Plaintiffs' Motion for Summary Judgment Without Prejudice; (2) Granting in Part and Denying in Part Without Prejudice Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment; and (3) Denying Plaintiffs' Renewed Motion for a Preliminary Injunction Without Prejudice on September 19, 2011 ("Summary Judgment Order").

### D. The Evidence at Trial

The evidence at trial will show that: (1) the DOE provides educational programs for those over the age of 20 that are the "functional equivalent" of a secondary education; and (2) the DOE "ushers" over-aged general education students into the adult education programs by advertising that such programs will lead to obtaining the equivalent of a high school diploma, advising students that the adult education programs offer the opportunity to continue their secondary education and obtain a high school diploma, and actually accepting into the adult

---

[3] As Plaintiffs interpret the Summary Judgment Order, their ADA and RA claims require in substance the same proof as their claim under the IDEA.

education program, with essentially no prerequisites and at only nominal charge, students who are too old to attend high school pursuant to Act 163.

    Specifically:

- By statute, the DOE is required to provide a program for adults to continue their secondary education.  H.R.S. § 302A-433(3) (authorizing the DOE to establish "[a] program of *secondary education* for those adults who, in youth, left school or for some reason had their education curtailed and who now desire to continue their education") (emphasis added).  The DOE will admit at trial – as it must – that its only existing programs to fulfill this mandate are the General Educational Development test ("GED") and Competency-Based ("CB") high school diploma programs offered in the Community Schools for Adults.

- In numerous internal memoranda, documents, advertisements, and reports to the United States Department of Education, the DOE describes the GED and CB programs as leading to the "Hawai‘i high school diploma," which is the same goal of the conventional secondary education program, and describes the

GED and CB programs as providing a "secondary education." [Exs. 2, 3, 4, 5, 6, 7, 10, 12, and 18.]

- The purpose of the GED test is to serve as a functional substitute for a high school diploma. [Exs. 6, 8.] Although the requirements for obtaining the GED differ from the requirements for obtaining a conventional high school diploma, the two are functionally equivalent for many purposes. The University of Hawai'i, for example, considers them to be equivalent credentials. [Ex. 9.]

- Hawai'i receives substantial federal funding under the Workforce Investment Act of 1998 to offer adult education programs to its residents with the goal, among other things, of "assist[ing] adults in the completion of a *secondary* school education." [Ex. 13 at § 202 (emphasis added).] The DOE distributes these funds to its Community Schools for Adults and, as part of its reporting requirements for such funding, classifies its GED and CB programs as ones that lead to the completion of a secondary education. [Ex. 12 at 2213.]

- The DOE "ushers" over-aged students into its adult education programs by representing to them that these programs can lead

- to the same outcome as the conventional high school program – completing their secondary education and obtaining the DOE High School Diploma.  [Exs. 2, 3, 4, 5, 6, 7, 10, 12, and 18.]

- The DOE also "ushers" over-aged students into its adult education programs by advising them that these programs provide an option for continuing their education and obtaining a high school diploma.

- Finally, although there are currently few examples of students who have aged out of high school enrolling directly into an adult education program, the DOE accepts a large number of students into its adult education programs with the goal of obtaining a GED or CB diploma (at least 646 as of Act 163's effective date) who are too old to continue their secondary education in the high schools pursuant to Act 163.  [Exs. 14.] There are essentially no prerequisites for admission into these programs and they are almost entirely funded by the State and the federal government.

### E. Issues of Law

In the Summary Judgment Order, this Court set forth the issues of law relevant to this trial.  Although Plaintiffs will attempt to meet their burden as set

forth in the Summary Judgment Order, Plaintiffs respectfully suggest that the Court's requirement that Plaintiff prove that the DOE affirmatively "ushers" students who have aged out of high school pursuant to Act 163 into its adult education programs imposes a burden on Plaintiffs that is not required by 20 U.S.C. § 1412(a)(1)(B).

That provision of the IDEA allows a State to be absolved of its obligation to provide a FAPE to students between 18 and 21 if "its application to those children would be inconsistent with State law or practice ... respecting the provision of public education to children in those age rangers." Based on this reference to the State's "practice," the Court reasoned that "[i]f students are not *shuffled with regularity* between high school and adult education programs, the state cannot be said to have a regular 'practice' of providing general education students beyond the age of twenty with a high school diploma or its functional equivalent." Summary Judgment Order at 21, n. 5 (emphasis added).

The second part of this sentence does not necessarily follow from the first. The DOE may indeed have a "practice" of offering over-aged students the opportunity to obtain a high school diploma or its equivalent by (1) the mere existence of programs offering this opportunity and (2) the fact that hundreds of students who are ineligible to attend high school pursuant to Act 163 are currently availing themselves of this opportunity. This is true regardless of whether the

DOE is making an affirmative effort to "usher" over-aged students into these programs or if the individuals participating in these programs were "shuffled" (*i.e.* moved directly) from a high school to a community school. The Court's interpretation of the IDEA appears to import a requirement that Plaintiffs prove intentional conduct by the State to evade the IDEA that is not required.

## III. EVIDENTIARY ISSUES

### A. Motions in Limine

The DOE has filed the following motions *in limine*:

- Defendant's Motion in Limine No. 1: Motion to Strike and/or Prohibit Testimony of Robert Klein (95);

- Defendant's Motion in Limine No. 2: Motion to Limit Plaintiffs' Testimony (96);

- Defendant's Motion in Limine No. 3: Motion to Preclude Evidence of Prior Bad Acts, Settlements, and Due Process Hearing Requests and Decisions (97);

- Defendant's Motion in Limine No. 4: Motion to Prohibit Plaintiffs from Advancing New Claims and Theories at Trial (98);

- Defendant's Motion in Limine No. 5: Motion to Limit the Testimony of Hawaii Disability Rights Center (99); and

- Defendant's Motion in Limine No. 6: Motion to Preclude Evidence: (1) Regarding the Reasons for Passing Act 163 and (2) Defendant's Practices Prior to the Effective Date of Act 163 (100).

These motions in limine are either lacking in merit or unnecessary, as will be shown in Plaintiffs' Oppositions thereto.

## IV. OTHER TRIAL ISSUES

Plaintiffs do not anticipate any other issues arising at trial.

DATED: Honolulu, Hawai`i, February 14, 2012.


/s/ Jason H. Kim
PAUL ALSTON
JASON H. KIM
MATTHEW C. BASSETT
Attorneys for Plaintiffs