IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| R.P.-K., through his parent C.K., et al., | ) ) ) | Civ. No. 10-00436 DAE-KSC |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| DEPARTMENT OF EDUCATION, STATE OF HAWAII, | ) ) ) | |
| Defendant. | ) ) ) | |
| _____ | ) | |

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND DECISION

The Court tried this case without a jury on February 28, 2012. Jason H. Kim, Esq., Matthew C. Basset, Esq., and Louis Erteschik, Esq., appeared at the hearing on behalf of Plaintiffs; Deputies Attorney General Carter K. Siu and Gary Suganuma appeared at the hearing on behalf of Defendant Department of Education, State of Hawaii ("Defendant" or "DOE"). At the close of Plaintiffs' case in chief, Defendant made an oral motion for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure and the Court took the matter under advisement. (Trial Transcript ("TR") at 89:10–14.)

The instant class action lawsuit was filed on July 27, 2010 by Plaintiffs the Hawaii Disability Rights Center ("HDRC"), R.P.-K. through his

parent C.K., and R.T.D. through his parents R.D. and M.D. against the DOE for injunctive and declaratory relief.  Plaintiffs are challenging the validity of Act 163 of the Session Laws of Hawaii for 2010 ("Act 163"), arguing that it violates the Individuals with Disabilities Education Act ("IDEA"), Section 504 of the Rehabilitation Act ("Rehab Act"), and Title II of the Americans with Disabilities Act ("ADA").[1]  (Doc. # 1.)

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims arise under federal law.  Venue is proper pursuant to 28 U.S.C. § 1391 because the DOE resides in the District of Hawaii and the events and omissions giving rise to Plaintiffs' claims occurred within this District.

This Court has considered the evidence submitted, made determinations as to relevance and materiality, assessed the credibility of the witnesses and evidence, and ascertained the probative significance of the evidence presented.  Upon consideration of the above, the Court finds the following facts by a preponderance of the evidence, and in applying the applicable law to such factual

---

[1]Plaintiffs also brought a fourth claim arguing that the doctrine of judicial estoppel precludes Defendant from denying Plaintiffs a special education under the IDEA.  On September 19, 2011, the Court granted summary judgment in favor of Defendant on Plaintiffs' estoppel claim.

findings, makes the following conclusions of law.  To the extent any findings of fact as stated may also be deemed to be conclusions of law, they shall also be considered conclusions of law; similarly, to the extent any conclusions of law as stated may be deemed findings of fact, they shall also be considered findings of fact.  See Ratanasen v. State of Cal., Dep't of Health Servs., 11 F.3d 1467, 1469 (9th Cir. 1993) (citing In re Bubble Up Delaware, Inc., 684 F.2d 1259, 1262 (9th Cir. 1982)).

## I.    FINDINGS OF FACT

1.    The HDRC is a Hawaii non-profit corporation based in Honolulu, Hawaii.  ("Stipulation," Doc. # 114 ¶ 1.)  It is the designated Protection and Advocacy organization for Hawaii.  (Id.)  Its mission – defined by federal law (29 U.S.C. § 794e and 42 U.S.C. §§ 10801 et seq. and 15001 et seq.) and state law (Haw. Rev. Stat. § 333F-8.5) – is to defend and enforce the legal rights of people with disabilities.  (Id.)  It serves disabled persons throughout the State.  (Id.)

2.    The HDRC is pursuing this action to protect and advocate for the rights and interests of individuals with a "developmental disability" and other individuals with disabilities, as those terms are defined in 42 U.S.C. § 15002 and 29 U.S.C. § 794e.  (Id. ¶ 3.)  The individuals are the HDRC's constituents.  (Id.)  These constituents have a significant developmental disability or other impairment

that substantially limits one or more major life activities, including personal care, working, and sleeping.  (Id.)  They are therefore individuals with disabilities for purposes of the ADA and RA.  (Id.)  The HDRC's constituents are represented on the HDRC's Board of Directors and PAIMI Advisor Counsel and have the right to exercise a grievance procedure to assure that they have access to the Protection and Advocacy system, pursuant to 29 U.S.C. § 794e(f)(6), 42 U.S.C. § 10805(c)(1)(B), and 42 U.S.C. § 10805(a)(6)(B-C).  (Id. ¶ 2.)

3.      R.T.D. was born on June 24, 1990.  He has been diagnosed with Downs Syndrome, mental retardation, Autism Spectrum Disorder, and Obsessive Compulsive Disorder.  (Id. ¶¶ 7–8.)  R.T.D. is also hearing and vision impaired, has limited communication skills, and requires constant supervision in his daily activities to avoid harming himself or others.  (Id. ¶ 8.)

4.      R.T.D. attended Kaleheo High School from 2005 through the end of 2011 and received special education services from the DOE there.  (Id. ¶ 9.)  On June 28, 2010, the DOE advised R.T.D.'s father, R.D., that special education services would cease after July 30, 2010 because R.T.D. was over 20 years old.  (Id. ¶ 10.)  R.D. subsequently filed a Request for Due Process Hearing on behalf of R.T.D.  (Id. ¶ 11.)

5.     E.R.K. was born on January 29, 1992.  (Id. ¶ 13.)  He has been

diagnosed with Autism Spectrum Disorder and is currently receiving special

education services from the DOE at Roosevelt High School.  (Id. ¶¶ 14–15.)

Pursuant to Act 163, the DOE will deem E.R.K. to be ineligible for continuing

special education after the last day of the 2011-12 extended school year, which

ends July 2012.  (Id. ¶ 15.)  E.R.K. and his legal guardians wish for E.R.K. to

continue to receive special education services until he reaches the age of 22.  (Id. ¶

16.)

6.     On March 15, 2011, the Court granted in part Plaintiffs' Motion for

Class Certification and certified the following class:

> All individuals residing in the State of Hawaii who over the age of 20
> on or before the first day of the school year (or who will imminently
> be over the age of 20 on that date) but under the age of 22 who are
> entitled to receive special education and related services from
> Defendant the Hawaii Department of Education under the Individuals
> with Disabilities Act.

(Doc. # 31.)  The Court approved R.P.-K., R.T.D., and the HDRC to serve as class

representatives.  (Id.)  On February 27, 2012, the parties stipulated that E.R.K., by

and through his legal guardian R.K., would be added as a plaintiff and class

representative and that R.P.-K., by and through his parent C.K., would be

dismissed as a plaintiff and class representative.  (Stipulation at 2.)

7.      The DOE is the agency responsible for Hawaii's public school system. (TR at 9:13–15.)  The DOE receives federal funding for some of its programs and activities.  (TR at 16–18.)

8.      In 2010, the State of Hawaii enacted Act 163, which provides, in relevant part, as follows:

> No person who is twenty years of age or over on the first instructional day of the school year shall be eligible to attend a public school.  If a person reaches twenty years of age after the first instructional day of the school year, the person shall be eligible to attend public school for the full school year.

Haw. Rev. Stat. § 302A-1134(c).

9.      The DOE has not interpreted Act 163 to impose a maximum age for enrollment in its Community Schools for Adults.  (TR at 10:18–25.)  Therefore, students at the Community Schools for Adults have not been disqualified from participating in the adult education programs on account of their age as a result of Act 163.  (TR at 11:1–10.)

10.     The DOE offers two programs in its Community Schools for Adults: (1) the General Education Development test ("GED") program, and (2) the Competency-Based ("CB") diploma program.  (TR at 12:12–18.)  In addition to these two programs, the Community Schools for Adults offer review classes for people who want to be refreshed on certain subjects.  (TR at 25:1–19.)

11.     IDEA services are not offered in the GED and CB programs.  (TR at 28:4–7.)

12.     Generally speaking, an individual must be over eighteen to enroll in the GED and CB programs but there is no maximum age limitation.  (TR at 26: 2–13.)  There are essentially no prerequisites for admission other than that a student not have a high school diploma.  (TR at 26:11–27:10.)  Although students are charged nominal fees for books, testing, and other miscellaneous expenses, the programs are tuition free and almost entirely funded by state and federal funds.  (TR at 24:10–20.)

13.     In communications to the general public and the United States Department of Education, the DOE describes the GED and CB programs as constituting a secondary education.  (Pl Exs. 2–5, 6, 10, 12; TR at 13:24–14:3, 52:12–53:11.)  The DOE considers these programs to fall under the overall umbrella term of "secondary education" because it constitutes a form of education after one's primary education.  (TR at 67:15–23.)  However, the substance of the education and the credits earned in the Community Schools for Adults are very different from that of a conventional secondary education in a regular high school.  (TR at 67:15–68:2.)

14.     The GED program is designed to prepare students for the GED test, a national standardized exam created by the GED Testing Service.  (TR at 110:2–3; Pl. Ex. 8.)  The GED Testing Service establishes the passing standards and grades the tests.  (Id.)  The DOE merely administers the GED test and offers the GED preparation course.  (TR at 78:12–13.)  However, there is no requirement that a student take the GED preparation course before they take the GED test.  (Pl. Ex. 6; TR 19:1–9.)

15.     The GED preparation course offered at the Community Schools for Adults provides an overview of subjects covered on the exam and test-taking strategies.  (Pl. Ex. 10; TR at 37:22–38:3, 71:9–14.)  The program does not offer separate classes for particular subjects such as math or science, but rather provides a single test preparation class that is more akin to an SAT prep course where students learn to take and pass the test.  (TR at 37:22–38:3, 71:12–22.)  The class meets twice a week and lasts approximately three months.  (Pl. Ex. 10.)  The prep course provides a review of basic reading, math, and writing skills.  (Pl. Ex. 10.)  The substantive content, level of detail, and overall difficulty of the prep course is nowhere near that of academic courses offered at regular public high schools.  (TR at 38:4–15.)  The prep course is also standardized, and therefore a student who has finished his/her 11th year of high school would take the same course as someone

who has never attended high school.  (TR at 76:16–19.)  In short, the prep course is strictly designed to help individuals pass the GED test.  (Pl. Ex. 6.)

16.     In order to obtain a high school GED diploma through the GED program, an applicant must: (1) successfully complete at least one semester at an accredited school in Hawaii or one of the Community Schools for Adults and (2) pass the GED test with an average standard score of 450 for the combined five subtests with no individual sub test score below 410.  (Pl. Ex. 4, 6, 10.)

17.     The CB program is a program unique to Hawaii that focuses on life skills and does not overlap or relate to the GED program in any way.  (TR at 21:11–18, 109:16–19.)  The CB program is not based on any kind of academic standard, but rather on Hawaii content and performance standards.  (TR at 71:5–8.) It is designed to enable adult learners "to become (1) [f]unctionally literate adults; (2) [p]roductive and contributing citizens/community members; (3) [e]ffective family members; and (4) [p]roductive workers."  (Pl. Ex. 11; TR at 71:5–8.)  The program focuses on the following five subject areas: community resources, consumer economics, government and law, health, and occupational knowledge. (Pl. Ex. 11.)  Some of the topics covered in CB classes are money management, consumer decision-making, meal planning, and job search strategies.  (Pl. Ex. 11.) Notably, none of the subjects covered in the CB program are the same as the core

9

subject areas in which students must earn credits to graduate from a traditional public high school.  (Pl. Exs. 4, 11.)  For example, the CB program does not offer any courses in English, Social Studies, Mathematics, and Science.  (Pl. Ex. 11.)

18.     In order to obtain a high school CB diploma through the CB program, a student must: (1) pass all five units and score 70% or better on the CB cumulative test and (2) complete one credit of work at an accredited post secondary institution, be employed, obtain or possess a marketable skill, or demonstrate home or life management skills.  (Pl. Ex. 11.)

19.     The traditional secondary education program offered in public high schools is significantly different from the Community Schools for Adult programs. (TR at 70:7–16.)  The education provided in public high schools is based on state standards and involves substantially more rigor.  (TR at 38:4–15, 70:8–16, 107:17–118:5.)  In order to graduate from a public high school, a student must earn 24 credits. (Pl. Ex. 4.)  The credits must be earned in certain core subject areas, as outlined below:

| SUBJECT | CREDIT REQUIREMENTS |
|---|---|
| English | 4 |
| Social Studies | 4 |
| Mathematics | 3 |
| Science | 3 |
| World Language | 2 |
| Physical Education | 1 |

| Health | ½ |
| Pers/Trans Plan | ½ |
| Electives | 6 |

(Pl. Ex. 4.)  Each credit amounts to approximately 120 hours of class instruction time.  None of the courses in the Community Schools for Adults earn students credits that can be applied toward a traditional high school diploma.  (TR at 73:24–74:1.)  Additionally, the classes offered in traditional middle and high schools are not available in the Community Schools for Adults.  (TR at 73:1–20.)

20.     Each diploma identifies the specific school where the diploma was earned.  For example, a high school CB diploma from the Farrington adult school would say "awarded by Farrington Community School for Adults."  (TR at 21:25–22:6.)

21.     In the absence of a traditional high school diploma, University of Hawaii at Manoa ("UHM") and other Hawaii colleges will accept and use the GED test scores to determine admissibility.  (TR at 43:12–21; Pl. Ex. 9.)  On the other hand, many colleges, including UHM, do not accept or recognize the CB high school diploma.  (TR at 22:12–14, 118:1–10.)  However, a high school diploma is not necessary to obtain an Associate's Degree from a community college.  (TR at 118:6–9.)  The military does not consider the GED to be a functional equivalent of a high school diploma for enlistment purposes.  (Df. Exs. 502–504.)

22.     Some of the educational options available to adults over the age of twenty without a high school diploma include the GED and CB programs in the Community Schools for Adults, community college, Job Corps, or trade school. (TR at 96:4–95:2.)

23.     At the conclusion of the 2009-2010 school year, fifty-one (51) general education students were ineligible to continue their public high school education because of Act 163.  (TR at 62:4–63:5; Pl. Ex. 15.)  One (1) out of the fifty-one (51) aged-out students enrolled in a program at a Community School for Adults for the 2010-2011 school year.  (TR at 80:8–17; Pl. Ex 15.)

24.      At the conclusion of the 2010-2011 school year, sixty-two (62) general educations were ineligible to continue their public high school education because of Act 163.  (TR at 80:18–20; Pl. Ex. 15.)  Three (3) out of the sixty-two (62) aged-out students enrolled in a program at a Community School for Adults for the 2011-2012 school year.  (TR at 80:20–23; Pl. Ex. 15.)

25.     It is therefore clear that virtually every person enrolled in the GED and CB programs is not a student coming directly from a public high school, but rather an adult returning to enroll in these programs.  It is also clear that the GED and CB programs are not a continuation of a traditional high school education, nor are they the functional equivalent of a traditional high school education.

II.     CONCLUSIONS OF LAW

A.     **Rule 50 Motion**

26.     Federal Rule of Civil Procedure 50(a) provides:

> (1) If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
>> (A) resolve the issue against the party; and
>> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Fed. R. Civ. Proc. 50(a).

27.     Because the claims at issue were tried to the Court in a bench trial, Rule 50, which applies to jury trials, is not applicable. Therefore, Defendant's Rule 50 motion is denied.

B.     **IDEA Claim (Count I)**

28.     The IDEA requires each state to provide a free appropriate public education ("FAPE") to "all children with disabilities . . . between the ages of 3 and 21, inclusive . . . ." 20 U.S.C. § 1412(a). This Court previously determined that federal eligibility for special education and related services therefore ends on a student's twenty-second birthday. B.T. v. Dep't of Educ., 637 F. Supp. 2d 856, 863–64 n.9 (D. Haw. 2009). States, however, may impose different age

13

restrictions, provided those limitations are applied broadly to general education students as well. The statute provides that:

> The obligation to make a free appropriate public education available to all children with disabilities does not apply with respect to children–
>
> (i) aged 3 through 5 and 18 through 21 in a State to the extent that its application to those children would be inconsistent with State law or practice, or the order of any court, respecting the provision of public education to children in those age ranges.

20 U.S.C. § 1412(a)(1)(B). Pursuant to this exception, a state may lower the age limit for FAPE eligibility to as little as eighteen, provided that it is done in a manner consistent with the State's "provision of public education" to all children of that age.

29. The Ninth Circuit has explained the underlying purposes of the IDEA as follows:

> Congress has been very clear about stating its overarching goals in relation to the IDEA. Part of Congress's concern was that "children were excluded entirely from the public school system and from being educated with their peers." 20 U.S.C. § 1400(c)(2)(B) (2006). To alleviate that, disabled children were to have "access to the general education curriculum in the regular classroom, to the maximum extent possible." § 1400(c)(5)(A). We extract from the statute that the overarching goal of the IDEA is to prevent the isolation and exclusion of disabled children, and provide them with a classroom setting as similar to non-disabled children as possible.

N.D. v. Haw. Dep't of Educ., 600 F.3d 1104, 1115 (9th Cir. 2010).

30.     On September 19, 2011, this Court issued an Order: (1) Denying

Plaintiffs' Motion for Summary Judgment Without Prejudice; (2) Granting in Part

and Denying in Part Without Prejudice Defendant's Motion to Dismiss, or in the

Alternative, for Summary Judgment; and (3) Denying Plaintiffs' Renewed Motion

for a Preliminary Injunction Without Prejudice.  (Doc. # 79.)  In that Order, the

Court held that the term "public education" as used in the age governing provision

of the IDEA, 20 U.S.C. § 1412(a)(1)(B)(i), refers to an educational program which

in practice provides a secondary education or its functional equivalent to students.

(Id. at 20.)  The Court explained that:

> To determine whether a state has validly changed the age range in
> which a special education student is entitled to a FAPE per the age
> governing provision, a court must look at state law or practice and
> determine whether there are any educational programs which provide
> the functional equivalent of a secondary education to non-disabled
> students with regularity.

(Id. at 20–21.)

31.     In the B.T. case, Plaintiff B.T. was a severely autistic twenty-year-old.

B.T., 637 F. Supp. 2d at 859.  He argued that extending a FAPE to the age of

twenty-two was consistent with Hawaii law and that the DOE's policy of

terminating special education services at the age of twenty was invalid given the

practice of the State of Hawaii.  See id. at 862–65.  The DOE's practice was "to

require overage general education and special education eligible students to obtain the permission of the principal to attend school." Id. at 864. The evidence before the Court demonstrated that the principals had "approved every single overage general education student and barred almost every single overage special education student." Id. at 865. In light of this blatant discrimination, this Court held that "Hawaii [had denied] these students a meaningful education" and violated the IDEA and Rehab Act. Id. at 865–66. Hawaii therefore was "enjoined from implementing a per se rule denying special education services based solely on [the students] attaining the age of 20." Id. at 866. In other words, this Court found that the State could not lower the age limit for FAPE eligibility since doing so was not consistent with the State's practice of admitting every single overage general education student who sought permission to attend a public high school.

32.     The facts of this case are readily distinguishable from B.T. Hawaii state law, as set forth in Act 163, imposes a blanket age limit of twenty on all admissions to public high schools. Haw. Rev. Stat. § 302A-1134(c). Unlike in B.T., the evidence before this Court does not establish that the DOE had a practice of providing a secondary school education to overage general education students.

33.     Specifically, based on the factual findings set forth above, the Court concludes that the GED and CB programs offered within the Community Schools

for Adults do not provide the equivalent of a secondary school education to general education students. Although the DOE describes those programs as a form of "secondary education," the evidence presented at trial demonstrates that the educational curriculum, requirements, and experience of the adult programs are dramatically different from those of a traditional public high school. Therefore, a diploma earned through one of the adult education programs represents the completion of an education very different from that of a public high school diploma. This is in sharp contrast to the B.T. case, where general education students were being admitted to the exact same public high schools that they had otherwise aged out of.

34. The evidence also shows that an extremely small number of students who have aged out of public high school as a result of Act 163 are enrolling in the Community Schools for Adults. Thus, unlike in the B.T. case, the DOE has not engaged in a systemic practice of offering the same or equivalent education to general education students who have aged out while eliminating education services for special education students. [2]

---

[2]Under Plaintiffs' argument, if the State provides one general education student over the age of twenty with a GED preparation course, then that triggers the State's obligation to spend substantial amounts of money to provide a FAPE to all special education students between the ages of twenty and twenty two. This

(continued...)

35.     It is also significant that the adult education programs, unlike traditional public high schools, do not have a maximum age limit.  Under Plaintiffs' argument, Congress would have had to intend for states to terminate GED programs and other adult education services for students beyond the age restriction established by the state–in this case, the age of twenty–until a student attains the age of twenty-two.  This would lead to an absurd outcome.  In order to qualify for the exception provided in the IDEA, Hawaii could offer adult education programs to students from the age of eighteen to twenty, but would have to stop the programs for students aged twenty and twenty-one, and then recommence them for students aged twenty-two and older.[3]  The Court cannot conclude that Congress intended for the age governing provision of the IDEA to have this effect on all of a state's adult education services.

36.     As to Count I of Plaintiffs' Complaint, the Court finds in favor of Defendant.  Plaintiffs have not demonstrated that the DOE has a state law or practice whereby non-disabled students between the ages of twenty and twenty-two

---

[2](...continued)
simply could not have been the result intended by Congress.

[3]Alternatively, Hawaii could simply abandon its adult education programs for students until they turn twenty-two. This result, however, is inconsistent with the statutory scheme established by the IDEA.

are being provided the functional equivalent of a secondary school education.

Therefore, lowering the age limit for FAPE eligibility to twenty pursuant to Act

163 is consistent with the State's law and practice respecting the provision of

public education to general education students over the age of twenty.[4]  In short,

Plaintiffs have not established a violation of the IDEA.

## C.    ADA and Rehab Act Claims (Counts II and III)

37.    To establish a prima facie case of discrimination under Title II of the

ADA, a plaintiff must show that:

> (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability.

Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1021 (9th Cir. 2010) (quoting

McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004)).

---

[4]The Court notes that in light of Hawaii's unique circumstances, this may be a case of first impression.  Nonetheless, this Court may not rewrite the law or otherwise engage in an exercise of judicial legislation.  The Court must carefully limit itself to finding the facts as presented to this Court and applying those facts to the law as it understands Congress intended.  A federal judge may never interpose his or her personal preferences in interpreting the law as it is the role of Congress to legislate and make policy decisions.  Where, as in the case of the IDEA, Congress has given the State of Hawaii some discretion in implementing the law, the exercise of that discretion is reserved to the Governor and the State Legislature.

38.     Similarly, to establish a prima facie case of discrimination under § 504 of the Rehab Act, a plaintiff must show: "(1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance." Duvall v. Cnty of Kitsap, 260 F.3d 1124, 1135 (9th Cir. 2001); see also O'Guinn, 502 F.3d at 1060 (same).[5]

39.     A plaintiff alleging discrimination in violation of these Acts bears the initial burden of producing evidence of a reasonable accommodation. See Zukle v. Regents Univ. of Cal., 166 F.3d 1041, 1047 (9th Cir. 1999).

40.     The Court concludes that Plaintiffs have established a prima facie case of discrimination under the ADA and Rehab Act. First, it is undisputed that Plaintiffs are disabled and that the Community Schools for Adults receives federal funds and constitutes a public entity. Second, since the adult education programs have virtually no prerequisites for admission, Plaintiffs are otherwise qualified to participate in those programs. Third, Plaintiffs are effectively denied the benefits

---

[5]Given the close similarities between a cause of action per § 504 of the Rehab Act and Title II of the ADA, the analysis with respect to these two counts can be combined. See Wong v. Regents Univ. of Cal., 192 F.3d 807, 816 (9th Cir. 1999).

of the Community Schools for Adults by reason of their disabilities because those schools do not provide IDEA services.

41.     However, Plaintiffs have not met their burden of producing evidence that there exists a reasonable accommodation that will allow Plaintiffs to derive a meaningful benefit from adult education programs.  Specifically, Plaintiffs have not demonstrated that continuing to provide Plaintiffs a FAPE until the age of twenty-two is a "reasonable accommodation" under the Acts.

42.     In order to avoid discrimination prohibited by the ADA and the Rehab Act, "[a] public entity must 'make reasonable modifications[6] in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability.'" Wong, 192 F.3d at 818 (quoting Zukle, 166 F.3d at 1046). These Acts, however, do not require a public entity "to make fundamental or substantial modifications to its programs or standards."  Id. (citing Se. Comm. Coll. v Davis, 422 U.S. 397, 413 (1979).  Indeed, "[b]ecause the issue of reasonableness depends on the individual circumstances of each case, this determination requires a fact-specific, individualized analysis of the disabled individual's circumstances and the accommodations that might allow him to meet

_____

[6]Although Title II of the ADA uses the term "reasonable modification," rather than "reasonable accommodation," these terms create identical standards. See McGary, 386 F.3d at 1266 n.3 (citing Wong, 192 F.3d 807, 816 n.26).

the program's standards." Id. (citing Crowder v. Kitagawa, 81 F.3d 1480, 1486 (9th Cir. 1996)).

43.     In this Court's September 19, 2011 Order, the Court observed that there is a close relationship between Plaintiffs' ADA and Rehab Act claims and their IDEA claim.  The Court also noted that this case does not involve the kind of blatant discrimination that was established in the B.T. case.  In light of the facts and circumstances of the case as well as the nature of Plaintiffs' claims, the Court held that in order to show that continuing to provide Plaintiffs a FAPE constitutes a reasonable accommodation under the Acts, Plaintiffs must establish, inter alia, that the adult education programs at issue provide the functional equivalent of a high school education to adult general education students.  (Doc. # 79 at 33–34.)

a.     As discussed supra, this Court finds that the Community Schools for Adults do not provide the functional equivalent of a high school education to general education students.

b.     Plaintiffs did not proffer any evidence at trial establishing the reasonableness of the requested accommodation.

44.     Accordingly, as to Counts II and III of Plaintiffs' Complaint, the Court finds in favor of the Defendant.  Plaintiffs have not established that the DOE failed to provide reasonable accommodations necessary to avoid discrimination on

the basis of a disability in violation of Title II of the ADA and § 504 of the Rehab Act.

III.    <u>CONCLUSION</u>

For the foregoing reasons, Defendant's Rule 50 motion for judgment as a matter of law is **DENIED**.  The Court finds and concludes that Plaintiffs have failed to show by a preponderance of the evidence that pursuant to Act 163, Defendant violated the IDEA, Title II of the ADA, or § 504 of the Rehab Act.

Judgment shall be entered in favor of Defendant as to Counts I, II, and III of Plaintiffs' Complaint.  All parties shall bear their own costs of suit.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, March 30, 2012.



_____
David Alan Ezra
United States District Judge

<u>R.P.-K, et al.. v. Department of Education</u>, Civ. No. 10-00436 DAE-KSC; FINDINGS OF FACT, CONCLUSIONS OF LAW, AND DECISION