**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| E.R.K., by his legal guardian R.K.; R.T.D., through his parents R.D. and M.D.; HAWAI'I DISABILITY RIGHTS CENTER, in a representative capacity on behalf of its clients and all others similarly situated, | No. 12-16063 |
| | D.C. No. 1:10-CV-00436-DAE-KSC |
| *Plaintiffs-Appellants*, | |
| v. | OPINION |
| STATE OF HAWAII DEPARTMENT OF EDUCATION, | |
| *Defendant-Appellee.* | |

Appeal from the United States District Court
for the District of Hawaii
David A. Ezra, District Judge, Presiding

Argued and Submitted
June 12, 2013—Honolulu, Hawaii

Filed August 28, 2013

Before: Jerome Farris, Dorothy W. Nelson,
and Jacqueline H. Nguyen, Circuit Judges.

Opinion by Judge D.W. Nelson

2        E.R.K. v. State of Hawaii Dep't of Educ.

## SUMMARY[*]

### Individuals with Disabilities Education Act

Affirming in part and reversing in part the district court's judgment after a bench trial in a class action, the panel held that a Hawaii statute violated federal law by establishing an age limit on public education.

The Hawaii statute, dubbed "Act 163," barred both general-education students and students who received special-education services under the Individuals with Disabilities Education Act from attending public school after the last day of the school year in which they turned 20. The plaintiffs alleged that the state violated the IDEA, the Americans with Disabilities Act, and the Rehabilitation Act by denying public education to special-needs students aged 20 to 21 while offering it, in the form of a network of adult-education schools called Community Schools for Adults, to students without special needs. The Community Schools for Adults were exempt from the strictures of Act 163.

The panel held that Act 163 violated the IDEA, which restricts the power of states to establish age limits on special-education eligibility in certain circumstances. In an exception to these restrictions, 20 U.S.C. § 1412(a)(1)(B)(I) provides that a state's duty to provide special education does not extend to children aged 18 through 21 "to the extent that [the duty's] application to those children would be inconsistent with State law or practice . . . respecting the provision of

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

public education to children in those age ranges." Referring
to the IDEA's legislative history, the panel held that
§ 1412(a)(1)(B)(I) meant that Hawaii could not deny special
education to disabled students aged 18 through 21 if it in fact
provided "free public education" to nondisabled students in
that range of ages. The panel concluded that the diploma
programs offered by the Community Schools for Adults
constituted free public education because they were provided
at public expense, under public supervision and direction, and
without charge, and they involved secondary education.
Accordingly, the panel reversed the district court's judgment
for the State of Hawaii Department of Education on the IDEA
claim.

The panel affirmed the district court's judgment for the
Department of Education on the plaintiffs' disability
discrimination claims under the Americans with Disabilities
Act and the Rehabilitation Act, holding that the plaintiffs did
not establish the existence of reasonable accommodations that
would make the Community Schools for Adults generally
accessible to disabled students. The panel remanded the case
to the district court.

## COUNSEL

Paul Alston, Alston Hunt Floyd & Ing, Honolulu, Hawaii;
Jason H. Kim (argued), Schneider Wallace Cottrell Brayton
Konecky, LLP, San Francisco, California; Matthew C.
Bassett & Jennifer V. Patricio, Hawaii Disability Rights
Center, Honolulu, Hawaii, for Plaintiffs-Appellants.

David M. Louie, Carter K. Siu (argued), and Holly T.
Shikada, Department of the Attorney General, Honolulu,
Hawaii, for Defendant-Appellee.

## OPINION

NELSON, Senior Circuit Judge:

Are state-funded high school diploma programs for adults
who never graduated from high school a form of "public
education"? 20 U.S.C. § 1412(a)(1)(B)(I). We conclude that
they are. Accordingly, we hold that a Hawaii statute
establishing an age limit on public education violates federal
law, and reverse in part the district court's entry of judgment
in favor of the Defendant-Appellee.

### Background

In 2010, the Hawaii state legislature enacted a law,
dubbed "Act 163," barring students from attending public
school after the last day of the school year in which they
turned 20:

> No person who is twenty years of age or over
> on the first instructional day of the school

> year shall be eligible to attend a public school.
> If a person reaches twenty years of age after
> the first instructional day of the school year,
> the person shall be eligible to attend public
> school for the full school year.

Haw. Rev. Stat. § 302A-1134(c). The law applies to both general-education students and students who receive special-education services under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*

The State of Hawaii Department of Education ("DOE") administers public education in the state. In addition to conventional public high schools, the agency operates a network of adult-education schools called the Community Schools for Adults. DOE materials explain that the Community Schools for Adults offer "Adult Secondary Education" in the form of "tuition-free opportunities for adults and out-of-school youth to earn a high school diploma[.]" The DOE offers two diploma programs: the General Education Development ("GED") program and the Competency Based program ("CB").

The GED program prepares students to take the GED test, a national standardized high school equivalency exam. Students who achieve adequate scores on the GED test qualify for a high school diploma if they have also completed at least one semester of high school work at either an accredited high school in Hawaii or a Community School for Adults. A high school diploma earned via the GED program permits students to seek admission to the University of Hawaii system.

Case 1:10-cv-00436-SOM-RT Document 134-5 Filed 08/28/13 Page 6 of 23 PageID #:
2636
Case 1:12-cv-00660-SOM-BMK Document 18-5 Filed 08/28/2013 Entry Page 6 of 23 Page: 6 of 23

The CB program is a three-semester life-skills program designed to help students become "(1) Functionally literate adults; (2) Productive and contributing citizens/community members; (3) Effective family members; and (4) Productive workers." The program emphasizes skills like household finance, civic participation, and health maintenance. To obtain a high school diploma in the CB program, students must complete all five CB courses, earn adequate scores on the various CB exams, and complete at least one "Career Goal," such as finding a job or completing one credit of work at an accredited postsecondary institution.

The Community Schools for Adults are exempt from the strictures of Act 163. Both the GED and CB programs are open to any student 18 or older who lacks a high school diploma.[1]

These adult education programs have sparked litigation because they do not offer IDEA services to disabled students. Students who require special-education services to participate in the classroom cannot pursue diplomas in the Community Schools for Adults after aging out of public education under Act 163. But students without special needs can and do transition directly from Hawaii public high schools to the Community Schools for Adults.[2]

---

[1] Sixteen- and seventeen-year-old students are eligible to enroll in the Community Schools for Adults if they have officially withdrawn from high school.

[2] Between 2010 and 2012, 113 general-education students became ineligible for high school because of Act 163, and four enrolled in an adult school.

E.R.K. v. State of Hawaii Dep't of Educ.          7

Soon after Act 163 became law, four disabled students and their parents, together with the Hawaii Disability Rights Center, filed a class-action complaint in federal district court. The complaint asserted claims under the IDEA, the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act, as well as an estoppel claim. The IDEA claim alleged that Act 163 violated federal law by denying public education to special-needs students aged 20 to 21 while offering it, in the form of the Community Schools for Adults, to students without special needs. The claims under the ADA and Rehabilitation Act alleged that the DOE's exclusion of disabled students from adult education constituted disability discrimination under those statutes. The estoppel claim is not at issue in this appeal.

The district court certified a class consisting of all Hawaiian students entitled to special-education services but made ineligible for public education by Act 163. The Plaintiffs and the DOE filed cross-motions for summary judgment. The district court granted summary judgment to the DOE on the estoppel claim, but denied summary judgment to both parties on the remaining claims.

The parties then tried the case in a one-day bench trial. After trial, the district court ruled for the DOE on all three claims at issue. On the IDEA claim, the court held that Act 163 was consistent with federal law because the Community Schools for Adults did "not provide the equivalent of a secondary school education to general education students," and because the DOE had no "systemic practice of offering the same or equivalent education to general education students who have aged out while eliminating education services for special education students." On the ADA and Rehabilitation Act claims, the court held that the Plaintiffs

Case: 12-16063   08/28/2013   ID: 8755110   DktEntry: 39-1   Page: 8 of 23

had made a prima facie case of disability discrimination, but did not meet their burden of identifying a reasonable accommodation that would allow disabled students to benefit meaningfully from the adult schools. The Plaintiffs[3] timely appealed.

## Analysis

### 1. IDEA claim.

We first must decide whether Act 163 runs afoul of the IDEA, which restricts the power of states to establish age limits on special-education eligibility in certain circumstances. We hold that it does.

The IDEA requires states to provide a "free appropriate public education" to all children with disabilities residing in the state "between the ages of 3 and 21, inclusive[.]" 20 U.S.C. § 1412(a)(1)(A). As a result, a student's eligibility for IDEA services ordinarily ends on his twenty-second birthday. *See L.A. Unified Sch. Dist. v. Garcia*, 669 F.3d 956, 959 (9th Cir. 2012). The statute creates an exception to the age limit, however. A state's duty to provide special education to children with disabilities does not extend to children aged 3 through 5 or 18 through 21 "to the extent that [the duty's] application to those children would be inconsistent with State law or practice, or the order of any court, respecting the provision of public education to children in those age ranges." 20 U.S.C. § 1412(a)(1)(B)(I).

---

[3] In the remainder of our opinion, we use "E.R.K." to refer to the class of Plaintiffs-Appellants as a whole. E.R.K., a class representative, is a student with autism who was receiving special-education services from the DOE at Roosevelt High School at the time of trial.

We have never interpreted this exception to the IDEA's default age limit, and the text is not completely pellucid. What does it mean for the IDEA's application to students aged 18 to 21 to be "inconsistent with State law or practice . . . respecting the provision of public education" in a state? *Id.* The corresponding federal regulations are little help, as they simply reiterate the statutory language in nearly identical terms:

> The obligation to make [a free and appropriate public education] available to all children with disabilities does not apply with respect to . . . [c]hildren aged 3, 4, 5, 18, 19, 20, or 21 in a State to the extent that its application to those children would be inconsistent with State law or practice . . . respecting the provision of public education to children of those ages.

34 C.F.R. § 300.102(a).

Happily, the IDEA's legislative history sheds some light on the exception's meaning. *See Jonah R. v. Carmona*, 446 F.3d 1000, 1005 (9th Cir. 2006) ("If the statute's terms are ambiguous, we may use canons of construction, legislative history, and the statute's overall purpose to illuminate Congress's intent."). The Senate Report accompanying the 1975 statute[4] that created the exception

---

[4] The legislation was enacted as the Education for All Handicapped Children Act. *See* Pub. L. 94-142, 89 Stat. 773 (1975). That legislation amended an earlier statute, the Education of the Handicapped Act. *See* Pub. L. 91-230, 84 Stat. 175 (1970). In 1990, the statute was renamed the

explains that states are free to elect not to provide special education to disabled students between 18 and 21, but only if they *also* elect not to provide "free public education" to nondisabled students:

> This exception with respect to handicapped children aged three to five and aged eighteen to twenty-one, inclusive [in 20 U.S.C. § 1412(a)(1)(B)(I)] is intended to exempt states from the provisions of this Act establishing a timetable for providing a free appropriate public education in these age groups in the following circumstances: . . .
>
> > (2) where a State does not in fact provide or assure the provision of free public education to handicapped children in these age groups; . . . .
>
> This exception shall not apply in the following circumstances:
>
> > (1) where a state does now in fact provide or assure the provision of free public education to non-handicapped children in these age groups . . . .

S. Rep. No. 94-168, 1442–43 (1975).

In light of this legislative history, we interpret § 1412(a)(1)(B)(I) to mean that Hawaii cannot deny special

---

Individuals with Disabilities Education Act. *See* Pub. L. 101-476 § 901(a)(3), 104 Stat. 1103, 1142 (1990).

E.R.K. V. STATE OF HAWAII DEP'T OF EDUC.     11

education to disabled students aged 18 through 21 if it in fact provides "free public education" to nondisabled students in that range of ages.

The fate of Act 163 comes down to whether the diploma programs offered by the Community Schools for Adults constitute "free public education." Act 163 makes some 20-year-old and all 21-year-old students ineligible for public education in Hawaii. For disabled students, the Act functions as an age limit on eligibility for IDEA services. E.R.K. argues that by providing the GED and CB programs to nondisabled 20- and 21-year-olds, Hawaii offers public education on unequal terms. The DOE rejoins that the GED and CB programs are not "free public education" as the IDEA uses that term, so making them available to nondisabled 20- and 21-year-olds does not beget a concomitant obligation to publicly educate disabled students of the same ages.

To determine whether the adult-education programs are "free public education," we naturally begin with the text of the IDEA. *See Dzyuba v. Mukasey*, 540 F.3d 955, 956 (9th Cir. 2008) ("[W]e construe the meaning of a given word by reference to the context of a particular statutory regime."); *see also Brown v. Gardner*, 513 U.S. 115, 118 (1994) ("[T]here is a presumption that a given term is used to mean the same thing throughout a statute . . . ."). The IDEA does not offer a statutory definition of "free public education," but it does explicitly define the closely related phrase "free appropriate public education" as "special education and related services" that:

> (A) have been provided at public expense, under public supervision and direction, and without charge;

(B) meet the standards of the State educational agency;

(C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and

(D) are provided in conformity with the individualized education program required under section 1414(d) of this title.

20 U.S.C. § 1401(9). Once we strip out those aspects of this definition that clearly relate to the education's "appropriateness," as opposed to its "free" and "public" character, we are left with a reliable index of what "free public education" means in § 1412(a)(1)(B)(I). The second and fourth criteria seem to delineate an education's appropriateness. (Surely an education can be both free and public even if it is inappropriate because it fails to meet state standards or to conform with an individualized education program.) We are left with a bipartite definition: a "free public education" is one that is 1) provided at public expense, under public supervision and direction, and without charge; and 2) involves preschool, elementary, or secondary education.

The first prong of this definition is consistent with the plain meaning of "free public education." A "public" institution is one that is "accessible . . . to all members of the community" and which "provid[es] services to the people . . . under some degree of civic or state control." Webster's Third New International Dictionary 1836 (1968). "Free" means "without charge." *Id.* at 905. The second prong of the definition—that "free public education" means preschool,

elementary, or secondary education—is not apparent from the plain meaning of the phrase, but is derived from the IDEA's limited scope. Because the IDEA applies only to preschool, elementary, or secondary education, *see* 20 U.S.C. § 1401(9), we do not think § 1412(a)(1)(B)(I) refers to public education outside those same categories.

The GED and CB programs clearly satisfy the first prong of the definition. The district court found, and neither party disputes, that the Community Schools for Adults are provided at public expense and are free to students. Nor does the DOE deny that the schools operate under its supervision and direction as a public agency.

The GED and CB programs also satisfy the second prong because they are programs of secondary school education. The DOE's own officers acknowledge that the GED and CB high school diploma programs are designed "to ensure that the graduates are prepared for transitions to post secondary education[.]" If students are only able to pursue "postsecondary" education after they earn a high school diploma in the GED or CB programs, it stands to reason that those programs constitute "secondary" education. The record is replete with additional evidence that the DOE considers the GED and CB programs to offer a secondary education for adults. A section of the DOE's website, titled "What are Community Schools for Adults?", enumerates the "wide variety of courses" offered by the adult schools. The second item reads: "Secondary education . . . courses to complete your high school graduation requirements." The DOE's characterization of the adult school programs comports with the common-sense view that high school diploma programs are quintessentially secondary education, whether they are offered to teenagers or adults. *Cf., e.g.*, 20 U.S.C. § 9201(3)

(describing the purpose of the Adult Education and Family Literacy Act of 1998 as "assist[ing] adults in the completion of a secondary school education"); *see also id.* § 1001(a)(1)–(2) (noting that an "institution of higher education" is one that "provide[s] a program of education beyond secondary education" and only accepts students with secondary-education diplomas).

Our conclusion that the GED and CB programs are a form of public secondary education is buttressed by the fact that the Community Schools for Adults meet the IDEA's definition of "secondary school." The IDEA defines "secondary school" as a

> nonprofit institutional day or residential school, including a public secondary charter school, that provides secondary education, as determined under State law, except that it does not include any education beyond grade 12.

*Id.* §1401(27). The record establishes that the Community Schools for Adults are nonprofit day schools that do not educate students beyond grade 12; only students who never graduated from twelfth grade can pursue a GED or CB diploma. And to the extent that Hawaii law substantively defines "secondary education" at all, the GED and CB programs seem to qualify. The state statute defining the "scope of adult and community education programs offered" in Hawaii states that "instructional programs shall be initiated" in various fields, including a program of "secondary education for those adults who, in youth, left school or for some reason had their education curtailed and who now desire to continue their education . . . ." Haw. Rev. Stat.

§ 302A-433. The GED and CB programs obviously fulfill this legislative mandate.[5]

We are therefore persuaded that the Community Schools for Adults offer "secondary education"—and hence that the state offers "free public education" to nondisabled students over 18 and under 22.

The DOE makes three arguments that, in spite of the statutory text, the Community Schools for Adults do not in fact offer free public education. First, the DOE urges us to distinguish "conventional" or "traditional" secondary education offered in Hawaiian high schools from the less demanding GED and CB programs. To earn an ordinary high school diploma, the DOE points out, students must accumulate 120 credit hours in various academic subjects. The GED and CB diploma programs are structured differently. The GED program consists of a series of targeted preparatory courses in the GED examination subjects, and the CB program is largely nonacademic, focusing instead on personal and vocational skill development. The differences extend to postsecondary opportunities. Both the University of

---

[5] Of course, the fact that the Community Schools for Adults meet the definition of "secondary schools" under the IDEA does not mean that Hawaii could comply with the IDEA simply by amending its laws to exclude adult-education programs from the ambit of "secondary education." A state's definition of "secondary education" determines whether an institution qualifies as a "secondary school" under the IDEA. 20 U.S.C. § 1401(27). State law alone, however, does not dictate whether a program is a form of secondary education—and, by extension, whether it constitutes "free public education." As we have explained, high school diploma programs are paradigmatic examples of secondary education, and Hawaii is not free to reclassify the GED and CB programs as nonsecondary education in an effort to read them out of the definition of free public education.

Hawaii system and the military, for instance, favor students
with conventional high school diplomas over students with
the GED diploma.

The DOE urges that the differences between
"conventional" high schools in Hawaii and the Community
Schools for Adults are so substantial that both school systems
cannot offer secondary education. The district court made
much the same argument when it entered judgment in the
DOE's favor: the district court held that the GED and CB
programs "do not provide the equivalent of a secondary
school education" because the "educational curriculum,
requirements, and experience of the adult programs are
dramatically different from those of a traditional public high
school."

Nothing in the IDEA, however, supports the proposition
that a program constitutes "secondary education" or "free
public education" only if it is structurally identical to the
ordinary public high school curriculum offered to
nondisabled students. The DOE's brief cites no cases or
statute in support of the interpretation it proposes. Instead, the
DOE asks us to contrive an atextual distinction between
authentic and ersatz secondary education and impose it on the
statutory text. It is particularly unlikely that the IDEA's
definitions incorporate such a distinction because, as we have
noted, the statute construes education broadly. *See* 20 U.S.C.
§ 1401(29) ("The term 'special education' means specially
designed instruction, at no cost to parents, to meet the unique
needs of a child with a disability, including . . . instruction
conducted in the classroom, in the home, in hospitals and
institutions, and in other settings[.]"); *see also, e.g., Seattle
Sch. Dist., No. 1 v. B.S.*, 82 F.3d 1493, 1500 (9th Cir. 1996)
(noting that the IDEA reflects a holistic concept of

E.R.K. V. STATE OF HAWAII DEP'T OF EDUC.      17

educational benefit, including "the handicapped child's academic, social, health, emotional, communicative, physical and vocational needs" (internal quotation marks omitted)). Education for high-school-aged students with disabilities often differs dramatically from "conventional" secondary education. *See, e.g.*, *Park ex rel. Park v. Anaheim Union High Sch. Dist.*, 464 F.3d 1025, 1030–31 (9th Cir. 2006) (per curiam) (involving an educational program for a high school student that included a full-time special day class and instruction in "buttoning, zipping and toilet training"). In light of the variety of specialized secondary education the IDEA makes available to disabled students, it is simply implausible that the phrase "free public education" in the § 1412(a)(1)(B)(I) exception refers narrowly to a "conventional" high school curriculum.[6]

Second, the DOE argues that an opinion letter from the United States Department of Education establishes that GED courses are not "secondary education." The opinion letter states that school districts are "not required to provide [IDEA services to] students who have left traditional secondary education programs and entered a GED test preparation program" unless "the State considers the GED test preparation program to be a part of an appropriate secondary

---

[6] We are also skeptical that the differences between the diploma programs are as significant as the DOE claims. The record contains a flowchart, prepared by the DOE, which "illustrates the three methods by which the high school diploma may be earned." The flowchart shows that all three paths—the "Credit Method," the "GED Test Method," and the "[CB] Method"—lead to the same result: a "Hawaii Department of Education High School Diploma." Surely the programs' common characteristic—that they all lead to "the high school diploma"—is more relevant to their status as "secondary education" than differences in curriculum, structure, and rigor.

education." The letter does not alter our analysis, because
E.R.K. is not arguing that the Community Schools for Adults
must provide IDEA services. At most, the letter reflects the
United States Department of Education's view that not all
GED preparation programs are necessarily part of an
"*appropriate* secondary education." The letter sheds no light
at all on whether all GED preparation programs constitute
secondary education *simpliciter*. But we need not broach that
question, because we have already decided that *Hawaii's*
GED diploma program is unambiguously a program of
secondary education.

Finally, the DOE argues that the IDEA's definition of
"transition services," which school districts must offer when
a student ages out of IDEA eligibility, proves that adult
education and secondary education are mutually exclusive.
The IDEA defines "transition services" as

> a coordinated set of activities for a child with
> a disability that . . . is focused on improving
> the academic and functional achievement of
> the child with a disability to facilitate the
> child's movement from school to post-school
> activities, including post-secondary education,
> vocational education, integrated employment
> (including supported employment), *continuing
> and adult education*, adult services,
> independent living, or community
> participation . . . .

20 U.S.C. § 1401(34) (emphasis added). The DOE argues
that, by offering "adult education" as an example of a "post-
school activity," the IDEA's drafters intended to distinguish
adult education from secondary education. But of course it is

self-evident that "adult education" and "secondary education" are not coterminous. Hawaii's adult schools offer adult-education courses in parenting and sewing,[7] but it is unlikely that these courses constitute secondary education. The use of the phrase "adult education" in connection with transition services does not imply mutual exclusivity between "adult education" and "secondary education."

None of the DOE's arguments sway us from our conclusion that the Community Schools for Adults offer "free public education" to students who do not require IDEA services. The DOE offers, at taxpayer expense, the opportunity for nondisabled 20- and 21-year-olds to complete their secondary educations and earn high school diplomas. Providing IDEA services to disabled children of those ages would therefore be consistent with "State law or practice . . . respecting the provision of public education," so the state must do so. 20 U.S.C. § 1412(a)(1)(B)(I).

Our conclusion is unchanged by the district court's finding that the DOE does not "usher" or "steer" nondisabled students into the GED and CB programs once they age out of the conventional high schools. As the legislative history makes clear, the question is whether a state "provide[s] or assure[s] the provision of free public education to non-[disabled] children." S. Rep. No. 94-168, 1442–43. A state's duty to educate disabled children until they turn 22 is only excused if free public education is foreclosed to disabled

---

[7] *See* http://165.248.6.166/data/schoollist_csa.asp (noting that the Community Schools for Adults offer "[h]omemaking and parenting" courses") (last visited August 1, 2013); http://www.waipahucs.k12.hi.us/courses/2013/Summer%202013/WCSA%20Sum%202013.pdf (listing three sections of a course called "Sewing") (last visited August 1, 2013).

and nondisabled students alike. Whether a state encourages nondisabled students to take advantage of what free public education is available is irrelevant.

Indeed, though their numbers are small—only 3.5% of the general education students affected by Act 163 between 2010 and 2012 transitioned to an adult diploma program—the fact that any students at all transitioned directly to the GED and CB programs after aging out of the state high school system confirms that the state "provides" free public education to 20- and 21-year-olds. Those students who made the transition belie the district court's finding that "the GED and CB programs are not a continuation of a traditional high school education."

By passing the IDEA, Congress intended "to open the door of public education to all qualified children[.]" *Cedar Rapids Cmty. Sch. Dist. v. Garret F. ex rel. Charlene F.*, 526 U.S. 66, 78 (1999) (internal quotation marks and citation omitted). If Hawaii legislators wish to shut the door to students once they turn 20, that is their prerogative—but they must shut them to *all* students, regardless of disability. Act 163 reinstates the benighted two-track system that prevailed before the IDEA was passed, when disabled students were often "totally excluded from schools[.]" *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 191 (1982) (internal quotation marks and citation omitted). In Hawaii's two-track system, nondisabled students between the ages of 20 and 22 can pursue the diplomas that eluded them in high school, but students with special needs are simply out of luck.

The GED and CB programs—unfettered by the obligation to address the needs of disabled students—are surely much

cheaper to operate than a public-school system with a full
complement of special-education services. But the IDEA
stands for the principle that exclusion is a false economy
unbefitting a society committed to the complete integration of
its disabled citizens.

## 2.  ADA and Rehabilitation Act claims.

E.R.K. next argues that the district court erred when it
ruled in the DOE's favor on his disability discrimination
claims.

To establish a prima facie case of disability
discrimination under the ADA, a plaintiff must prove that:

> (1) he is an individual with a disability; (2) he
> is otherwise qualified to participate in or
> receive the benefit of some public entity's
> services, programs, or activities; (3) he was
> either excluded from participation in or
> denied the benefits of the public entity's
> services, programs, or activities, or was
> otherwise discriminated against by the public
> entity; and (4) such exclusion, denial of
> benefits, or discrimination was by reason of
> [his] disability.

*McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir.
2004) (alteration in original) (quoting *Thompson v. Davis*,
295 F.3d 890, 895 (9th Cir. 2002) (per curiam)) (internal
quotation marks omitted). A prima facie case under the
Rehabilitation Act is identical, except that the plaintiff must
also prove that the relevant program receives federal financial

assistance. *See Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001).

Under both statutes, a plaintiff who requires an accommodation to meet a program's essential eligibility requirements can establish the "otherwise qualified" element of the prima facie case only by producing "evidence of the existence of a *reasonable* accommodation . . . ." *See Zukle v. Regents of the Univ. of Cal.*, 166 F.3d 1041, 1046–47 (9th Cir. 1999) (emphasis added).

E.R.K.'s complaint identifies "[t]he DOE's provision of public education" as the "service, program, or activity" from which he was allegedly excluded. But the only programs the DOE provides on a discriminatory basis are the GED and CB adult education programs; Act 163 forecloses all other public-education programs to disabled and nondisabled students alike. Thus, the question is whether the GED and CB programs are available to disabled individuals "who, with or without reasonable accommodations, meet the essential eligibility requirements to participate." *Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1222 (9th Cir. 2008).

E.R.K. did not establish a prima facie case of disability discrimination because he failed to produce "evidence of the existence of a reasonable accommodation." *Zukle*, 166 F.3d at 1047. E.R.K. did not identify changes to the structure or curriculum of the Community Schools for Adults that would make them generally accessible to disabled students. Instead, the accommodation he proposed was simply that the DOE maintain disabled students' special-education placements until their twenty-second birthdays. That accommodation would do nothing to help disabled students access the GED and CB programs. Retaining students in their publicly funded

special-education placements might be a reasonable accommodation if E.R.K. were alleging that disabled students are excluded from the Hawaiian public-education system as a whole. But the accommodation would represent a "fundamental" change to the Community Schools for Adults in particular—and the DOE is not required to make fundamental modifications to accommodate disabled students. *Alexander v. Choate*, 469 U.S. 287, 300 (1985).

### Conclusion

Through its Community Schools for Adults, the State of Hawaii offers public education to nondisabled students between the ages of 20 and 22. As long as it continues to do so, the IDEA requires the state to continue to provide a free and appropriate public education to disabled students who have not yet obtained the age of 22. The Plaintiffs did not, however, prove that the same result is necessary as a reasonable accommodation. Accordingly, we affirm the district court's judgment for the DOE on the ADA and Rehabilitation Act claims, and reverse the district court's judgment for the DOE on the IDEA claim.

Costs on appeal shall be awarded to Plaintiffs-Appellants.

**AFFIRMED** in part, **REVERSED** in part, and **REMANDED**.