PAUL ALSTON                1126
ALSTON HUNT FLOYD & ING
1001 Bishop Street, Suite 1800
Honolulu, Hawai`i  96813
Telephone: (808) 524-1800
Facsimile: (808) 524-4591
E-mail:  palston@ahfi.com

LOUIS ERTESCHIK            5241
MATTHEW C. BASSETT         6643
JENNIFER V. PATRICIO       8710
HAWAI`I DISABILITY RIGHTS CENTER
1132 Bishop Street, Suite 2102
Honolulu, Hawai`i  96813
Telephone:  (808) 949-2922
Facsimile:  (808) 949-2928
Email:   louis@hawaiidisabilityrights.org
         mattbassettesq@gmail.com

JASON H. KIM
SCHNEIDER WALLACE COTTRELL BRAYTON
  AND KONECKY, LLP
180 Montgomery Street, Suite 2000
San Francisco, California   94104
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
Email:   jkim@schneiderwallace.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| R.P.-K., through his parent C.K., R.T.D., through his parents R.D. and M.D., B.P., through her parent M.P., and C.B., through his parent N.B., for themselves and on behalf of a class of those similarly situated, and the | Case No. 10-00436 SOM-KSC<br><br>**MEMORANDUM REGARDING (1) THE SIZE OF THE CLASS, AND (2) THE PROCESS FOR DETERMINING THE CLASS MEMBERS' ENTITLEMENT TO** |

896026v1

| | |
|---|---|
| HAWAII DISABILITY RIGHTS CENTER, in a representative capacity on behalf of its clients and all others similarly situated,<br><br>   Plaintiffs,<br><br> vs.<br><br>DEPARTMENT OF EDUCATION, State of Hawai`i,<br><br>   Defendant. | **COMPENSATORY EDUCATION; EXHIBITS "A" – "C"; CERTIFICATE OF SERVICE** |

**MEMORANDUM REGARDING (1) THE SIZE OF THE CLASS, AND (2) THE PROCESS FOR DETERMINING THE CLASS MEMBERS' ENTITLEMENT TO COMPENSATORY EDUCATION**

### I. INTRODUCTION

   Last summer, the Ninth Circuit made clear that the Class Members were entitled to a free and appropriate public education ("FAPE") under the Individuals with Disabilities Education Act ("IDEA") until they turn 22, not 20, as prescribed by Act 163.

   As the DOE has acknowledged, the Class includes all IDEA-eligible persons who (a) were under age 22, on July 1, 2010, and (b) became ineligible for Special Education and Related Services under IDEA as a result of Act 163.

Within this Class, there are two groups with different entitlements. On one hand, there are those who are now 20 or below whose right to a FAPE was never interrupted as a result of Act 163 (the "Young Class Members"); they are entitled to continued services as a result of this litigation, but they have no need for compensatory services.

On the other hand, there are others (some of whom are nearing age 26) whose right to a FAPE was ended prematurely due to Act 163. The majority of class members are in this latter group (the "Older Class Members"). Their sole remedy will be compensatory education, since IDEA does not support a claim for damages.

The DOE is taking at least two—and perhaps three--erroneous positions that require the Court's attention. First, it contends that there are only 441 Older Class Members. Second, it appears that (perhaps) the DOE contends that it, alone, is to determine the size of the Class. Third, and most importantly, the DOE contends that the Older Class Members have received all the relief they ever sought, the case has been resolved, and the provision of compensatory education services to the Older Class

Members is purely an administrative matter and no concern to Class Counsel or Court.

Plaintiffs reject the DOE's position regarding the size of the Class because statistics the DOE submitted to the U.S. Department of Education for the relevant school years show that the Class is many times larger than the DOE has claimed.

In that regard, if the DOE is contending that it, alone, decides who is within the Class, it is plainly wrong.  Class membership is clearly a matter for the Court to determine.

Finally, Plaintiffs reject the DOE's claim that this case is "over" and the class member's rights are to be addressed extra-judicially by the DOE.  The controlling case law establishes that compensatory education for the class members is a <u>judicial</u> remedy, not part of any administration process.  A master should be appointed to implement this remedy for all of the Older Class Members.

## II.  STATEMENT OF FACTS

The DOE claims there are only 441 Older Class Members. However, statistics it provided to the U.S. Department of Education tell an entirely different story.  Specifically, the DOE's submissions

(*see* http://hidoereports.k12.hi.us/IDEAPartB/Pages/default.aspx) show the following regarding the class members during the relevant school years:

| School Year | Aged Out (18-20) | Certificate | Dropout | Total |
|---|---|---|---|---|
| 2008-09 | 216 | 24 | 41 | 281 |
| 2009-10 | 69 | 107 | 245 | 421 |
| 2010-11 | 35 | 119 | 127 | 281 |
| 2011-12 | 41 | 147 | 150 | 338 |
| 2012-13 | 80 | 138 | 199 | 417 |
| 2013-14 | ? | ? | ? | ? |
| 2014-15 | ? | ? | ? | 157 (?)[1] |
| Totals | 431+ | 535+ | 762+ | 1885+ |

Whether special-education-eligible dropouts are included or not,[2] there are many more Older Class Members than the DOE has acknowledged.

Plaintiffs have repeatedly (through emails) asked the DOE to explain both (1) how it determined there are only 441 class

---

[1] This number—which seems suspiciously low—is from the DOE's presentation seeking additional funding for the 2014-15 budget. Exhibit A, attached.

[2] Dropouts are appropriately included since (a) they retained their right to re-enroll and resume their education at any time, and (b) due to Act 163, they were misinformed about their rights to continuing education at the time they left school. They are, at minimum, all entitled to an offer of compensatory education—whether they choose to participate is another matter.

members, and (2) how it explains the disparities between its current calculations and the information provided to the U.S. Department of Education. *See* Exhibits B and C. DOE has not given any meaningful response to these inquiries. It is necessary for the Court to act.

### III. ARGUMENT

#### A. THE DOE CANNOT ALONE DECIDE CLASS MEMBERSHIP

According to the DOE, the size of the Class was determined based on its "review of data related to every individual student." (*See* Exhibit B) The unexplained discrepancies in the DOE's "official" data and its reports to this Court make it clear that the DOE's "review" was inadequate and the Court must be engaged in determining class membership.

#### B. CASE LAW SUPPORTS AN AWARD OF COMPENSATORY EDUCATION

Under the IDEA, district courts have the power to "grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(e)(2) (2014). It is well-settled in the Ninth Circuit that compensatory education services can be awarded as "appropriate equitable relief" for violations of the IDEA. *Park ex rel. Park v.*

*Anaheim Union High Sch. Dist.*, 464 F.3d 1025, 1033 (9th Cir. 2006). Compensatory education is "designed to ensure that the student is appropriately educated within the meaning of the [Individuals with Disabilities Education Act]." *Parents of Student W. v. Puyallup Sch. Dist.*, No.3, 31 F.3d 1489, 1497 (9th Cir. 1994). When a FAPE has been denied, "it may be a rare case when compensatory education is not appropriate." *Id.*

In crafting a plan for compensatory education, the court must determine the amount and type of compensatory education services needed. *See R.P. v. Prescott Unified Sch. Dist.*, 631 F.3d 1117, 1126 (9th Cir. 2011); *G. v. Fort Bragg Dependent Sch.*, 343 F.3d 295, 309 (4th Cir. 2003) (explaining that "compensatory education involves discretionary, prospective, injunctive relief <u>crafted by a court</u>") (emphasis added)).

Equitable considerations, including the conduct of both parties, are relevant in this process. *Id.* at 1496 (citing *W.G. v. Board of Trustees of Target Range School Dist.*, 960 F.2d 1479, 1486 (9th Cir. 1992) (quotations omitted)). The ultimate purpose of compensatory education is to make up for educational services the

child should have received in the first place[3] and "to place disabled children in the same position they would have occupied but for the school district's violations of the IDEA." *See, e.g., Prescott Unified Sch. Dist.*, 631 F.3d at 1125 (citations omitted); *I.T. v. Dep't of Educ.*, Civil No. 11-00676 LEK-KSC, 2013 U.S. Dist. LEXIS 176695, 2013 WL 6665459, at *17 (D. Haw. Dec. 17, 2013) (citing *Dep't of Educ., Hawai'i v. Ria L.*, Civil No. 12-00007 HG-KSC, 2012 U.S. Dist. LEXIS 155484, 2012 WL 5383543, at *5 (D. Haw. Oct. 30, 2012) (citations omitted)).

### C. THE COURT SHOULD RECOMMEND THE APPOINTMENT OF A MASTER

Given the size of the Class and the complexity of the issues before the Court, a master should be appointed under FRCP 53(a) to evaluate exactly what kind and how much compensatory education is needed for each Older Class Member. The appointment is appropriate to assist the court with assessing the

---

[3] The Older Class Plaintiffs have gone without academic services, speech-language services, audiology services, psychological services, physical and occupational therapy, counseling services, pre-vocational services, and other related services that are essential to their educational growth and well-being since before this action was commenced four years ago.

facts and helping the court arrive at the correct result. *Porter ex rel. Porter v. Board of Tr. of Manhattan Beach Unified Sch. Dist.*, 123 F. Supp.2d 1187, 1194 (C.D. Calif. 2000), rev'd on other grounds, 307 F3d 1064 (9th Cir. 2002), cert. denied, 537 US 1194 (2003).

In fashioning a compensatory education award, the Court will need to address the difficult question of how the DOE's violation of IDEA affected each class member. The Court will need to determine what future services are needed to place individual class members in the position that they would have occupied but for DOE's failure to provide a FAPE. A master can assist the Court with these difficult and complex determinations and ensure that the compensatory education award takes into account the unique needs of each class member.

## IV. CONCLUSION

The Court should forthwith (1) order the DOE to provide the information needed to determine, with precision, the size of the Class; and (2) confirm that the determination of the Older Class Members' entitlement to compensatory education is to be

determined by the Court, with a master, not by the DOE through any administrative process.

DATED: Honolulu, Hawai`i, April 22, 2014.

        /s/ Paul Alston
PAUL ALSTON
LOUIS ERTESCHIK
MATTHEW C. BASSETT
JENNIFER V. PATRICIO
JASON H. KIM
Attorneys for Plaintiff