IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| E.R.K., by his legal guardian R.K.; R.T.D., through his parents R.D. and M.D.; HAWAI'I DISABILITY RIGHTS CENTER, in a representative capacity on behalf of its clients and all others similarly situated,<br><br>        Plaintiffs,<br><br>    vs.<br><br>DEPARTMENT OF EDUCATION, State of Hawai`i,<br><br>        Defendant. | Case No. 10-00436 SOM-KSC<br><br>**MEMORANDUM IN SUPPORT OF MOTION** |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ......................................................................1

II.   BACKGROUND ......................................................................4

    A.    Proceedings Before Judge Ezra and on Appeal...............4

    B.    Case Developments Since the Ninth Circuit Ruling.........5

III.  THE COURT MUST AWARD COMPENSATORY
      EDUCATION TO THE CLASS...................................................8

    A.    Compensatory Education Is a Well-Recognized
          Judicial Remedy for Violations of the IDEA.....................8

    B.    Compensatory Education Is Needed to Prevent Act
          163 From Illegally Denying a FAPE to Over 1,700
          Class Members ...........................................................12

    C.    Rule 23(b)(2) Certification Does Not Preclude the
          Court from Awarding Compensatory Education............13

IV.  A COURT-APPOINTED MASTER SHOULD OVERSEE THE
      AWARDS..............................................................................18

    A.    The DOE Processes are Inadequate to Administer
          Compensatory Education Awards to the Plaintiff
          Class .........................................................................19

    B.    The DOE Has Not Accepted Its Responsibility to
          Provide Services to the Class........................................21

    C.    A Special Master Can Provide the Oversight
          Required....................................................................24

V.    CONCLUSION ....................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997) .................................................................17

*B.H. v. Johnson,*
  715 F. Supp. 1387 (N.D. Ill. 1989) ...........................................24

*Baby Neal ex rel. Kanter v. Casey,*
  43 F.3d 48 (3d Cir. 1994) ........................................................25

*Board of Educ. v. L.M.,*
  478 F.3d 307 (6th Cir. 2007) ...................................................10

*E.R.K. ex rel. R.K. v. Hawaii Dep't of Educ.,*
  728 F.3d 982 (9th Cir. 2013) .......................................1, 4, 5, 12

*Ellis v. Costco Wholesale Corp.,*
  285 F.R.D. 492 (N.D. Cal. 2012) ..............................................18

*Emily Q v. Bonta,*
  Case No. CV 98-4181 AHM (C.D. Cal.) .....................................25

*Hawai`i Dep't of Educ. v. Zachary B. ex rel. Jennifer B.,*
  Civ. No. 08-499, 2009 WL 1585816
  (D. Haw. June 5, 2009) ................................................ 9, 11, 12

*I.T. ex rel. Renee T. v. Dep't of Educ.,*
  Civ. No. 11-676, 2013 WL 6665459
  (D. Haw. Dec. 17, 2013) ..........................................................11

*J.L. v. Mercer Island Sch. Dist.,*
  592 F.3d 938 (9th Cir. 2010) ...................................................11

*Jamie S. v. Milwaukee Public Schools,*
  668 F.3d 481 (7th Cir. 2012) .............................................*passim*

*M.C. ex rel. J.C. v. Central Regional Sch. Dist.,*
  81 F.3d 389 (3d Cir. 1996) ........................................................9

*Parents of Student W. v. Puyallup Sch. Dist., No. 3,*
   31 F.3d 1489 (9th Cir. 1994)...........................................9, 12, 22

*Park, ex rel. Park v. Anaheim Union High Sch. Dist.,*
   464 F.3d 1025 (9th Cir. 2006) (per curiam) ..........................9, 10

*R.P. ex rel. C.P. v. Prescott Unif. Sch. Dist.,*
   631 F.3d 1117 (9th Cir. 2011)...........................................10, 21

*Reid ex rel. Reid v. District of Columbia,*
   401 F.3d 516 (D.C. Cir. 2005) ...................................................10

*Streck v. Bd. of Educ. of the East Greenbush Central Sch. Dist.,*
   408 Fed. Appx. 411 (2d Cir. Nov. 30, 2010) ..............................11

*Vietnam Veterans of Am. v. C.I.A.,*
   288 F.R.D. 192 (N.D. Cal. 2012)...............................................18

*Wal-Mart Stores, Inc. v. Dukes,*
   __ U.S. ___, 131 S. Ct. 2541 (2011)....................................*passim*

**Federal Statutes and Regulations**

20 U.S.C.

   § 1400(d)(1)(A)..........................................................................21

   § 1412 ...................................................................................4, 16

   § 1414 ...................................................................................3, 20

   § 1415 ...................................................................................8, 20

34 C.F.R.

   §§ 300.01-300.06...................................................................20

   §§ 300.20-300.28...................................................................20

   § 300.324(b)(1)(ii).................................................................20

   §§ 300.500-300.515...............................................................20

**State Statutes**

Haw. Rev. Stat. § 302A-1134(c) [Act 163]...............................*passim*

**Other Authorities**

Fed. R. Civ. P. 23 ...................................................................*passim*

Fed. R. Civ. P. 53 .........................................................................19

## MEMORANDUM IN SUPPORT OF MOTION

## I.    INTRODUCTION

This class action was filed to obtain equitable relief compelling the Department of Education ("DOE") to provide services to Hawaii's special education students until they turn 22. The Class includes all special education students deemed ineligible to continue receiving services because of a 2010 statute ("Act 163") that terminates eligibility at age 20, even for students who had not obtained a regular diploma.

Judge Ezra denied all relief to the Class; the Ninth Circuit reversed, holding the DOE was—and is—required to provide services to the Class members under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400-1482 ("IDEA"), until they turn 22 or end their eligibility by earning a regular diploma. *See E.R.K. ex rel. R.K. v. Hawaii Dep't of Educ.*, 728 F.3d 982 (9th Cir. 2013).

Having vindicated its right to services, the Class now seeks compensatory education, which is a well-recognized <u>judicial</u> remedy for violations of the IDEA. However, the DOE denies that the Court can provide any further relief to the Class. It contends: (1) the Court cannot determine the Class members' rights to

compensatory education because this Class action was certified under Rule 23(b)(2) of the Federal Rules of Civil Procedure; and (2) the provision of compensatory education is to be decided through the DOE's administrative processes.

The DOE is wrong on both points. First, nothing in Rule 23(b)(2) precludes injunctive orders compelling compensatory education for the Class members and resolving disputes about the scope of that relief for individual Class Members. Second, because compensatory education is purely a judicial remedy, the DOE's self-administered process for drafting an individualized education plan ("IEP"), the related state-administered hearing process, and the appeal process under the IDEA do not provide a vehicle for establishing the nature and scope of a class member's right to compensatory services. The IDEA prescribes in great detail the extensive annual processes for developing a school child's IEP, explains exact procedures for how to conduct evaluations, requires specific meeting attendees and evaluations, and lays out goals for the current school year based on the child's testing and previous year's progress, all with the goal of assuring the disabled child

2

receives a free appropriate public education ("FAPE") during that school year.  *See* 20 U.S.C. § 1414.

But compensatory education for the adult Class Members—some of whom may be nearing age 26— is necessarily different.  Compensatory education, unlike the rule-bound administrative process, is not limited to what would be included in a FAPE but rather is prescribed with the simple goal of getting each Class Member to the level he or she would have achieved had Act 163 never been implemented.  Judicial oversight is particularly appropriate here, where the DOE's restrictive stance toward Class Membership and its position that the Class Members themselves (or their parents) must bear the burden of individually seeking out compensatory education show that the DOE intends to do as little as possible to actually provide services.

Therefore, Plaintiffs ask that the Court order compensatory education to make up for the services Act 163 made inaccessible.  Plaintiffs also ask that a special master oversee the implementation to resolve disputes and make sure the awards are made in a fair and efficient manner.

## II.    BACKGROUND

### A.    Proceedings Before Judge Ezra and on Appeal

Effective July 1, 2010, the Hawai`i state legislature
barred students from attending public school after the last day of
the school year in which they turned 20 years old.  *See E.R.K.*, 728
F.3d at 984.  Under Act 163:

> No person who is twenty years of age or over on the
> first instructional day of the school year shall be
> eligible to attend a public school. If a person
> reaches twenty years of age after the first
> instructional day of the school year, the person
> shall be eligible to attend public school for the full
> school year.

Haw. Rev. Stat. § 302A-1134(c) ("Act 163").  Because the IDEA
requires states to provide special education and related services
("SPED") to all children with disabilities residing in the state
"between the ages of 3 and 21, inclusive," 20 U.S.C. § 1412(a)(1)(A),
Plaintiffs filed this class action.

In March 2011, Judge Ezra, noting that it would be
"difficult to conceive of litigation that could present questions more
common than those at issue here," certified a Rule 23(b)(2) class of
all SPED-eligible individuals who became ineligible or would become
ineligible for the IDEA because of Act 163 (the "Class").  *See* Order
Granting in Part & Denying in Part Pls.' Mot. for Class Cert., ECF

No. 31, at 12-13, 18, 30-31; 728 F.3d at 986.  However, he

ultimately ruled that Act 163 did not violate the IDEA.  *See*

Findings of Fact, Conclusions of Law, & Decision, ECF No. 123.

The Ninth Circuit reversed this ruling, holding the Class

Members are entitled to SPED until they turn 22, unless they

earlier earn a regular diploma.  728 F.3d at 986-92.

**B.    Case Developments Since the Ninth Circuit Ruling**

On April 22, 2014, Plaintiffs filed a memorandum

regarding the size of the Class, as well as the process for

determining the Class Members' entitlement to compensatory

education.  ECF No. 162.  Plaintiffs noted that, based on the DOE's

own numbers, over 1,700 SPED-eligible young people were

disqualified from seeking additional SPED by Act 163 through the

2012-13 school year.  *See id.* at 4-5.[1]

---

[1] This number is based upon statistics the DOE reported to the
United States Department of Education regarding when and why
students exited from its special education program. Plaintiffs
include everyone who left before exhausting their eligibility at age
22 (including dropouts who retained the right to return).  See Decl.
Paul Alston ("Alston Decl.") ¶¶ 5-6 & Ex. A (summary table of DOE
statistics); Request for Judicial Notice ("RJN") Ex. C (original DOE
data).

The DOE responded by claiming that Plaintiffs had no need for names and contact information of the Class Members and that the Class Members could get no further relief in this case because they are required to pursue the DOE's administrative processes if they want to  receive any compensatory education.  *See* Def.'s Mem. Opp., Apr. 24, 2014, ECF No. 165 ("DOE 4/24/14 Opp."), at 2.  The DOE also claimed there were only 441 Class Members entitled to services.[2]  *Id.* at 5-6.

On April 25, 2014, Magistrate Judge Chang ordered the parties to meet and confer regarding the size of the Class and the nature of relief.  *See* ECF No. 166.  If no agreement could be reached, Magistrate Judge Chang directed the parties to present the issues to the Court.  On May 28, 2014, the parties met to discuss these issues, but were unable to reach agreement.  In particular, the DOE continued to insist that the Plaintiff Class was entitled to

---

[2] The DOE counts only those it thinks might return based upon its own secret analysis of the Class Members.  Alston Decl. ¶ 7 & Ex. B.  The DOE may well be right about the number of Class Members who will actually avail themselves of any compensatory education at this late date, but the Class includes all those who are eligible for relief, not just those who choose to take advantage of the services.

no post-remand judicial relief following the Ninth Circuit's order. Alston Decl. ¶ 4.

On February 24, 2014, the Governor, citing the Ninth Circuit's decision in this case, requested funding from the legislature of $3.665 million to fund additional special education for 157 students—which represents only the number of Class Members now attending school; it includes none of the students previously barred from receiving services by Act 163.  RJN Ex. D at 1; *see also id.* Ex. E at 1-2 (Mar. 18, 2014, letter from Kathryn Matayoshi seeking $3.67 million); *id.* Ex. F (DOE impact statement regarding same).  Startlingly, this figure equates to a per pupil expenditure of approximately $23,350.  The DOE chose this figure based on the average spent per special education pupil in 2012-13.  *See* Alston Decl. Ex. B (4/3/14 email from A. Snow).  This amount includes nothing for the extra costs associated with the special services needed by the Class Members who have been unable to qualify for a regular diploma by age 20.  Logic dictates that the needs of those students are greater than average and the costs must be greater, as well.

7

### III. THE COURT MUST AWARD COMPENSATORY EDUCATION TO THE CLASS

Contrary to Defendant's assertion (*see* ECF No. 165), there is no bar to an award of compensatory education to the Plaintiff Class.  Indeed, without such an award, the majority of Class Members will receive no remedy at all for the State's discrimination against them.

### A. Compensatory Education Is a Well-Recognized Judicial Remedy for Violations of the IDEA

The IDEA gives courts broad powers to "grant such relief as the court determines is appropriate."  20 U.S.C. § 1415(i)(2)(C)(iii).  As the Ninth Circuit has repeatedly recognized, this includes compensatory education.  *See, e.g., Park, ex rel. Park v. Anaheim Union High Sch. Dist.*, 464 F.3d 1025, 1034 (9th Cir. 2006) (per curiam) (affirming grant of compensatory education); *Parents of Student W. v. Puyallup Sch. Dist., No. 3*, 31 F.3d 1489, 1496 (9th Cir. 1994) ("There is no question that the district court had the power to order compensatory education.").

When a school district knows it is not providing appropriate services (and here, where none was provided, that is indisputable), the student is "entitled to compensatory education."

The award is not discretionary.  *M.C. ex rel. J.C. v. Central Regional Sch. Dist.,* 81 F.3d 389, 392 (3d Cir. 1996).

And, the DOE fundamentally misconceives the nature of compensatory education under the IDEA.  It is not part of the normal administrative process.  Rather, as this court and many others have explained, "[c]ompensatory education involves discretionary, prospective, injunctive relief **crafted by a court** to remedy what might be termed an educational deficit created by an educational agency's failure over a given period of time to provide a FAPE to a student."  *Haw. Dep't of Educ. v. Zachary B. ex rel. Jennifer B.*, Civ. No. 08-499 JMS/LEK, 2009 WL 1585816, at *9 (D. Haw. June 5, 2009) (internal quotation marks and alterations omitted) (emphasis added) (quoting *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 523 (D.C. Cir. 2005)).  Compensatory education "seeks to make up for educational services the child should have received in the first place, and aims to place disabled children in the same position they would have occupied but for the school district's violations of IDEA."  *R.P. ex rel. C.P. v. Prescott Unif.*

*Sch. Dist.*, 631 F.3d 1117, 1125 (9th Cir. 2011) (internal alterations, quotation marks, and citations omitted).[3]

It is, therefore, a flexible remedy, allowing **courts** to be "creative in fashioning the amount and type of compensatory education services to award." *Id.* at 1126.  For example, one ordered additional training for teachers.  *Park*, 464 F.3d at 1034. The Second Circuit recently ordered a school district to open and maintain for a three-year period an escrow account to pay for the cost of a learning disabled student's compensatory reading program at a college.  *Streck v. Bd. of Educ. of the East Greenbush Central Sch. Dist.*, 408 Fed. Appx. 411 (2d Cir. Nov. 30, 2010).  And, the Ninth Circuit and the courts of this district have recognized, compensatory education can be either a forward-looking or retroactive remedy.  *See, e.g., J.L. v. Mercer Island Sch. Dist.*, 592

---

[3] When compensatory education is awarded to a SPED-eligible student, neither administrative hearing officers nor the school's employees can reduce or discontinue the program.  *See, e.g., Board of Educ. v. L.M.*, 478 F.3d 307 (6th Cir. 2007); *cf. Reid*, 401 F.3d at 526-27 (IEP teams are not permitted to reduce compensatory education services).  In light of these rulings, the DOE's claim that it gets to prescribe its own compensatory awards (if any) for the Class Members is illogical.

F.3d 938, 946 (9th Cir. 2010) (retroactive); *Zachary B. ex rel. Jennifer B.*, 2009 WL 1585816, at *2 (prospective).

A recent IDEA case in this district is instructive on the critical role of the court in the assessment and award of compensatory education.  In *I.T. ex rel. Renee T. v. Dep't of Educ.*, Civ. No. 11-676 LEK/KSC, 2013 WL 6665459 (D. Haw. Dec. 17, 2013), after Judge Kobayashi determined that errors in the IEP process denied the plaintiff a FAPE, she initially sought to delegate the award of compensatory education to the hearings officer.  *See id.* at *1-*2.  The hearings officer misapplied the law and failed to provide a fully compensatory award.  *Id.* at *3-*5.  Judge Kobayashi was then faced with a second appeal wherein she corrected the hearings officer and ultimately made the reimbursement award herself.  *Id.* at *4-*6, *10.  The hearings officer's involvement, therefore, ultimately only multiplied the judicial proceedings and cost the plaintiff an additional year of litigation.  Even if it were proper to let the DOE prescribe its own compensatory programs—which it is not—the delays and added administrative burdens created for this Court and the Class make that imprudent, at best.

**B.    Compensatory Education Is Needed to Prevent Act 163 From Illegally Denying a FAPE to Over 1,700 Class Members**

The Ninth Circuit's ruling has now made clear that Act 163 denied a FAPE to the Plaintiff Class by illegally excluding the Class Members from public education.  *See* 728 F.3d at 984.  The compensatory education awards follow as a matter of course, allowing affected Class Members to make up for the time and services they should have been receiving all along in light of the Ninth Circuit's ruling.  *Cf. Zachary B.,* 2009 WL 1585816, at *9 (noting it is a "rare case" when compensatory education is not an appropriate remedy for an IDEA violation) (quoting *Parents of Student W.*, 31 F.3d at 1497).[4]

---

[4] The Court should consider all of the equities, including the parties' conduct, in making its award.  *See Parents of Student W.*, 31 F.3d at 1496 (*citing W.G. v. Bd. of Trustees of Target Range Sch. Dist.*, 960 F.2d 1479, 1486 (9th Cir. 1992)).   There can be no doubt that Plaintiffs (who bear no fault for the denial of their special education services) acted as quickly as possible to preserve their rights, filing suit the same month Act 163 went into effect.  *See* Compl., ECF No. 1 (filed July 27, 2010); Haw. Rev. Stat. § 302A-1134(c) (effective date July 1, 2010).  Plaintiffs twice sought to enjoin Act 163 from taking effect but were denied, which forced them to pursue litigation for three years before obtaining a ruling vindicating their rights.  *See* ECF Nos. 6, 53, 59, 79.  In the meantime, through no fault of their own, many Class Members were barred from seeking continued services.

### C.   Rule 23(b)(2) Certification Does Not Preclude the Court from Awarding Compensatory Education

Defendant urges the Court to rule that its equitable powers under the IDEA cannot be invoked here because this is a class action.  *See* DOE 4/24/14 Opp. at 3-8, citing *Wal-Mart Stores, Inc. v. Dukes*, __ U.S. ___, 131 S. Ct. 2541 (2011), and *Jamie S. v. Milwaukee Public Schools*, 668 F.3d 481 (7th Cir. 2012).  But nothing in Rule 23(b)(2) or either of these cases precludes injunctive orders compelling compensatory education for the Class Members and resolving disputes about the scope of that relief where needed.

*Wal-Mart* is about (1) lack of common injury found in over a million individual employment decisions and (2) the significance of monetary damages as requiring a 23(b)(3) class.  Neither inform the outcome of this case.  In *Wal-Mart*, the Supreme Court overturned the certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure because plaintiffs did not present sufficient evidence suggesting that the one and a half million employment decisions at issue could be linked to a common pattern or practice in place at Wal-Mart.  *See* 131 S. Ct. at 2550-57.  The Court also found that the plaintiffs' backpay claims were not properly certified under Rule 23(b)(2) because that Rule did not

permit claims for monetary relief (with the possible exception of monetary relief "incidental to the injunctive or declaratory relief"). *Id.* at 2557-61.

In *Jamie S.,* the Seventh Circuit overturned the class certification of plaintiffs who alleged they were harmed by "nearly every aspect" of the Milwaukee Public Schools' implementation of the IDEA.  668 F.3d at 485.  The plaintiffs sought structural reform of the special education program in Milwaukee.  *Id.* at 484-85.  The putative class therefore included any child eligible for special education who was denied or delayed entry into the IDEA process (for any reason).  *Id.* at 495.  After finding in favor of the plaintiffs, the exclusive form of relief ordered consisted of a "complex remedial scheme," overseen by the court, to (1) identify disabled children who were delayed or denied entry into the IEP process, (2) implement "hybrid" IEP meetings, and (3) craft compensatory education remedies.  *Id.* at 485.  The Seventh Circuit held that the class was "fatally indefinite" because many class members could not be identified, and lacked commonality because the putative class did not suffer a truly common harm.  *Id.* at 493, 495-98.  Moreover, the 23(b)(2) certification was improper because the class could not

benefit from any single injunction, and individuals needed to opt-in to even be evaluated for membership in the class. *Id.* at 498-99.

The DOE's arguments based upon *Wal-Mart* and *Jamie S.* are off-base for several reasons. First, the viability of the Class is not open for discussion. The DOE litigated and lost its challenge to the class certification more than three years ago. Defendant did not pursue an interlocutory appeal following Judge Ezra's March 2011 certification order and has never subsequently sought to decertify the Class. Therefore, unlike the plaintiffs in *Wal-Mart* and *Jamie S.*, Plaintiffs' Class stands and Plaintiffs are entitled to all remedies available to their Rule 23(b)(2) Class. As the Supreme Court emphasized in *Wal-Mart*, these remedies do not include damages but *do* include declaratory and injunctive relief. *See* 131 S. Ct. at 2560.

Second, neither *Wal-Mart* nor *Jamie S.* dictates the result here because, as Judge Ezra made clear, the plaintiffs in this case have a common injury (denial of a FAPE) that is based on a common reason (implementation of Act 163). *See* Order, ECF No. 31, at 17-18 ("The common question of law at issue before the Court is whether Act 163 is sufficient to override the IDEA's default

age limitations in 20 U.S.C. § 1412(a). . . . Whether Act 163 alone provides sufficient grounds to deny special education students a FAPE is the sole purpose of this litigation."). Unlike in *Jamie S.*, children who are classified by Defendant as being entitled to special education services but were made ineligible by Act 163 due to their age are automatically members of the Class, do not have to opt-in, and do not have to make a further claims to receive relief because the illegal policy has been lifted.[5]

Here, the primary relief sought was the declaratory relief that served to vindicate the rights of special-education students throughout the state to receive a FAPE through their twenty-second birthday. This is entirely consistent with Rule 23(b)(2), which allows for class litigation where "the party opposing the class has acted or refused to act on grounds generally applicable to the class,

---

[5] For this reason, the compensatory education sought here bears no more than a superficial similarity to the wide-ranging educational program rejected in *Jamie S*. There, the court could not award any classwide relief at all—indeed, individualized efforts were required to even identify the disabled children who would form the class membership. 668 F.3d at 495-96. The remedial scheme amounted to the court taking over the implementation of the IDEA for the state. Here, significant classwide declaratory relief was possible and was in fact obtained. The remaining relief requested is discrete in nature and applies to a fixed group.

thereby making appropriate final injunctive or corresponding declaratory relief with respect to the class as a whole . . . ."[6]

The compensatory education now being sought for the Class Members is an additional, necessary remedy to provide education and related services they should have received in the first place but for Act 163.  Nothing in Rule 23(b)(2), *Wal-Mart*, or *Jamie S.* prohibits this equitable, non-monetary injunctive remedy where a class has been properly certified under the Rule.  Plaintiffs, who sought in their Complaint an injunction prohibiting the DOE from failing to provide them a FAPE, cannot ask the Court to turn back the clock, but they are entitled to the only equitable remedy intended specifically to make up for Plaintiffs' lost FAPEs over the past four years.  *See* ECF No. 31 (Order Certifying Class); Compl., ECF No. 1, at 16-17 (seeking injunction to "enjoin the DOE from failing to provide FAPEs" to Class Members until they reach 22 and "further relief" deemed just and proper by the Court); *cf. Vietnam Veterans of Am. v. C.I.A.*, 288 F.R.D. 192, 207-08, 218 (N.D. Cal.

---

[6] Indeed, civil rights lawsuits such as these are widely-recognized as the foundation of the addition of subsection (b)(2) to Rule 23.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997) ("[c]ivil rights actions against parties charged with unlawful, class-based discrimination are prime examples" of Rule 23(b)(2) cases").

2012) (certifying, post *Wal-Mart*, Rule 23(b)(2) class of veterans alleging the government experimented on class members without obtaining informed consent and seeking as remedy appropriate medical services for each class member).  Therefore, the Court should exercise its powers to order compensatory education for the affected Class Members.[7]

## IV.   A COURT-APPOINTED MASTER SHOULD OVERSEE THE AWARDS

Given the size of the Class and the complexity of issues before the Court, the Court should appoint a master, pursuant to Rule 53(a) of the Federal Rules of Civil Procedure, to evaluate exactly what kind and how much compensatory education is needed for each affected Class member.  The appointment will assist the Court in assuring that its compensatory education award is actually implemented and is done so expeditiously and fairly.

---

[7] In the alternative, should the Court decide that this relief should be granted under the auspices of a Rule 23(b)(3) class certification, Plaintiffs seek leave to make such a motion.  *See* Fed. R. Civ. P. 23(c)(4) (permitting issue-based certification); *see, e.g.*, *Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 535-39 (N.D. Cal. 2012) (certifying Rule 23(b)(3) class in employment discrimination suit for purposes of determining monetary and "rightful place" equitable relief and Rule 23(b)(2) class for purposes of declaratory and injunctive relief as to legality of defendant's practices).

**A.    The DOE Processes are Inadequate to Administer Compensatory Education Awards to the Plaintiff Class**

The DOE asserts that it, not the Court, should award compensatory education to affected Class Members, and those Class Members who desire compensatory education should simply be instructed to return to the DOE.  *See* DOE 4/24/14 Opp. at 9. As discussed above, this proposal is fundamentally improper because compensatory education is a judicial remedy, not one to be provided at the discretion of the Defendant.

Moreover, as a practical matter, the DOE lacks procedures for making the compensatory education awards this Class is entitled to receive.  The DOE's processes for implementing the IDEA follow procedures designed to manage a given year of education for young children through high schoolers.  *See* 20 U.S.C. § 1414.  There are processes for initial and annual evaluations of children using tests and assessments (§ 1414(a)-(d); 34 C.F.R. §§ 300.01-300.06), processes for conceiving, drafting, and reviewing a school child's IEP (which focus on the participation and approval of the child's parents, as well as his or her current teachers) (20 U.S.C. § 1414(d); 34 C.F.R. §§ 300.20-300.28), and benchmarks for the current school year across various categories

based on the child's testing and previous year's progress (20 U.S.C. § 1414(d)(1)(A)).  As the year progresses, the school is expected to work toward these benchmarks and then revise the IEP if necessary.  *See* 34 C.F.R. § 300.324(b)(1)(ii).  If the school and the parents disagree, an administrative appeals process is designed to resolve these disputes.  20 U.S.C. § 1415; 34 C.F.R. §§ 300.500-300.515.  The goal of these IDEA procedures is to provide the child with a FAPE for that year.  *See* 20 U.S.C. § 1400(d)(1)(A); *R.P.*, 631 F.3d at 1121.

By contrast, this Class consists of young adults who have already exited the DOE.  They do not regularly attend school, and many may have jobs or other daily occupations that will not allow them to simply rejoin high school for the purpose of obtaining compensatory educational services.  During the process of making a compensatory education award, many of the adult Class Members themselves, not their parents, will be the primary point of contact in making decisions about how to provide services.  And, of course, they do not have existing teachers or IEPs.

Because the compensatory education follows as a matter of course from the Ninth Circuit's holding striking down Act 163,

the goal of the compensatory education is not limited to moving a child through a year of school or providing a FAPE; rather the goal is to get each Class Member to the level he or she should have achieved but for Act 163. *Cf. R.P.*, 631 F.3d at 1125. This requires flexible awards of services that accommodate the unique circumstances of this Class and are not tied to the rule-bound IEP/FAPE process. The court, which is empowered to account for equitable considerations in making awards of services, *see Parents of Student W. v. Puyallup Sch. Dist., No. 3*, 31 F.3d 1489, 1496 (9th Cir. 1994), is therefore in the best position to determine the proper type of services, the most efficient way to get the services to the Class Member, and the length of time over which services will be provided.

**B.     The DOE Has Not Accepted Its Responsibility to Provide Services to the Class**

Finally, the DOE has already made it clear that it has not accepted its obligations and intends to do as little as possible to provide the Class Members with additional services.

The DOE proposal that the Class Members simply be directed to return to the DOE to "exhaust" the "administrative process," *see* DOE 4/24/14 Opp. at 9, would unfairly burden Class

Members and likely render the compensatory education remedy meaningless. Some of the disabled Class Members are being cared for by parents; requiring these parents to carry the burden of individually initiating and pursuing a DOE-controlled administrative proceeding (instead of proceeding on the premise that every Class member is presumptively entitled to judicially prescribed compensatory services implemented in a streamlined manner) would impose an enormous (and unnecessary) burden on these families. Nor should Class Members living independently be expected to bear the burden of seeking out the appropriate educational forum or pursuing their compensatory education remedies.

Despite evidence that the Class numbers well over 1,700, *see* Alston Decl. Ex. A; RJN Ex. C, the DOE continues to insist there are fewer than 450 individuals in the Class. Alston Decl. Ex. B; DOE 4/24/14 Opp. at 5-6. And despite direct questioning from Plaintiff's counsel on this issue, counsel for the DOE has never offered any reason why it is justified offering compensatory education to fewer than one-quarter of the individuals who were harmed by Act 163. *See* Alston Decl. Ex. B.

Astonishingly, the DOE's 2014 legislative funding request—which followed months after the Ninth Circuit's decision—sought additional special education funding for only 157 students, in an amount of only about $23,350 per student.  *See* RJN Exs. D-F; Alston Decl. Ex. B.  This can only be construed as bad faith, as the DOE was well aware that its own statistics indicated the DOE would need to prepare to serve a significantly higher number of students.  Moreover, the average-per-pupil dollar figure the DOE selected is much too low.  It fails to account for the fact that this Class includes some of the neediest special education students who, at age 20, are still unable to obtain a regular diploma.

It is clear that the DOE is taking an extremely restrictive view of its duty to provide compensatory education.  Vesting the DOE with administration of the compensatory education remedy would therefore result in the DOE's offering compensatory education to only a fraction of the number of persons who are actually entitled to it and devoting a fraction of the resources needed.  The DOE's counterproductive positions amply demonstrate the need for oversight by an impartial special master to represent the court.

### C.   A Special Master Can Provide the Oversight Required

If the Court's award of compensatory education is to be meaningful, it requires proactive oversight and implementation.  For this reason, courts have recognized that continuing oversight by a judge or special master is often a necessary component of class-wide relief associated with civil rights claims.

For example, in *B.H. v. Johnson*, 715 F. Supp. 1387 (N.D. Ill. 1989), the district court certified a class of children in the custody of a child welfare agency seeking challenge the agency's failure to provide children with follow-up caseworkers to work with the family, to arrange for appropriate services, and to oversee the children's medical and educational needs.  Among other things, the class sought an injunction requiring the defendant to submit a plan assuring legally adequate care and treatment and the appointment of a master to determine the adequacy of the plan and to oversee its implementation.  *See id.* at 1389 (noting class certification order), 1392*; see also Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 63 (3d Cir. 1994) (explaining the purpose of court's involvement in injunctive relief to remedy foster care system would be to "assure that [Department of Human Services] had an adequate mechanism

for generating and monitoring appropriate case plans"); *Emily Q v. Bonta*, Case No. CV 98-4181 AHM (AJWx), Appointment of Richard Saletta as Special Master, C.D. Cal. Feb. 21, 2008, ECF No. 531 (approving appointment of special master to ensure that defendant California Department of Mental Health grant class members access to the therapeutic behavioral services to which they were entitled) (RJN Ex. B).

A special master will provide an impartial and efficient way for the Court to ensure that the affected Class Members are properly identified, promptly assessed for the services they need in order to place the individual in the position he or she would have occupied but for Act 163, and receive those services without having to enter a contested administrative process.  The special master will allow the Court to properly implement the compensatory education remedy contemplated by the IDEA and judicial precedent.

## V.   CONCLUSION

Therefore, for the reasons set forth above, Plaintiffs respectfully request that the Court order compensatory education services be awarded to Class Members who were prematurely aged out of Hawaii's public education system by Act 163, and appoint a

special master to provide judicial oversight of the compensatory

education awards.

DATED: Honolulu, Hawai`i, June 16, 2014.


/s/ Paul Alston
PAUL ALSTON
MICHELLE N. COMEAU
Attorneys for Plaintiffs