IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| E.R.K., by his legal guardian R.K., R.T.D., through his parents R.D. and M.D.; HAWAI`I DISABILITY RIGHTS CENTER, in a representative capacity on behalf of its clients and all others similarly situated,<br><br>       Plaintiffs,<br><br>  vs.<br><br>DEPARTMENT OF EDUCATION, State of Hawai`i,<br><br>       Defendant. | Case No. 10-00436 SOM-KSC<br><br>**MEMORANDUM IN SUPPORT OF MOTION** |

TABLE OF CONTENTS

I.      INTRODUCTION ....................................................................1

II.     NATURE OF THE CASE ........................................................2

III.    ARGUMENT ..........................................................................5

        A.      The IDEA Authorizes an Award of Attorneys' Fees to
                a Prevailing Party, and Plaintiffs are the Prevailing
                Parties Here ................................................................5

        B.      The Requested Attorneys' Fees Are Reasonable ...............6

                1.      The Lodestar Framework.........................................6

                2.      The Hourly Rates are Reasonable ...........................9

                3.      The Hours were Reasonably Expended ................14

IV.     CONCLUSION ....................................................................17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Aguirre v. L.A. Unif. Sch. Dist.,*
 461 F.3d 1114 (9th Cir. 2006) .....................................................6

*Blum v. Stenson,*
 465 U.S. 886 (1984) ..............................................................8, 9

*Cabrales v. Cnty. of L.A.,*
 935 F.2d 1050 (9th Cir. 1991) ..................................................14

*Cunningham v. County of Los Angeles,*
 879 F.2d 481 (9th Cir. 1988) .....................................................8

*Davis v. City & County of San Francisco,*
 976 F.2d 1536 (9th Cir. 1992), *vacated in part on other*
 *grounds,* 994 F.2d 345 (9th Cir. 1993)......................................8

*Hensley v. Eckerhart,*
 461 U.S. 424 (1983) .............................................................6, 14

*Jordan v. Multnomah Cnty.,*
 815 F.2d 1258 (9th Cir. 1987) ....................................................9

*Kaleikini v. Yoshioka,*
 129 Hawai`i 454, 304 P.3d 252 (2013).....................................11

*Kerr v. Screen Extra Guild, Inc.,*
 526 F.2d 67 (9th Cir. 1975)........................................7, 8, 9, 12

*Missouri v. Jenkins,*
 491 U.S. 274 (1989) ................................................................11

*Morales v. City of San Raphael,*
 96 F.3d 359 (9th Cir. 1996).................................................7, 8, 9

*Moreno v. City of Sacramento,*
 534 F.3d 1106 (9th Cir. 2008)..................................................15

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air,*
    483 U.S. 711 (1987) ....................................................................7

*Perdue v. Kenny A. ex. rel Winn,*
    130 S.Ct. 1662 (2010) .................................................................7

*E.R.K. ex rel. R.K. v. Haw. Dep't of Educ.,*
    728 F.3d 982 (9th Cir. 2013) ..................................................3, 9

*Tirona v. State Farm Mut. Auto. Ins. Co.,*
    821 F. Supp. 632 (D. Haw. 1993) ...........................................14

## Statutes

20 U.S.C. § 1400(d)(1)(A) ...............................................................2

20 U.S.C. § 1412(a)(1)(B) ................................................................3

20 U.S.C. § 1415(i)(3)(B)(i)(l) .........................................................2

HRS § 302A-1134(c) (2010) ............................................................3

## Other Authorities

Fed. R. Civ. P. 23(h), 54(d)..............................................................2

Fed. R. Evid. 807 ...........................................................................11

Fed. R. Evid. 803(17)......................................................................11

L.R. 54.3........................................................................................2, 15

## MEMORANDUM IN SUPPORT OF MOTION

## I.    INTRODUCTION

Plaintiffs prevailed in this action challenging the DOE's class-wide denial of a free appropriate public education to thousands of disabled young adults between 2010 and 2014. Plaintiffs won a ruling from the Ninth Circuit in 2013 that directly resulted in the repeal of the law by which the Class Members were excluded from school at ages 20 and 21.  In August 2014, Judge Mollway ruled that the older Class Members, some 1,800 individuals, are entitled to "compensatory services to make up for the services missed as a result as that improper determination of ineligibility."  *See Order Granting in Part and Denying in Part Plaintiff's Motion for Award of Compensatory Education and Appointment of Special Master; Order Denying Defendant's Motion for the Court to Determine the Appropriate Forum and Process for Evaluating Compensatory Education Claims of Class Members,* filed August 22, 2014 [ECF No. 187], attached as Exhibit 1 to the Declaration of Paul Alston ("Alston Decl.").

As the prevailing party in this complex class action under the Individuals with Disabilities Education Act ("IDEA"), Plaintiffs

are entitled to an interim award of their attorneys' fees incurred up to August 22, 2014, the date of Judge Mollway's order, totaling **$234,849.20** ($221,215.10 to AHFI and $13,734.10 to HDRC). *See* 20 U.S.C. § 1415(i)(3)(B)(i)(l); Fed. R. Civ. P. 23(h), 54(d); L.R. 54.3.[1] These fees were reasonably and necessarily incurred in prevailing on Plaintiffs' underlying claim—to win repeal of Act 163—as well as winning a classwide right to compensatory education for individuals who were affected by Act 163 for the four years it was effective.

## II.   NATURE OF THE CASE

The IDEA seeks to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living." 20 U.S.C. § 1400(d)(1)(A).

---

[1] Plaintiffs have already sought and recovered their appellate fees associated with the successful Ninth Circuit appeal in this case. *See* Alston Decl. Ex. 3. This application therefore excludes hours expended on the appeal. It also does not include time expended by Plaintiffs following Judge Mollway's award of compensatory education; fees associated with that time will be sought at a later date. In addition, AHFI has discounted its fees sought by approximately 14% (a total discount of $37,192.33 including GET). *See* Alston Decl. ¶19.

The IDEA confers this right on children and young adults until they graduate with a diploma or reach the age of 22.  *See* 20 U.S.C. § 1412(a)(1)(B).

Plaintiffs brought this class action in July 2010 after the State of Hawai`i enacted Act 163, a law forcing special education students to exit school at age 20.  *See* ECF No. 1; HRS § 302A-1134(c) (2010).  Act 163 purported to terminate eligibility for education in the public schools for students who were twenty years of age or over on the first day of the school year.

On March 15, 2011, the Court certified the Class.  ECF No. 31.  The case then proceeded through discovery and trial.  Plaintiffs lost at trial and appealed to the Ninth Circuit.  *See* ECF Nos. 123, 125.  On August 28, 2013, the Ninth Circuit reversed the District Court's ruling, held that Act 163 violated the IDEA, and remanded the case back to the District Court for further proceedings.  *See E.R.K. ex rel. R.K. v. Haw. Dep't of Educ.*, 728 F.3d 982 (9th Cir. 2013), Alston Decl. Ex. 2.

Following the Ninth Circuit's ruling, the State legislature repealed Act 163, thereby ensuring a right to continued special education services for thousands of disabled young adults.[2]

Shortly after the mandate issued, on October 1, 2013, the District Court conducted a status conference regarding the DOE's obligation to notify plaintiffs of the decision.  ECF No. 142. However, by February 2014, the DOE had failed to notify any plaintiff and was refusing to provide the identity and contact information of the plaintiffs to Class Counsel.  Plaintiffs were forced to make a motion on this issue, which was granted.  *See* ECF No. 146 (*Motion to Compel the DOE to Release Plaintiff Identifying Information to Counsel*); ECF No. 155 (compelling DOE to release information).

The parties then engaged in discussions in an effort to settle the case and obtain a fair remedy for the Class Members who had been wrongly excluded during the pendency of Act 163. Settlement talks were not successful, in part because the DOE

---

[2] *See* http://lrbhawaii.org/reports/legrpts/lrb/2014/passed14.pdf (repealing legislation found at Act 215 / SB 2134); http://lrbhawaii.org/reports/legrpts/lrb/2014/acts14.pdf (repeal effective July 7, 2014).

failed to provide identifying information and insisted there were only approximately 400 individuals eligible for compensatory services, despite federally-mandated reports in which the DOE conceded there were over 1,600 Class Members.  The DOE also insisted that the Class was entitled to no further remedy beyond the repeal of Act 163.  Alston Decl. ¶ 20.

Plaintiffs then moved for compensatory education and for the release of the true number of Class Members.  *See* ECF No. 173; *see also* ECF Nos. 172-182 (full briefing).  After a hearing, the Court granted Plaintiffs' motion for compensatory education.  The Court also ordered the DOE to provide the Class Members' contact information.  *See* ECF No. 187.

## III.   ARGUMENT

### A.   The IDEA Authorizes an Award of Attorneys' Fees to a Prevailing Party, and Plaintiffs are the Prevailing Parties Here

As the Ninth Circuit recognized in its fee order for the appeal, Plaintiffs are the prevailing parties in this case.  *See* Alston Decl. Ex. 3 (Fee Award) at 3-5.  As the court further noted, the IDEA provides that "in any action or proceeding brought under this section, the court, in its discretion, may award reasonable

attorneys' fees as part of the costs – to a prevailing party." *Id.* at 2 (quoting 20 U.S.C. § 1415(i)(3)(B)).

Plaintiffs have won class certification, a Ninth Circuit decision ensuring that thousands of individuals will receive access to two additional years of IDEA services to which they are entitled under federal law, and an order granting compensatory education to up to 1,800 additional Class Members.  These unquestionably represent significant victories to the Class Members.

### B.    The Requested Attorneys' Fees Are Reasonable

#### 1.    The Lodestar Framework

To calculate reasonable attorneys' fees, courts apply the general "lodestar" calculation set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  *See e.g.*, *Aguirre v. L.A. Unif. Sch. Dist.*, 461 F.3d 1114, 1121 (9th Cir. 2006) (applying "the standards set forth . . . in *Hensley* and its progeny" to an award of attorney fees in IDEA cases).  The lodestar amount requires that the court multiply "a reasonable hourly rate" by "the number of hours reasonably expended on the litigation."  *Hensley*, 461 U.S. at 433.

A "reasonable" hourly rate and "reasonable" hours expended include considerations of (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill

requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, and (5) the "customary fee."  *See Kerr v. Screen Extra Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975); *Morales v. City of San Raphael*, 96 F.3d 359, 364 n.9 (9th Cir. 1996) (explaining the first five "Kerr factors" are subsumed in the lodestar calculation).

The lodestar calculation "produces an award that **roughly** approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A. ex. rel Winn,* 130 S.Ct. 1662, 1672 (2010) (emphasis in original). The lodestar method yields a fee that is presumptively reasonable to "induce a capable attorney to undertake the representation of a meritorious civil rights case." *Id.*

Once calculated, the lodestar is presumptively reasonable.  *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 728 (1987).  However, the Court may

adjust the lodestar amount based on an evaluation of certain

additional factors articulated in *Kerr,* including:[3]

- Time limitations imposed by the client or the circumstances;

- The amount involved and the results obtained;

- The experience, reputation, and ability of the attorneys;

- The "undesirability" of the case;

- The nature and length of the professional relationship with the client; and

- Awards in similar cases.

*Kerr,* 526 F.2d at 70.

Finally, the Court should disregard the non-profit public

interest law firm status of HDRC.  The law is clear that non-profit

law firms are entitled to recover fees under the same calculation as

---

[3] The other *Kerr* factors previously identified as probative on the issue of reasonableness of a fee award (*see Kerr*, 526 F.2d at 69-70), are now subsumed within the initial calculation of the lodestar amount, including the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained.  *Blum v. Stenson,* 465 U.S. 886, 898-900 (1984); *see also Cunningham v. County of Los Angeles,* 879 F.2d 481, 487 (9th Cir. 1988); *Morales,* 96 F.3d at 364 n.9.  A sixth factor, whether the fee is fixed or contingent, may not be considered in the lodestar calculation.  *Davis v. City & County of San Francisco,* 976 F.2d 1536, 1549 (9th Cir. 1992), *vacated in part on other grounds,* 994 F.2d 345 (9th Cir. 1993)).

applied to any other law firm.  *See Blum v. Stenson,* 465 U.S. 886, 895 (1984).

## 2.  The Hourly Rates are Reasonable

"The prevailing market rate in the community is indicative of a reasonable hourly rate."  *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262 (9th Cir. 1987) (citing *Blum*, 465 U.S. at 895 n.11).  The Court also considers the novelty and difficulty of the issues and the skills required to properly provide the services required to successfully litigate the case as a part of the lodestar determination of rates.  *See Kerr*, 526 F.2d at 70; *Morales*, 96 F.3d at 364 n.9.

Here, this matter is a challenging combination of both a civil rights lawsuit and a complex class action alleging systemic violations of federal law.  The DOE contended that its network of adult education schools, the Community Schools for Adults, were not "free public education" under the IDEA and so the DOE was permitted to direct non-disabled students to the Community Schools without running afoul of the IDEA.  *See* 728 F.3d at 987-88.  Plaintiffs conducted significant discovery and, although they lost before the District Court, they successfully refuted the DOE's

claim before the Ninth Circuit.  Post-remand, Plaintiffs have faced

significant resistance from the DOE to Plaintiffs' efforts to identify

and locate Class Members and won a hard-fought motion to remedy

the State's IDEA violation through an award of compensatory

education to all affected Class Members.  In short, this case is

much more complex than the ordinary single-plaintiff IDEA lawsuit.

Complex cases may also require more resources and

different skills than civil rights lawyers working in solo practice,

small firms, or non-profit organizations working alone can feasibly

supply.  *See LV v. N.Y. City Dep't of Educ.*, 700 F. Supp. 2d 510,

517 (S.D.N.Y. 2010); Alston Decl. ¶ 12.  Courts may therefore look

to rates charged by firms that are "similarly situated, including the

rates of firms that are comparably sized."  *LV*, 700 F. Supp. 2d at

517 (internal quotation marks and citation omitted).

Plaintiffs have substantiated their requested hourly rates

by reference to: (1) the Ninth Circuit's recent fee award in the

appeal of this very case; (2) this Court's recent awards of fees and

hourly rates for Mr. Alston, as well as non-partners and associates;

and (3) by submitting excerpts from Pacific Business News 2014

Book of Lists, which lists and highlights the current prevailing rates

in the community charged by various law firms in the State of

Hawai`i, ranked by size. [4]   *See* Alston Decl. Exs. 3, 6.  Accordingly,

Plaintiffs request the following hourly rates, which are

representative of (1) the attorneys' customary fees for like work

(complex class action legal services and civil rights legal services);

and (2) the customary fees for like work prevailing in Honolulu,

Hawai`i:[5]

---

[4]  This list is admissible under Federal Rules of Evidence 803(17) regarding market and commercial publications, including lists, that are generally used and relied upon by the public or by persons in particular occupations, as well as under Fed. R. Evid. 807, related to residual exceptions, which will serve the interest of justice by the admission of the statement into evidence.  The Hawai`i Supreme Court has relied on this list as evidence of the reasonable of rates. *See Kaleikini v. Yoshioka*, 129 Hawai`i 454, 473, 304 P.3d 252, 271 (2013).

[5] Furthermore, Plaintiffs' counsel is entitled to receive their current hourly rates, as opposed to their billing rates at the time the lawsuit was filed.  *Missouri v. Jenkins*, 491 U.S. 274 (1989) ("an appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates or otherwise is within the contemplation of [§ 1988].") (internal citation omitted).  In that case, as is the case here, the fees were paid several years after services were rendered.  The Court found that receiving fees years later that were calculated on the hourly rates in effect at the time the services were rendered would not be equivalent to receiving fees paid reasonably promptly as the legal services were performed, as would be the case with private billings.

**AHFI**

| Name | Title | Rate/ Hour | Years of Practice/ Experience |
|---|---|---|---|
| Paul Alston | Partner | $628.60[6] | 43 years |
| Shelby A. Floyd | Partner | $450.00 | 38 years |
| Chrystn K.A. Eads | Associate | $330.00 | 20 years |
| Jason Kim | Associate | $318.27[7] | 15 years |
| Aryanna Abouzari | Associate | $250.00 | 7 years |
| Michelle N. Comeau | Associate | $250.00 | 8 years |
| Claire W. Black | Associate | $250.00 | 8 years |
| Maile B. Osika | Associate | $175.00 | 3 years |
| Kyu (Mike) Y. Paek | Associate | $175.00 | 3 years |
| Kelly Guadagno | Paralegal | $132.61[8] | 20 years |

---

[6] Mr. Alston's rate is significantly reduced from his current billing rate of $750 per hour.  Under *Kerr*, this weighs in favor of a finding of reasonableness, as Mr. Alston could have accepted commercial litigation work at this higher hourly rate instead of pursuing public interest litigation.  *See Kerr*, 562 F.2d 67 (factor to consider when evaluation hourly rate is the preclusion of other employment by the attorney due to the acceptance of the case).  The listed rate of $628.60 represents the rate he was awarded by the Ninth Circuit ($592.52) for work associated with the appeal **in this case**, adjusted for inflation of 3% per year from the date of the Ninth Circuit fee application in September 2013.  *See* Alston Decl. ¶ 17(a); Ex. 3.

[7] The Ninth Circuit set Mr. Kim's rate at $300 for work associated with this appeal in this case.  *See id.* Ex. 3 at 9.  The listed rate adjusts for inflation.  *See* n.6, above.

| Name | Title | Rate/ Hour | Years of Practice/ Experience |
|------|-------|-----------|------------------------------|
| Trisha C. Gibo Thomas F. Moriarty Aubry Wand | Law Clerks | $125.00 | N/A |
| Jya Bunch Sherri L. Meyer | Document Analyst | $50 | |

**HDRC**

| Name | Title | Rate/ Hour | Years of Practice/ Experience |
|------|-------|-----------|------------------------------|
| Louis Erteschik | Attorney | $300.00 | 43 years |
| Matthew C. Bassett | Attorney | $302.36[9] | 15 years |
| Jennifer V. Patricio | Attorney | $225.00 | 8 years |

These rates are reasonable in light of the experience, background and skills of the attorneys and staff involved.

---

(...continued)

[8] The Ninth Circuit set Ms. Guadagno's rate at $125 for work associated with the appeal in this case.  *See id.* Ex. 3 at 10.  The listed rate adjusts for inflation.  *See* n.6, above.

[9] The Ninth Circuit set Mr. Bassett's rate at $285 for his work associated with the appeal in this case.  *See* Alston Decl. Ex. 3 at 10.  The listed rate adjusts for inflation.  *See* n.6, above.

### 3.    The Hours were Reasonably Expended

Hours are reasonably expended where they are associated with the relief sought and "are reasonably necessary to achieve the results obtained."  *See Tirona v. State Farm Mut. Auto. Ins. Co.*, 821 F. Supp. 632, 636 (D. Haw. 1993).  "[T]he extent of a [prevailing party's] success is a crucial factor in determining the proper amount of an award of attorney's fees[.]"  *Hensley*, 461 U.S. at 440.  Thus, where a plaintiff "obtain[s] essentially complete relief," counsel is "entitled to an award of fees for **all time reasonably expended** in pursuit of the ultimate result achieved."  *Id.* at 431 (internal quotation marks omitted).[10]

In light of these considerations, Plaintiffs' requested fees were reasonably and necessarily incurred to achieve an injunction requiring that the State comply with the IDEA law.  A summary of all work performed by HDRC and AHFI at each phase of litigation is set forth in the attached Exhibits 4 and 7 respectively, as required

_____

[10] Indeed, the Ninth Circuit instructs that "plaintiffs are to be compensated for attorney's fees incurred for services that contribute to the ultimate victory in the lawsuit.  Thus, even if a specific claim fails, the time on that claim may be compensable, in full or in part, if it contributes to the success of other claims."  *Cabrales v. Cnty. of L.A.*, 935 F.2d 1050, 1052 (9th Cir. 1991).

by Local Rule 54.3(d)(1).[11]  A descriptive itemization of all work

performed by HDRC and AHFI on behalf of Plaintiffs is set forth in

tables attached as Exhibits 5, and 8, respectively, as required by

Local Rule 54.3(d)(2).

Although this was a collaborative effort by and among the

different firms, the attached declarations and exhibits show that

each firm's work was necessary, not redundant, and did not

overlap.  *Moreno v. City of Sacramento,* 534 F.3d 1106, 1112 (9th

Cir. 2008) (holding that, "[b]y and large, the court should defer to

the winning lawyer's professional judgment as to how much time he

was required to spend on the case; after all, he won, and might not

have, had he been more of a slacker.")[12] HDRC has expertise in

defending and enforcing the legal rights of disabled individuals and

---

[11] Pursuant to the requirements of Local Rule 54.3, Exhibits 4, 5, 7 and 8 are attached as exhibits to the Patricio Declaration and the Alston Declaration.

[12] To the extent that duplication of effort or excessive time are concerns, AHFI has already discounted its fees (including GET) by $37,192.33, associated with 137.2 of the 801.6 hours actually spent on the case in this phase. Alston Decl. ¶19; *Moreno* 534 F.3d at 1113 (holding that reductions over and above "9 percent cut" already imposed by plaintiff's counsel require "a clear explanation").

their families.  HRDC also has expertise arising from its regular practice in IDEA proceedings.  Decl. Jennifer Patricio ¶¶ 3-10.

AHFI has extensive complex litigation, public interest, and class action litigation experience in Hawai`i.  Alston Decl. ¶¶ 8-12.  AHFI's primary efforts in this litigation related to case strategy, drafting of pleadings, motions and other filings, including extensive work on the class certification motion, the motions for preliminary injunction, making and opposing motions for summary judgment, discovery, oral depositions, and trial.  Following the Ninth Circuit opinion and remand, AHFI's efforts focused on obtaining the names and contact information of all Class Members who were denied a FAPE during the pendency of Act 163, and securing a court ruling granting compensatory education to those older Class Members.  *Id.* ¶ 15; Exhibit 4 at 1; Exhibit 5.  AHFI kept costs to a minimum by utilizing a paralegal and law clerks, where possible, in lieu of attorneys.  *See* Exs. 4-5.

As the attached itemizations show, HDRC and AHFI did not spend excessive time on the action, and their work was not redundant or otherwise unnecessary.  Exhibits 4, 5, 7-8.

Plaintiffs did no more than what was necessary to obtain the relief sought in the Complaint.  *Id.*  Thus, the requested fees were reasonably and necessarily incurred to achieve the results obtained, namely, an injunction requiring the State to comply with federal laws governing the IDEA benefits.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant its motion and award (1) AHFI $221,215.10 (which includes $211,260.51 in attorneys' fees and $9,954.60 in state excise tax) and HDRC $13,734.10 (which includes $13,116.07 in attorneys' fees and $618.03 in state excise tax) for a total award of **$234,849.20**.  These fees were reasonably and necessarily incurred in prevailing in this action through August 22, 2014.

DATED: Honolulu, Hawai`i, November 20, 2015.

    /s/ Kristin L. Holland
PAUL ALSTON
KRISTIN L. HOLLAND
MICHELLE N. COMEAU
Attorneys for Plaintiffs